# EXHIBIT 1

1 | JOSHUA S. LIPSHUTZ, Bar No. 242557
GIBSON DUNN & CRUTCHER LLP
2 | 555 Mission Street, Suite 3000
San Francisco, CA 94105-092
3 | Telephone: 415.393.8200
Facsimile: 415.393.8306
4 |

5 | ANDREW M. SPURCHISE, Bar No. 245998
LITTLER MENDELSON, P.C.
6 | 900 Third Avenue
New York, New York 10022-3298
7 | Telephone:    212.583.9600
Fax No.:        212.832.2719

8 | Attorneys for Defendant
9 | DOORDASH, INC.

10 | SHANNON LISS-RIORDAN
LICHTEN & LISS-RIORDAN, P.C.
11 | 729 Boylston Street, Suite 2000
Boston, MA 02116
12 | Telephone:    617.994.5800
Fax No.:        617.994.5801

13 |
14 | Attorneys for Plaintiffs
CYNTHIA MARCIANO, DAVID CRISTINI,
15 | DARNELL AUSTIN, MANUEL MAGANA, and
JARED ROUSSEL

16 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

17 | FOR THE COUNTY OF SAN FRANCISCO

18 |

19 |

| CYNTHIA MARCIANO, DAVID CRISTINI, DARNELL AUSTIN, MANUEL MAGANA, and JARED ROUSSEL | Case No.  CGC-18-567869 |
|---|---|
| Plaintiffs, | **CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |
| v. | |
| DOORDASH, INC., | |
| Defendant. | |

1.

DocuSign Envelope ID: 480BC867-3A0B-4132-A80F-75D570A1E0DA

This Class Action Settlement Agreement and Release, including Exhibits 1 - 3 hereto ("Settlement Agreement" or "Agreement"), is made and entered into by, between, and among Plaintiffs Cynthia Marciano, David Cristini, Darnell Austin, Manuel Magana, and Jared Roussel ("Plaintiffs") on behalf of themselves and the Settlement Class and the State of California as defined below, on the one hand, and Defendant DoorDash, Inc. ("Defendant" or "DoorDash") on the other hand.  Plaintiffs and Defendant (collectively, the "Parties") enter into this Agreement to effect a full and final settlement and preclusive judgment resolving all claims brought or that could have been brought against DoorDash in the consolidated cases *Marciano v. DoorDash, Inc.*, CGC-18-567869 (San Francisco Super. Ct.) ("*Marciano*"), and *Austin v. DoorDash, Inc.*, No. 1:17-cv-12498 (D. Mass.) ("*Austin*"), including as amended pursuant to this Agreement (collectively, the "Action"), and all claims based on or reasonably related thereto.  This Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined and on the terms set forth below, and to the full extent reflected herein, subject to the approval of the Court.

## I.      RECITALS

This Agreement is made in consideration of the following facts:

1.1      WHEREAS, on July 5, 2018, Plaintiff Cynthia Marciano and David Cristini filed a Private Attorneys General Act, Labor Code §§ 2698, *et seq.* ("PAGA") representative action complaint in San Francisco County Superior Court (Case No. CGC-18-567869) asserting various Labor Code claims against DoorDash arising from DoorDash's alleged misclassification of delivery drivers in California as independent contractors on behalf of the State of California Labor and Workforce Development Agency ("LWDA"), herself, and all delivery drivers in California treated by DoorDash as independent contractors (the "*Marciano* Action");

1.2      WHEREAS, on May 8, 2018, Plaintiff Manuel Magana brought class claims based on the same theory of misclassification and Labor Code violations on behalf of a proposed class consisting of all delivery drivers in California treated by DoorDash as independent contractors, which was removed to federal court where it proceeded as *Magana v. DoorDash Inc.,* Civ. A. No. 4:18-cv-03395-PJH (N.D. Cal.);

1.3     WHEREAS, on September 26, 2017, Plaintiff Darnell Austin brought class claims based on the same theory of misclassification and wage violations on behalf of a proposed class consisting of all delivery drivers in Massachusetts treated by DoorDash as independent contractors, which was removed to federal court where it proceeded as *Austin v. DoorDash Inc.,* Civ. A. No. 4 No. 1:17-cv-12498-IT (D. Mass.);

1.4     WHEREAS, on March 12, 2019, Plaintiff Jared Roussel, who opted out of DoorDash's arbitration clause, brought PAGA claims based on the same theory of misclassification and Labor Code violations on behalf of a proposed class consisting of all delivery drivers in California treated by DoorDash as independent contractors in San Francisco County Superior Court (Case No. CGC-19-572934);

1.5     WHEREAS, Plaintiffs allege generally that DoorDash improperly classified them and all putative Settlement Class Members as independent contractors rather than employees, and assert derivative claims related thereto;

1.6     WHEREAS, DoorDash denies the allegations in the Action; maintains each and any delivery driver's claims must be individually arbitrated pursuant to that delivery driver's arbitration agreement; denies that it has engaged in any wrongdoing; denies that any Settlement Class Member was ever an employee of DoorDash; denies that Plaintiffs' allegations state valid claims; denies that a litigation class could properly be certified in the Action; denies that Plaintiffs' claims could properly be maintained as a representative action; and states that it is entering into this Settlement Agreement solely to eliminate the burden, expense, and delay of further arbitrations and litigation, and on the express conditions that (a) if for any reason the Settlement is not finalized according to the terms of this Agreement, the Settlement and the documents generated as a result of the Settlement shall not be usable for any purpose in any of the Actions or Arbitration, and (b) this Settlement and the documents generated as a result of the Settlement are not admissible or usable in any other proceeding or arbitration, except to the extent necessary to enforce this Settlement and the orders, judgment and agreements arising from this Settlement or as may be required to be cited and offered in support of a request to stay or dismiss

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE (Case Nos. CGC-18-567869)

other legal proceedings involving DoorDash raising similar issues, including but limited to pending litigations, arbitrations, and agency proceedings.

1.7    WHEREAS, a bona fide dispute exists as to whether any amount of wages or penalties are due from Defendant to any putative Settlement Class Member or to the LWDA;

1.8    WHEREAS, in preparation for mediation, the Parties engaged in informal discovery, exchanging information, documents and reviewing and analyzing extensive data made available by DoorDash, which enabled Plaintiffs and the mediator to thoroughly evaluate Plaintiffs' claims and the claims of the putative class, and the likely outcomes, risks and expense of pursuing litigation;

1.9    WHEREAS, the Parties attended an in-person mediation session on September 10, 2019, with professional mediator Mark Irvings, and continued to discuss settlement terms at length with the mediator following the mediation session, before agreeing to the terms of this arm's-length Settlement;

1.10    WHEREAS, as a result of the mediation, Plaintiffs and Class Counsel believe that the Settlement provides a favorable recovery for the Settlement Class, based on the claims asserted, the evidence developed, and the damages that might be proven against DoorDash in the Action.  The Plaintiffs and Class Counsel further recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against DoorDash through trial and appeals.  They also have considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as the Action, as well as the difficulties and delays inherent in any such litigation.  They are also mindful of the inherent challenges of proof and the strength of the defenses to the alleged claims, and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice as set forth herein, subject to the approval of the Court;

1.11    WHEREAS, Class Counsel agrees to take any and all steps necessary to dismiss pending cases before the American Arbitration Association brought by her firm on behalf of Settlement Class Members;

1.12    WHEREAS, Plaintiffs and Class Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the claims of the Plaintiffs, the claims of the average Settlement Class

Member, the risks associated with the continued prosecution of the Action, and the likelihood of success on the merits of the Action, and believe that, after considering all the circumstances, including the uncertainties surrounding the risk of further litigation and the defenses that DoorDash has asserted and could assert, the proposed Settlement set forth in this Agreement is fair, reasonable, adequate, in the best interests of the Plaintiffs and the Settlement Class, and confers substantial benefits upon the Settlement Class;

1.13 WHEREAS, Plaintiffs warrant and represent that they are competent to enter into this Settlement and are effecting this Settlement and executing this Agreement after having received full legal advice as to their respective rights and have had the opportunity to obtain independent counsel to review this Agreement;

1.14 WHEREAS, the Parties further agree that the Agreement, the fact of this Settlement, and any of the terms of this Agreement, and any documents filed in connection with the Settlement shall not constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of: (i) any wrongdoing, (ii) any violation of any statute or law, (iii) any liability on the claims or allegations in the Action on the part of any Released Parties, or (iv) any waiver of DoorDash's right to arbitration or enforceability of any DoorDash arbitration agreement, or (v) the propriety of certifying a litigation class or pursuing representative relief under the PAGA in the Action or any other proceeding; and shall not be used by any Person for any purpose whatsoever in any legal proceeding, including but not limited to arbitrations or agency proceedings, other than a proceeding to enforce the terms of the Agreement; provided, however, that this settlement may be cited and offered in support of a request to stay or dismiss other legal proceedings involving DoorDash raising similar issues, including but limited to pending litigations, arbitrations, and agency proceedings. Nothing in this settlement alters the classification of the delivery providers as independent contractors. There has been no final determination by any court as to the merits of the claims asserted by Plaintiffs against DoorDash, nor has there been any final determination as to whether a class should be certified or whether representative claims may properly be pursued, other than for settlement purposes only;

1.15    WHEREAS, for settlement purposes only, DoorDash will stipulate to the certification of class claims that are subject to the certification requirements of California Code of Civil Procedure Section 382. DoorDash disputes that certification is proper for the purposes of litigating the class claims proposed in or flowing from the claims asserted in the *Marciano*, *Magana*, *Roussel*, or *Austin* Actions. DoorDash expressly reserves the right to oppose certification of any purported class should the Settlement fail to become final and effective;

1.16    WHEREAS, the Parties desire to compromise and settle all issues and claims that have been, could have been, or should have been brought against DoorDash or related persons in the Action, including all claims brought on a putative class and representative basis in the *Marciano* Action;

1.17    NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED, by the Plaintiffs for themselves and on behalf of the Settlement Class, and by DoorDash that, subject to the approval of the Court, the *Marciano*, *Magana*, *Roussel*, or *Austin* Actions shall be settled, compromised, and dismissed, on the merits and with prejudice, and the Released Claims shall be finally and fully compromised, settled and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in this Agreement.

## II.    DEFINITIONS

Unless otherwise defined herein, capitalized terms used in this Agreement shall have the meanings set forth below:

2.1    "California Settlement Class" means all individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California during the Relevant Period and performed at least one delivery in California from August 30, 2016 through February 29, 2020 or the date of preliminary approval of the settlement, whichever comes first.

2.2    "Claim Form" means the document included in the Class Notice which Settlement Class Members must complete and return to receive Settlement Payments.

2.3    "Class Counsel" means Lichten & Liss-Riordan, P.C. and The Law offices of Todd M. Friedman, P.C., who will share in the Class Counsel Award.

2.4 "Class Counsel Award" means (i) the attorneys' fees for Class Counsel's litigation and resolution of the Action, and all arbitrations and claims resolved by this Settlement, as awarded by the Court, which may not exceed one third (1/3) of the Total Settlement Amount and (ii) all expenses and costs incurred by Class Counsel in litigation and resolution of the Action, and all arbitrations and claims resolved by this Settlement, as awarded by the Court.

2.5 "Class Information" means information regarding Settlement Class Members that Defendant will in good faith compile from its records and provide to the Settlement Administrator. Class Information shall be provided in a Microsoft Excel spreadsheet and shall include, if possible, for each Settlement Class Member: full name, last known address, email address and other data necessary to determine, pursuant to an agreed-upon formula, the payment the Settlement Class Member shall receive. Because Settlement Class Members' private information is included in the Class Information, Class Counsel and the Settlement Administrator shall maintain the Class Information in confidence and shall use and disclose Class Information only for purposes of this Settlement and for no other purpose; access shall be limited to employees of the Class Counsel and the Settlement Administrator with a need to use the Class Information as part of the administration of the Settlement.

2.6 "Class Notice" means the notice of class action settlement to be provided to Settlement Class Members, without material variation from Exhibit 1.

2.7 "Court" means San Francisco County Superior Court.

2.8 "Delivery Miles" means the total number of miles between the location where orders are received and accepted by the driver and the location where orders are delivered (which includes distance spent driving to the restaurant and distance spent driving from the restaurant to the customer), for each Settlement Class Member during the Settlement Class Period, as determined by DoorDash's records.

2.9 "Dispute Resolution Fund" means the fund consisting of $350,000 set aside from the Global Settlement Fund to be used: (i) to resolve any bona fide disputes that may arise regarding the calculation and disbursement of Settlement Payments according to the Plan of Allocation; and (ii) to

7.

disburse Settlement Payments to individuals mistakenly excluded from the Settlement Class.  The Dispute Resolution Fund shall be paid from the Global Settlement Fund.

2.10    "Effective Date" means seven (7) days after which both of the following events have occurred: (i) the Court's Final Approval order has been entered and (ii) the Court's Final Approval order and Judgment have become Final.

2.11    "Exclusion/Written Objection Deadline" means the final date by which a Settlement Class Member may either (i) object to any aspect of the Settlement, or (ii) request to be excluded from the Settlement.  The Exclusion/Written Objection Deadline shall be sixty (60) days after the Notice Date, and shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

2.12    "Final" when referring to a judgment or order, means that (i) the judgment is a final, appealable judgment; and (ii) either (a) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for re-hearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the judgment order in its entirety.

2.13    "Final Approval" means the Court's entry of a Final Approval order finally approving this Settlement.

2.14    "Final Approval Hearing" means the hearing at or after which the Court will make a final decision as to whether the Settlement is fair, reasonable, and adequate, and therefore, finally approved by the Court.

2.15     "Judgment" means the judgment to be entered in the Action on Final Approval of this Settlement.

2.16    "Legally Authorized Representatives" means an administrator/administratrix, personal representative, or executor/executrix of a deceased Settlement Class Member's estate; a guardian,

conservator, or next friend of an incapacitated Settlement Class Member; or any other legally appointed person responsible for handling the business affairs of a Settlement Class Member.

2.17    "Massachusetts Settlement Class" means all individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts during the Relevant Period and performed at least one delivery in Massachusetts from September 26, 2014 through February 29, 2020 or the date of preliminary approval of the settlement, whichever comes first.

2.18    "Named Plaintiffs' General Released Claims" means any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, penalties, rights or liabilities, of any nature and description whatsoever, known or unknown, contingent or accrued, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs or disbursements), against the Released Parties, including unknown claims covered by California Civil Code section 1542, as quoted below in Paragraph 9.4, by the Plaintiffs, arising during the period from the beginning of the Plaintiffs' first interaction with DoorDash to the date on which the Court enters the order of Final Approval of this Settlement, for any type of relief that can be released as a matter of law, including, without limitation, claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief with the exception of any claims which cannot be released as a matter of law.  Plaintiffs will generally release all known and unknown claims against DoorDash, and waive the application of section 1542 of the California Civil Code.  The claims released pursuant to this paragraph include but are not limited to the Settlement Class Members' Released Claims, as well as any other claims under any provision of the FLSA, the California Labor Code (including sections 132a, 4553 *et seq.*) or any applicable California Industrial Welfare Commission Wage Orders, Massachusetts General Laws, and claims under state or federal discrimination statutes, including,

9.

without limitation, the California Fair Employment and Housing Act, California Government Code section 12940 *et seq.*; the California Business and Professions Code sections 17200 *et seq*; the Unruh Civil Rights Act, California Civil Code section 51 *et seq.*; the California Constitution; the Massachusetts Constitution; the Massachusetts Civil Rights Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act of 1967, as amended; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines, as well as any other similar state, federal, local, or common law claims for unpaid wages, minimum wages, regular wages, tips, gratuities, overtime wages (including but not limited to calculation of the correct overtime or regular rate), working more than six days in seven, expense reimbursement, wage statements, payroll recordkeeping, reporting time, improper deduction of wages, failure to provide workers' compensation insurance, meal periods, rest breaks, sick leave, final pay, penalties for timely payment of wages upon discharge, waiting time penalties, PAGA penalties, unfair business practices, the alleged use of tips to meet any minimum-pay guarantees, all claims in the pending arbitration demands filed with AAA concerning the alleged misclassification of Dashers.

2.19   "Notice Date" means the date of the initial distribution of the Class Notice to Settlement Class Members, as set forth in Section III.

2.20   "Opt Out List" means the Court-approved list of all persons who timely and properly request exclusion from the Settlement Class.

2.21   "Plaintiffs" means Cynthia Marciano, David Cristini, Darnell Austin, Manuel Magana, and Jared Roussel.

2.22    "PAGA Claims" means the Plaintiffs' representative claims seeking penalties pursuant to PAGA, as alleged in the Complaint and/or based on any other provision of the Labor Code, Wage Orders or any other statute or regulation (whether identified in the Complaint or not) to the fullest extent permitted by law.

DocuSign Envelope ID: 489BCB672A0B-4122-A9C7-35D57DA1E06A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.23    "PAGA Payment" means a total payment of $750,000 to settle all claims under the PAGA.  From this amount, 75% will be paid to the LWDA for civil penalties pursuant to the PAGA and 25% will be distributed to Responding Settlement Class Members from California.

2.24    "Plan of Allocation" means the plan for allocating the Settlement Payment Fund and between and among Responding Settlement Class Members as approved by the Court.

2.25    "Preliminary Approval Date" means the date that the Court enters the Preliminary Approval Order and thus: (i) preliminarily approves the Settlement, and the exhibits thereto, and (ii) enters an order providing for notice to the Settlement Class, an opportunity to opt out of the Settlement Class, an opportunity to submit timely and proper objections to the Settlement, and setting a hearing on the fairness of the terms of Settlement, including approval of the Class Counsel Award.

2.26    "Preliminary Approval Order" means the order that the Plaintiffs and DoorDash will seek from the Court, without material variation from Exhibit 2.  Entry of the Preliminary Approval Order shall constitute preliminary approval of the Settlement Agreement.

2.27    "Released Claims" means (i) Settlement Class Members' Released Claims and (ii) Named Plaintiffs' General Released Claims.

2.28    "Released Parties" means (i) DoorDash, Inc. and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by DoorDash (but not including delivery drivers who use the DoorDash software), and (ii) the past, present, and future shareholders, officers, directors, members, investors, agents, employees, independent contractors, vendors, agents, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities listed in (i).

2.29    "Responding Settlement Class Member" means any Settlement Class Member who timely returns a Claim Form to the Settlement Administrator, pursuant to Sections V and X herein.

2.30    "Settlement Payment" means the amount payable to each Responding Settlement Class Member who does not opt out.  The Settlement Payment shall be calculated pursuant to Section V herein.

11.

2.31    "Settlement Payment Fund" means the funds paid to Settlement Class Members after deducting Attorneys' Fees & Costs, Service Awards, Settlement Administrator Expenses, and payments to the Labor & Workforce Development Agency (LWDA).

2.32    "Settlement" means the settlement of the Action between and among Plaintiffs and DoorDash, as set forth in this Settlement Agreement.

2.33    "Settlement Administrator" means Simpluris, the neutral, third-party settlement administrator to be appointed by the Court.

2.34    "Settlement Administrator Expenses" means the amount to be paid to the Settlement Administrator from the Settlement Payment Fund, including the total costs, expenses, and fees of the Settlement Administrator.  The amount may not exceed the amount estimated by the agreed upon Settlement Administrator.

2.35    "Settlement Class" means all members of the California Settlement Class and the Massachusetts Settlement Class, as defined herein.

2.36    "Settlement Class Member" means any member of the Settlement Class.

2.37    "Settlement Class Members' Released Claims" means any and all past and present claims, actions, demands, causes of action, suits, debts, guarantees, obligations, damages, penalties, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, contingent or accrued, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs or disbursements) including but not limited to those incurred by Class Counsel or any other counsel representing the Plaintiffs or any Settlement Class Members (other than those expressly awarded by the Court in the Class Counsel Award authorized by this Agreement), that are based on or are reasonably related to the claims alleged in the Marciano SAC, including any allegations in the "Related Actions" (as defined in Attachment 1), and all claims arising out of or relating to the alleged misclassification of Dashers, and specifically including: claims pursuant to the Fair Labor Standards

12.

Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; California Labor Code sections 132a, 201-204, 206.5, 207, 208, 210-214, 216, 218, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353, 432.4, 432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2753, 2802, 2804, 2810.5, and 4553 *et seq.*; the Private Attorneys General Act ("PAGA"), California Labor Code section 2698 *et seq.*; California Code of Civil Procedure section 1021.5; California Code of Regulations, title 8, sections 11010 and 11040; Industrial Welfare Commission Wage Orders; the Los Angeles Office of Wage Standards Ordinance, the San Francisco Admin. Code Minimum Wage Ordinance, and any similar state or local ordinances; California Business and Professions Code sections 17200 *et seq.*; Massachusetts General Law ch. 149, §§ 148, 148B; Massachusetts General Law ch. 151, §§ 1, 7; and any other similar state, federal, local, or common law, for unpaid wages, minimum wages, regular wages, tips, gratuities, overtime wages (including but not limited to calculation of the correct overtime or regular rate), working more than six days in seven, expense reimbursement, wage statements, payroll recordkeeping, reporting time, improper deduction of wages, failure to provide workers' compensation insurance, meal periods, rest breaks, sick leave, final pay, penalties for timely payment of wages upon discharge, waiting time penalties, PAGA penalties, unfair business practices, the alleged use of tips to meet any minimum-pay guarantees, all claims arising out of or relating to the statutory causes of action described herein, restitution, interest, costs and expenses, attorneys' fees, declaratory relief, injunctive relief, liquidated damages, exemplary or punitive damages, civil penalties, equitable remedies, and/or pre- or post-judgment interest at any time during the Relevant Period, and all claims included in the pending arbitration demands filed with AAA concerning the alleged misclassification of Dashers.  The release does not include claims that, as a matter of law, cannot be released and does not include claims for retaliation, discrimination, wrongful termination, and individual claims filed with the appropriate agency for the recovery of workers' compensation benefits.  "Settlement Class Members' Released Claims" are released through the Preliminary Approval Date or February 29, 2020, whichever occurs first.

13.

2.38    "Settlement Class Period" means August 30, 2016 through the Preliminary Approval Date or February 29, 2020, whichever occurs first (with respect to California Class Members) or September 26, 2014, through the Preliminary Approval Date or February 29, 2020, whichever occurs first (with respect to Massachusetts Class Members).

2.39    "Service Awards" means the amount approved by the Court to be paid to each Plaintiff, in addition to their respective Individual Settlement Payments, in recognition of their efforts in coming forward as named plaintiffs and as consideration for a full, general, and comprehensive release of the General Released Claims.  The Service Award amount payable to Plaintiffs is not to exceed $5,000 each.

2.40    "Total Settlement Amount" means Thirty-Nine Million Five-Hundred Thousand Dollars ($39,500,000) for payment of all claims, which is the maximum amount that DoorDash is obligated to pay under this Settlement Agreement under any circumstances in order to resolve and settle the Action, subject to Court approval.  The Total Settlement Amount shall be inclusive of all costs and fees, including, but not limited to, Class Counsel Award, applicable Settlement Administrator Expenses, escrow costs and expenses, Service Awards, PAGA Payment, interest, and taxes and tax expenses.

2.41    "Void Date" means the date by which any checks issued to Responding Settlement Class Members shall become void, *i.e.* on the 181st day after mailing.

III.    **SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR PRELIMINARY AND FINAL APPROVAL**

3.1    Upon execution of this Settlement Agreement, the Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement.  The motion for preliminary approval shall include a proposed plan for filing the Second Amended Complaint (Exhibit 3 hereto), for sending of the Class Notice to Settlement Class Members within forty-five (45) days after the Preliminary Approval Date (the Notice Date), and establishing a period of sixty (60) days from the Notice Date within which any Settlement Class Member may (i) request exclusion from the Settlement Class, (ii) submit written objections to the proposed Settlement, or (iii) submit written objections to Class

Counsel's request for the Class Counsel Award and for Service Awards to the Plaintiffs (the Exclusion/Written Objection Deadline).

3.2     The Parties stipulate to certification under California Code of Civil Procedure Section 382, for settlement purposes only, of the Settlement Class, excluding the Settlement Class's PAGA Claims.  The Parties agree that this stipulation shall not be admissible in, and may not be used by any person for any purpose whatsoever in any legal proceeding, including but not limited to any arbitrations and/or any civil and/or administrative proceedings, other than a proceeding to enforce the terms of the Agreement, as further set forth in this Agreement or as may be required to be cited and offered in support of a request to stay or dismiss other legal proceedings involving DoorDash raising similar issues, including but limited to pending litigations, arbitrations, and agency proceedings.

3.3     Class Counsel agrees to keep any and all data related to the Settlement Class's use of the DoorDash platform in the strictest confidence, and shall not disclose that data.  Any such data provided to Class Counsel shall be treated as privileged mediation communications under Cal. Evid. Code §§ 1115 *et seq.* and designated "Confidential—Attorneys' Eyes Only," except to the extent absolutely necessary (as agreed between the Parties) for approval of the Settlement.  Class Counsel agrees to submit such necessary data to the Court under seal to the extent appropriate under governing law.

3.4     Class Counsel and Plaintiffs agree to use their best efforts, in cooperation with defense counsel, to keep the *Magana*, *Roussel*, *Austin, Marciano* (with the exception of settlement approval proceedings) and all pending American Arbitration Association actions brought by Class Counsel stayed pending Final Approval of the Settlement, and upon Final Approval of the Settlement, Class Counsel and Plaintiffs agree to dismiss these Actions with prejudice.  Further, all of the plaintiffs in *Marciano*, *Austin*, *Roussel*, and *Magana* Plaintiffs (and Class Counsel) agree not to oppose any efforts by DoorDash to stay the Related Actions or other pending arbitrations pending Final Approval of this Settlement.

3.5     The Parties stipulate to the form of, and agree to submit to the Court for its consideration this Settlement Agreement, and the following Exhibits to this Settlement Agreement:

[Proposed] Preliminary Approval Order (Exhibit 2); Class Notice (Exhibit 1); and Second Amended Complaint (Exhibit 3).

      3.6     Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

      3.6.1   The Court may enter the Preliminary Approval Order, without material variation from Exhibit 2, preliminarily approving the Settlement and this Agreement.  Among other things, the Preliminary Approval Order shall grant leave to preliminarily certify the Settlement Class for settlement purposes only; approve the Plaintiffs as class representatives, appoint Class Counsel to represent the Settlement Class, and appoint the Settlement Administrator; approve the Class Notice, and the class notice plan embodied in the Settlement Agreement, and approve them as consistent with California Rules of Court 3.766(d) and 3.769(f) and due process; set out the requirements for disputing the information upon which Settlement Class Members' share of the Settlement will be calculated, objecting to the Settlement, excluding Settlement Class Members who timely and properly request to be excluded from the Settlement Class, all as provided in this Agreement; and provide that certification and all actions associated with certification are undertaken on the condition that the certification and other actions shall be automatically vacated and of no force or evidentiary effect if this Agreement is terminated or disapproved, as provided in this Agreement.

      3.7     Within 10 days of the Preliminary Approval Date, Class Counsel will notify the LWDA of the Preliminary Approval Order.

      3.8     At the Final Approval Hearing, the Plaintiffs shall request entry of a Final Approval order and a Judgment, to be agreed upon by the Parties, the entry of which is a material condition of this Settlement and that, among other things:

      3.8.1   Finally approves the Settlement as fair, reasonable, and adequate and directs its consummation pursuant to the terms of the Settlement Agreement;

      3.8.2   Finds that Class Counsel and Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Agreement;

3.8.3   Re-confirms the appointment of the Settlement Administrator and finds that the Settlement Administrator has fulfilled its duties under the Settlement to date;

3.8.4   Finds that the Class Notice (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, and their right to exclude themselves from or object to the proposed settlement and/or to appear at the Final Approval Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of California Rules of Court 3.766(d) and 3.769(f), due process, and any other applicable rules or law;

3.8.5   Approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely and properly requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Approval order and Judgment;

3.8.6   Directs that the Final Approval order and Judgment of dismissal shall be final and entered forthwith;

3.8.7   Without affecting the finality of the Final Approval order and Judgment, directs that either the presiding Law and Motion Department Judge or Judge of the Complex Department of San Francisco Superior Court retains continuing jurisdiction over the Plaintiffs, the Settlement Class, and DoorDash as to all matters concerning the administration, consummation, and enforcement of this Settlement Agreement;

3.8.8   Adjudges that, as of the Final Approval Date, the Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released the Named Plaintiffs' General Released Claims (in the case of the Plaintiffs) and Settlement

17.

DocuSign Envelope ID: 4B9BCB672A0B-4133-A9C5-F35F57DA1E06

Class Members' Released Claims (in the case of the Settlement Class Members) against DoorDash and the Released Parties, and are bound by the provisions of this Agreement;

3.8.9    Affirms that, notwithstanding the submission of a timely and proper request for exclusion, Settlement Class Members will still be bound by the settlement and release of the PAGA Claims or remedies under the Final Judgment pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009) as requests for exclusion do not apply to the PAGA Claims, and further affirms that the LWDA's claims for civil penalties pursuant to PAGA are also extinguished;

3.8.10   Declares this Agreement and the Final Approval order and Judgment to be binding on, and have res judicata and preclusive effect as to all pending and future lawsuits or other proceedings: (i) that encompass the Named Plaintiffs' General Released Claims and that are maintained by or on behalf of the Plaintiffs and/or their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, and (ii) that encompass the Settlement Class Members' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court and/or his or her heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation, arbitration, or other proceedings encompassed by the Settlement Class Members' Released Claims, and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement;

3.8.11   Determines that the Agreement and the Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or that PAGA representative claims may validly be pursued, or of any misrepresentation or omission in any statement or written

18.

document approved or made by any Party; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement, as further set forth in this Agreement;

3.8.12 Directs Class Counsel to seek dismissal of all pending actions before the American Arbitration Association brought against DoorDash by Settlement Class Members in which they are represented by Class Counsel with prejudice within 15 days of the Effective Date;

3.8.13 Orders that the preliminary approval of the Settlement, certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review, in which event the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class or the appropriateness of maintaining a PAGA representative action, as further provided in this Settlement Agreement;

3.8.14 Authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as (i) shall be consistent in all material respects with the Final Approval order and (ii) do not limit the rights of Settlement Class Members; and

3.8.15 Contains such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

3.9    At the Final Approval Hearing and as a part of the final approval of this Settlement, Class Counsel will also request approval of the Plan of Allocation set forth in Section V.  Any modification to the Plan of Allocation by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement

19.

Agreement, or (iii) impose any obligation on the Defendant or any Released Party to increase the consideration paid in connection with the Settlement.

3.10    At the Final Approval Hearing, Class Counsel may also request entry of an Order approving the Class Counsel Award and for the Service Awards to the Plaintiffs, which shall be paid exclusively from the Total Settlement Amount and in accordance with the distribution plan described in Section V.  In no event shall any Released Party otherwise be obligated to pay for any attorneys' fees and expenses or Service Awards.  The disposition of Class Counsel's application for a Class Counsel Award, and for Service Awards, is within the sound discretion of the Court and is not a material term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that such application be granted.  Any disapproval or modification of such application by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) increase the consideration Defendant or any Released Party pays in connection with the Settlement.  Released Parties shall have no liability to Class Counsel arising from any claim regarding the division of any Attorney Fee/Litigation Cost Award between and among Class Counsel or any other counsel representing Plaintiffs or the Settlement Class Members.

3.11    In no event shall any Released Party be obligated to pay Settlement Administration Expenses beyond those provided for in this Agreement.

3.12    Within 10 days after entry of Judgment, Class Counsel will provide a copy of the Judgment to the LWDA.

3.13    The Parties agree to cooperate in reaching agreement regarding reasonable responses to media inquiries that will support the approval and implementation of this agreement.  Nothing herein shall be construed to violate any applicable ethical rules for attorneys.

## IV.    SETTLEMENT CONSIDERATION

4.1    The total monetary component of the Settlement from DoorDash is the Total Settlement Amount ($39,500,000.00).  This is an "all in" number that includes, without limitation, all monetary benefits and payments to the Settlement Class, Service Awards, Class Counsel Award, Settlement

20.

Administrator Expenses and the PAGA Payment, and all claims for interest, fees, and costs.  Under no circumstances shall DoorDash be required to pay anything more than the Total Settlement Amount.  In no event shall DoorDash be liable for making any payments under this Settlement, or for providing any relief to Settlement Class Members, before the deadlines set forth in this Agreement.

4.2     The Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Total Settlement Amount (including, in the case of the Plaintiffs, Service Awards) expressly acknowledge that such payments shall be considered non-wages for which an IRS Form 1099 will be issued, if required.  The Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Total Settlement Amount agree to timely pay in full all of the federal, state, and municipal income taxes owed on such payments.

4.3     The terms of this Agreement relating to the Service Awards and Class Counsel Award were not negotiated by the Parties before full agreement was reached as to all other material terms of the proposed Settlement, including, but not limited to, any terms relating to the relief to the Settlement Class.  DoorDash agrees not to oppose a request for Service Awards for Plaintiffs, as awarded by the Court, up to a maximum of Five Thousand Dollars ($5,000) each.  The Plaintiffs and Class Counsel agree not to seek Service Awards in excess of the above amount.

4.4     Class Counsel agrees not to seek an award of attorneys' fees, costs and expenses from the Court in excess of one third (1/3) of the Total Settlement Amount.  DoorDash agrees not to oppose a request for attorneys' fees, costs and expenses up to one third (1/3) of the Total Settlement Amount. Any amount awarded as the Class Counsel Award shall be inclusive of any and all amounts due to all Plaintiffs' Counsel.  Class Counsel shall be solely responsible for allocation and payment of any portion of any Class Counsel Award to any Plaintiffs' Counsel other than Class Counsel.  Released Parties and Class Members shall have no obligation regarding or liability for allocation or payment of any Class Counsel Award to Plaintiffs' Counsel.

4.5     If no timely objection to the Settlement is made, the payment of the Class Counsel Award, the Service Awards, the Settlement Administrator Expenses, the Settlement Payments and the PAGA Payment shall be made by the Settlement Administrator within fourteen (14) days of the Effective Date.

DocuSign Envelope ID: 4B9BCB672A0B-4122-A9C5-F5E57DA1E06A

4.6     The Settlement Administrator shall pay the Class Counsel Award by check, payable to "Lichten & Liss-Riordan, P.C."  Class Counsel shall provide the Settlement Administrator notice of receipt of the Class Counsel Award.  Released Parties shall have no liability to Class Counsel or Plaintiffs' Counsel arising from any claim regarding the division of any Attorney Fee/Litigation Cost Award between and among Class Counsel and Plaintiffs' Counsel.

## V.     FUNDING AND ALLOCATION OF THE SETTLEMENT

5.1     Within thirty (30) calendar days following Final Judgment, DoorDash shall fund the Settlement by providing the Settlement Fund ($39,500,000) to the Settlement Administrator.  The Settlement Administrator shall thereafter distribute the funds in the manner and at the times set forth in this Agreement.

5.2     To receive a payment from the Settlement, a Settlement Class Member must (1) have submitted a Claim Form, making him or her a Responding Settlement Class Member, and (2) not have submitted a request for exclusion from the Settlement.

5.3     The amount of each Responding Settlement Class Member's Settlement Payment will be calculated in proportion to DoorDash's best estimate of each Responding Settlement Class Member's Delivery Miles, as determined from the Class Information provided to the Settlement Administrator by DoorDash except that class members who opted out of arbitration or who have filed an arbitration demand, or expressed an intent to do so by October 24, 2019, will get their mileage doubled.  Class Counsel will be permitted to review and approve the calculation of settlement funds to be distributed. If under the Plan of Allocation a responding Settlement Class Member will be distributed $10 or more, then he or she will receive the entitled amount. If, however, the Responding Settlement Class Member is due less than $10, then his or her Settlement Payment will be for $10.

5.4     Following distribution of the Settlement Payments to Settlement Class Members, all funds not claimed prior to the Void Date (*i.e.* all funds from uncashed checks) shall be redistributed to the Settlement Class Members who received and cashed their first Settlement Payments and whose residual share would be more than $50.00.  These unclaimed funds shall be redistributed pursuant to the same formula described in Paragraphs 5.3.

5.5     As described in Section VI, each Settlement Class Member will have the opportunity, should he or she disagree with DoorDash's calculation of his or her Delivery Miles, to provide documentation to establish the appropriate number.  There will be a presumption that DoorDash's records are correct, absent evidence produced by a Settlement Class Member to the contrary.

5.6     The Settlement Administrator shall issue the Settlement Payments to each Settlement Class Member who does not opt out.  The Settlement Payments shall be reported by the Settlement Administrator to the applicable governmental authorities on IRS Form 1099s.  The portions allocated to Service Awards shall likewise be reported on IRS Form 1099s by the Settlement Administrator. The Settlement Administrator shall be responsible for issuing copies of IRS Form 1099s for the Plaintiffs and Settlement Class Members.

## VI.     CLASS NOTICE PROCEDURES

6.1     No more than thirty (30) calendar days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the Class Information for purposes of sending the Class Notice to Settlement Class Members.

6.2     The Class Notice will inform Settlement Class Members of their right to request exclusion from the Settlement, of their right to object to the Settlement, and of their right to dispute the information upon which their share of the Settlement will be calculated and the claims to be released. The Class Notice shall also provide each potential Settlement Class Member with a best estimate of his or her miles on delivery and/or Active Weeks.

6.3     Within fifteen (15) days after receiving the Class Information from Defendant, the Settlement Administrator shall send a copy of the Class Notice by electronic mail to each potential Settlement Class Member.

6.4     If any Class Notice sent via electronic mail to any potential Settlement Class Member is undeliverable, the Settlement Administrator shall then send the Class Notice to the potential Settlement Class Member's postal mailing address on file via first-class mail, to the extent such a mailing address is on file.  If any Class Notice sent to any potential Settlement Class Member via first-class mail is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall

DocuSign Envelope ID: 480BCB672A0B-4132-A9C5-F35B57DA1E06A

forward the postal mailing to that address.  For any remaining returned postal mailings or for any Settlement Class Member for whom there is no mailing address on file, the Settlement Administrator shall made a good-faith search of an appropriate database, and postal mailings shall be forwarded to any new postal mail address obtained through such a search.  In the event that any Class Notice is returned as undeliverable a second time, no further postal mailing shall be required.   The Settlement Administrator shall maintain a log detailing the instances Class Notices are returned as undeliverable.

6.5     To the extent that sending the Class Notice via postal mail is necessary under the terms of Paragraph 6.4, before any mailing, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses for all potential Settlement Class Members to receive such postal mail, including cross-checking the names and/or postal mail addresses it received from DoorDash, as well as any other sources, with appropriate databases (e.g., the National Change of Address Database) and performing further reasonable searches (e.g., through Lexis/Nexis) for more-current names and/or postal mail addresses for Settlement Class Members. All Settlement Class Members' names and postal mail addresses obtained through these sources shall be protected as confidential and not used for purposes other than the notice and administration of this Settlement. The Settlement Administrator shall exercise its best judgment to determine the current mailing address for each Settlement Class Member. The address determined by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Settlement Class Member.

6.6     As set forth in the Class Notice, Settlement Class Members will be asked to submit a Claim Form to the Settlement Administrator within sixty (60) days.  Any Settlement Class Member who does not submit a Claim Form will not receive any distribution from the Settlement Fund.  However, any Settlement Class Members who do not submit a Claim Form will nevertheless be bound by the release of the Settlement Members' Released Claims as provided in Section IX, and precluded from bringing any such claims against DoorDash. Claim Forms will be accepted up until the final distribution.

6.7     The number and manner of any reminder to be sent to the Settlement Class Members, beyond that described in Paragraph 6.3, following the initial Class Notice mailing is to be determined by Class Counsel and the Settlement Administrator.

24.

6.8     The Parties agree that the procedures set forth in this Section constitute reasonable and the best practicable notice under the circumstances and an appropriate and sufficient effort to locate current addresses for Settlement Class Members such that no additional efforts to do so shall be required.

6.9     The Settlement Administrator will provide Class Notice by, at a minimum, (i) electronic mail notice without material variation from the form attached as Exhibit 1; (ii) if necessary in accordance with Paragraph 6.4, first-class mail notice; and (iii) a content-neutral settlement website managed by the Settlement Administrator, and approved by counsel for the Parties, which will contain further information about the Settlement, including relevant pleadings.  The Class Notice shall comply with California Rules of Court 3.766(d), 3.769(f) and due process.

6.10     The Settlement Administrator shall prepare a declaration of due diligence and proof of dissemination with regard to the mailing of the Class Notice, and any attempts by the Settlement Administrator to locate Settlement Class Members, its receipt of valid requests for exclusion, and its inability to deliver the Notice of Settlement to Settlement Class Members due to invalid addresses ("Due Diligence Declaration"), to Class Counsel and counsel for DoorDash for presentation to the Court.  Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court contemporaneous with the filing of the Motion for Final Approval of Class Action Settlement.

6.11     If any individual whose name does not appear in the Class Information that DoorDash provides the Settlement Administrator (and who has not previously opted out of the Settlement Class), believes that he or she is a Settlement Class Member, he or she shall have the opportunity to dispute his or her exclusion from the Settlement Class.  If an individual believes he or she is a Settlement Class Member, he or she must notify the Settlement Administrator within a reasonable amount of time after the Notice Date.  The Parties will meet and confer regarding any such individuals in an attempt to reach an agreement as to whether any such individual should be regarded as a Settlement Class Member. If the Parties so agree, the Settlement Administrator will mail a Class Notice to the individual, and treat the individual as a Settlement Class Member for all other purposes.  Such an individual will have all of the same rights as any other Settlement Class Member under this Agreement.  In the event that the disbursement of the Settlement Payments has begun (in accordance with this Settlement Agreement) at

25.

the time that the Parties agree that such individual should be regarded as a Settlement Class Member and that such individual does not exercise his or her right to opt out of the Settlement, the Settlement Payment to such individual shall be disbursed from the Dispute Resolution Fund, as long as sufficient money is left in the Dispute Resolution Fund.  Alternatively, such payment may be remitted from funds remitted back to the Payment Fund (*i.e.* from settlement checks that remain uncashed beyond the Void Date).

6.12   The Settlement Administrator shall send any Settlement Class Member who has initiated arbitration as of the signing date of this agreement, in which the Settlement Class Member is asserting claims substantially similar to the Settlement Class Members' Released Claims, up to two additional notices.

## VII.   PROCEDURES FOR REQUESTS FOR EXCLUSION

7.1   Settlement Class Members (with the exception of the Plaintiffs) may opt out of the Settlement.  Those who wish to exclude themselves (or "opt out") from the Settlement Class must submit timely, written requests for exclusion.  To be effective, such a timely request must include the Settlement Class Member's name, address, and telephone number; a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class and that the Settlement Class Member understands that he or she is still bound by the release of the PAGA Claims upon Final Approval of the Settlement and Final Judgment; and the physical ("wet ink") signature of the Settlement Class Member or the Legally Authorized Representative of the Settlement Class Member (who is not the class member's counsel).  The request must be mailed to the Settlement Administrator at the address provided in the Class Notice and must be postmarked no later than the Exclusion/Objection Deadline. The date of the postmark shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.  Requests for exclusion must be exercised individually by the Settlement Class Member (or their Legally Authorized Representative who is not the settlement class member's counsel), even if the settlement class member is represented by counsel.  Attempted collective group, class, or subclass requests for exclusions shall be ineffective and disregarded by the Settlement Administrator.

26.

7.2     The Settlement Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to Class Counsel and counsel for DoorDash, as requested.

7.3     The Settlement Administrator shall prepare a list of all persons who timely and properly requested exclusion from the Settlement Class (the Opt-Out List) and shall, before the Final Approval Hearing, submit an affidavit to the Court attesting to the accuracy of the list.

7.4     All Settlement Class Members who are not included in the Opt-Out List approved by the Court shall be bound by this Agreement, and all their claims shall be dismissed with prejudice and released as provided for herein, even if they never received actual notice of the Action or this proposed Settlement.

7.5     The Settlement Administrator, in its sole discretion, shall determine whether a request for exclusion was timely and properly submitted. The Settlement Administrator's decision shall be final, binding, and nonappealable.

7.6     The Plaintiffs agree not to request exclusion from the Settlement Class.

7.7     Settlement Class Members may object to or opt out of the Settlement, but may not do both. Any Settlement Class Member who submits a timely request for exclusion may not file an objection to the Settlement or receive a Settlement Payment, and shall be deemed to have waived any rights or benefits under the Settlement Agreement.

7.8     Notwithstanding the submission of a timely request for exclusion, Class Members will still be bound by the settlement and release of the PAGA Claims or remedies under the Final Judgment pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Requests for exclusion do not apply to the PAGA Claims, and will not be effective to preclude the release of the PAGA Claims.

7.9     No later than three (3) business days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide to Class Counsel and counsel for DoorDash the Opt-Out List together with copies of the opt-out requests. Notwithstanding any other provision of this Settlement Agreement, if more than one thousand (1,000) Settlement Class Members exercise their right to opt out of the Settlement, DoorDash at its sole and absolute discretion may elect to rescind, void, and revoke

27.

the entire Settlement Agreement by sending written notice that it revokes the Settlement pursuant to this Paragraph to Class Counsel within ten (10) business days following receipt of the Opt-Out List.

Named Plaintiffs and their counsel shall support the settlement and take such steps as are reasonably necessary to effectuate the settlement. Plaintiffs' counsel shall recommend the settlement to settlement class members, and Plaintiffs' counsel agree to use their best efforts to resolve any objections to the release of all claims described in the Scope of Release, including all class actions, putative class actions, individual-plaintiff actions, and arbitrations. DoorDash, in turn, agrees to use its best efforts to cooperate with Plaintiffs' counsel's efforts in this regard. Named Plaintiffs shall not opt out of or object to the settlement, nor shall their counsel directly or indirectly encourage settlement class members to opt out of or object to the settlement.

## VIII.  PROCEDURES FOR OBJECTIONS

8.1     Any Settlement Class Member that wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement must provide to the Settlement Administrator (who shall forward it to Class Counsel and counsel for DoorDash), and file with the Court, a timely statement of the objection, as set forth below.

8.2     To be timely, the objection must be postmarked and mailed to the Settlement Administrator, and filed with the Court, no later than the Exclusion/Objection Deadline. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether objection has been timely submitted.

8.3     The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the specific legal and factual basis for each objection argument; and (iv) a statement whether the objecting person or entity intends to appear at the Final Approval Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number. All objections shall be signed by the objecting Settlement Class Member (or his Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

8.4     Any Settlement Class Member (and/or his/her attorney), or any attorney working for a governmental entity or other third party, who wishes to appear in the Action to object to the Settlement or who is representing or assisting a Settlement Class Member in connection with any objection to the Settlement (including, but not limited to, by drafting or preparing papers for an objection on behalf of a Settlement Class Member) must provide to the Settlement Administrator (who shall forward it to Class Counsel and counsel for DoorDash) and file with the Clerk of the Court a notice of appearance no later than the Exclusion/Objection Deadline.

8.5     The right to object to the proposed Settlement must be exercised individually by a Settlement Class Member or his attorney.  Attempted collective, group, class, or subclass objections shall be ineffective and disregarded.  Individual objections may be submitted by a Settlement Class Member's Legally Authorized Representative.

8.6     Any Settlement Class Member who does not file a timely notice of intent to object in accordance with this Section shall waive the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the proposed Settlement, the Plan of Allocation, the Class Counsel Award and the Service Awards.  Settlement Class Members who object to the proposed Settlement shall remain Settlement Class Members, and shall be deemed to have voluntarily waived their right to pursue an independent remedy against DoorDash and the Released Parties. To the extent any Settlement Class Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Approval order and Judgment.

8.7     It shall be Class Counsel's sole responsibility to respond to any objections made with respect to any application for the Class Counsel Award and Service Awards.

## IX.    RELEASES

9.1     The Released Claims against each and all of the Released Parties shall be released and dismissed with prejudice and on the merits (without an award of costs to any party other than as provided in this Agreement) upon entry of the Final Approval order and Judgment.

9.1    As of the Final Approval Date, the Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, individually and on behalf of their heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, agree to forever release, discharge, hold harmless, and covenant not to sue each and all of the Released Parties from each and all of the Named Plaintiffs' General Released Claims (in the case of the Plaintiffs) and the Settlement Class Members' Released Claims (in the case of the Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List), and by operation of the Final Judgment shall have fully and finally released, relinquished, and discharged all such claims against each and all of the Released Parties; and they further agree that they shall not now or hereafter initiate, maintain, or assert any Named Plaintiffs' General Released Claims (in the case of Plaintiffs) and any Settlement Class Members' Released Claims (in the case of the Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List), against the Released Parties in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body.  Without in any way limiting the scope of the release described in Paragraphs 2.16 and 2.35, as well as the remainder of this Section, this release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing the Plaintiffs or Settlement Class Members, or by the Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Agreement.

9.2    As of the Final Approval Date, the Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, shall be permanently barred and enjoined from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or tribunal any and all Named Plaintiffs' General Released Claims (in the case of Plaintiffs) and any Settlement Class Members' Released Claims (in the case of the Settlement

Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List), as further provided in Paragraphs 2.16 and 2.35, as well as this Section.

9.3     The Plaintiffs and the Settlement Class Members expressly acknowledge that they are familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

9.4     With respect to the Settlement Class Members' Released Claims, as described in Paragraph 2.36, each Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein. In connection with the release, the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein. Nevertheless, the Settlement Class Members acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Settlement Class Members in agreeing to this release to fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Settlement Class Members' Released Claims.

9.5     With respect to the Named Plaintiffs' General Released Claims, as described in Paragraph 2.17, each Plaintiff shall be deemed to have expressly, knowingly, and voluntarily waived

31.

DocuSign Envelope ID: 4B9BCB672A0B-4122-A9C5-F5E57DA1E06A

and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein. In connection with the release, the Plaintiffs acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Plaintiffs acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Plaintiffs in agreeing to this release to fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Named Plaintiffs' General Released Claims.

9.6     Each Plaintiff further acknowledges, agrees, and understands that: (i) he or she has read and understands the terms of this Agreement; (ii) he or she has been advised in writing to consult with an attorney before executing this Agreement; (iii) he or she has obtained and considered such legal counsel as he or she deems necessary; (iv) he or she has been given twenty-one (21) days to consider whether or not to enter into this Agreement (although he or she may elect not to use the full 21 day period at his or her option).

9.7     Subject to Court approval, the Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, shall be bound by this Settlement Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

9.8     Class Counsel will also make a good faith effort to secure a general release from Daniel Marko and Mr. Marko's dismissal of his claims in *Marko v. DoorDash, Inc.* (L.A. Super. Ct., No. BC659841) with prejudice as part of the settlement.  If Class Counsel is unable to secure the release

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE (Case Nos. CGC-18-567869)

DocuSign Envelope ID: 489BCB672A0B-4133-A9C7-35B57DA1E06A

and dismissal of Mr. Marko's claims, DoorDash has the option, in its sole discretion of rescinding or voiding this agreement.

## X.     ADMINISTRATION OF THE SETTLEMENT FUND

10.1     The Settlement Administrator or its authorized agents in consultation with the Parties and subject to the supervision, direction, and approval of the Court, shall calculate the allocation of and oversee the distribution of the Settlement Fund.

10.2     The Settlement Payment Fund shall be applied as follows:

10.2.1  To pay the total costs, expenses, and fees of the Settlement Administrator incurred in connection with providing Class Notice to potential Settlement Class Members, and the management and distribution of the Settlement Payments to Responding Settlement Class Members;

10.2.2  Subject to the approval and further order(s) of the Court, to pay Plaintiffs' Service Awards based on contributions and time expended assisting in the litigation, up to a maximum of $5,000 for each of the named plaintiffs;

10.2.3  Subject to the approval and further order(s) of the Court, to pay the Class Counsel Award as ordered by the Court;

10.2.4  Subject to the approval and further order(s) of the Court, to distribute 75% of the PAGA Payment to the LWDA and 25% of the PAGA Payment to the Responding Settlement Class Members from the state of California;

10.2.5  After the Effective Date and subject to the approval and further order(s) of the Court, to distribute the Settlement Payments from the Settlement Payment Fund for the benefit of the Responding Settlement Class pursuant to the Plan of Allocation, or as otherwise ordered by the Court.

10.3     In the distribution of the Settlement Payments, the Settlement Administrator will include a statement to each Responding Settlement Class Member containing a best estimate of his or her number of total Delivery Miles being used to calculate the amount of his or her Settlement Payment as well as any indication as to whether those miles are being doubled because they opted out of arbitration or expressed an intent to file an arbitration prior to October 24, 2019, as described in Paragraphs 5.3.

10.4    As set forth in the Class Notice, Responding Settlement Class Members will be provided thirty (30) days after their receipt of the Settlement Payment and accompanying statement to disagree with DoorDash's calculation of his or her total Delivery Miles by providing documentation to show contrary miles.  The Settlement Administrator shall review any documentation submitted by a Responding Settlement Class Member and consult with the Parties to determine whether an adjustment is warranted.  The Settlement Administrator's determination of the amount of any Responding Settlement Class Member's Delivery Miles shall be binding upon the Responding Settlement Class Member and the Parties.  There will be a presumption that DoorDash's records are correct, absent evidence produced by a Responding Settlement Class Member to the contrary.  Any payment issued beyond the Settlement Payment as a result of a determination under this paragraph shall be issued from those funds in the Dispute Resolution Fund, and if the Dispute Resolution Fund has been exhausted, from funds remaining in the Settlement Distribution Fund after the Void Date but before any residual distribution or payment to *cy pres*.

10.5    If any portion of the Settlement Payment Fund (including the Dispute Resolution Fund) is not successfully redistributed to Responding Settlement Class Members after the initial Void Date (*i.e.* checks are not cashed or checks are returned as undeliverable after the second distribution), then after the Void Date for redistributed checks, the Settlement Administrator shall void the check and shall direct such unclaimed funds to be redistributed to the Responding Settlement Class Members who (1) received and cashed their initial Settlement Payments, and (2) would receive a redistribution amount greater than or equal to $50.00, calculated pursuant to the same formula used to calculate the amounts of the initial Settlement Payments.  If any portion thereafter remains unclaimed (*i.e.* checks are not cashed or checks are returned as undeliverable after the second distribution), then after the Void Date for redistributed checks, the Settlement Administrator shall void the check and shall direct such unclaimed funds to be paid to the *cy pres* recipients -- the Workers' Rights Clinic of Legal Aid at Work (in the case of California Settlement Class Members' uncashed checks) or Greater Boston Legal Services (in the case of Massachusetts Settlement Class Members' uncashed checks).

10.6     Settlement Class Members who are not on the Opt-Out List approved by the Court shall be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment with respect to all Settlement Class Members' Released Claims, regardless of whether they submitted a Claim Form or obtain any distribution from the Settlement Payment Fund.

10.7     Payment from the Settlement Payment Fund made pursuant to and in the manner set forth herein shall be deemed conclusive of compliance with this Settlement Agreement as to all Settlement Class Members.

10.8     No Settlement Class Member shall have any claim against the Plaintiffs, Class Counsel, or the Settlement Administrator based on distributions made substantially in accordance with this Settlement Agreement and/or orders of the Court.  No Settlement Class Member shall have any claim against DoorDash or its counsel relating to distributions made under this Settlement.

## XI.     EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT AGREEMENT

11.1     If the Court does not approve the Settlement as set forth in this Settlement Agreement, or does not enter the Final Approval order and Judgment on the terms described herein, or if the Court enters the Judgment and appellate review is sought, and on such review, the entry of Judgment is vacated, modified in any way, or reversed, or if the Final Approval order does not otherwise become Final, then this Settlement Agreement shall be cancelled and terminated, unless all Parties, in their sole discretion within thirty (30) days from the date such ruling becomes final, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court or any appellate court.

11.2     DoorDash shall have the right to withdraw from the Settlement if the number of Settlement Class Members who attempt to exclude themselves from the Settlement Class equals or exceeds one thousand (1,000) potential Settlement Class Members.  If DoorDash chooses, pursuant to its sole and absolute discretion, to exercise this right, it must do so within ten (10) days of receipt of the Opt-Out List as provided in Paragraph 7.9, by providing written notice to Class Counsel.

11.3     In the event that: (i) the Settlement is not approved, is overturned, or is modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is

35.

terminated, cancelled, or fails to become effective for any reason, then: (a) the Parties stipulate and agree the Settlement, this Agreement, the Second Amended Complaint, the Class Information, the Opt-Out List, and all documents exchanged and filed in connection with the Settlement shall be treated as privileged mediation communications under Cal. Evid. Code §§ 1115 *et seq.*; (b) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the exception of this paragraph, which shall remain effective and enforceable; (c) the Parties shall be deemed to have reverted nunc pro tunc to their respective status prior to execution of this Agreement, including with respect to any Court-imposed deadlines; (d) all Orders entered in connection with the Settlement, including the certification of the Settlement Class, shall be vacated without prejudice to any Party's position on the issue of class certification, the issue of amending the complaint, or any other issue, in the Action or any other action, and the Parties shall be restored to their litigation positions existing on the date of execution of this Agreement; and (e) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Settlement Agreement.  The Settlement Agreement, the Settlement, all documents, orders, and evidence relating to the Settlement, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement, the Settlement, their existence, or their terms, any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement shall not be admissible in any proceeding, and shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of unenforceability of any arbitration agreement, of the certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made, or otherwise used by any Person for any purpose whatsoever, in any trial of the Action or any other action or proceedings.  Plaintiffs, Class Counsel and the Settlement Administrator shall return to counsel for DoorDash all copies of Class Information and Opt-Out Lists and shall not use or disclose the Class Information or Opt-Out List for any purpose or in any proceeding.

36.

11.4     DoorDash does not agree or consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement of the Action. If this Settlement Agreement is terminated pursuant to its terms, or the Effective Date for any reason does not occur, all Orders certifying the Settlement Class for purposes of effecting this Settlement Agreement, and all preliminary and/or final findings regarding the Settlement Class certification order, shall be automatically vacated upon notice to the Court, the Action shall proceed as though the Settlement Class had never been certified pursuant to this Settlement Agreement and such findings had never been made, and the Action shall revert nunc pro tunc to the procedural status quo as of the date and time immediately before the execution of the Settlement Agreement, in accordance with this Settlement Agreement.

## XII.     ADDITIONAL PROVISIONS

12.1     All of the Exhibits to this Agreement are an integral part of the Settlement and are incorporated by reference as though fully set forth herein.

12.2     The Plaintiffs and Class Counsel acknowledge that an adequate factual record has been established that supports the Settlement and, apart from the limited discovery described in the next sentence, hereby waive any right to conduct further discovery to assess or confirm the Settlement. Notwithstanding the prior sentence, the Parties agree to reasonably cooperate with respect to limited confirmatory discovery to facilitate approval of the settlement and related to the last-known addresses of Settlement Class Members.

12.3     Unless otherwise noted, all references to "days" in this Agreement shall be to calendar days.  In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

12.4     This Agreement constitutes the full and complete agreement of the Parties hereto, and supersedes all prior negotiations and agreements, whether oral, written or otherwise, and may be amended or modified only by a written instrument signed by counsel for all Parties or the Parties' successors-in-interest.

12.5    The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.  Such extensions must be in writing to be enforceable.

12.6    The Settlement Agreement, the Settlement, the fact of the Settlement's existence, any of terms of the Settlement Agreement, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement or the Settlement, and any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (i) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of the validity of any Released Claims or of any wrongdoing or liability of DoorDash; (ii) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of any fault, wrongdoing, or omission by DoorDash in any trial, civil, arbitration, criminal, or administrative proceeding of the Action or any other action or proceedings in any court, administrative agency, arbitration or other tribunal; (iii) may not be used as evidence of any waiver of, unenforceability of, or as a defense to any DoorDash arbitration agreement; and (iv) may not be used as evidence on any class certification proceeding.

12.7    The Released Parties shall have the right to file the Settlement Agreement, the Final Approval order and Judgment, and any other documents or evidence relating to the Settlement in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.8    The Parties to the Settlement Agreement agree that the Total Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, resulted from an arm's-length mediation session facilitated by Mark Irvings, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

12.9    The Plaintiffs and Class Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of the claims that the Plaintiffs asserted against

DoorDash, including the claims on behalf of the Settlement Class, and that it promotes the best interests of the Settlement Class.

12.10   To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

12.11   The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

12.12   This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement and its Exhibits.

12.13   This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

12.14   The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement Agreement and to resolve any objections to the release of all Claims.

12.15   This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Released Party hereto may merge, consolidate, or reorganize.

12.16   This Settlement Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement.

DocuSign Envelope ID: 489BCB672A0B-4122-A9C7-E5E57DA1E06A

12.17   Except where this Settlement Agreement itself provides otherwise, all terms, conditions, and Exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

12.18   This Settlement Agreement shall be governed by California law.  Any dispute regarding the Settlement Agreement shall first be presented to the mediator Mark L. Irving to provide guidance to the parties before the parties seek any party seeks other recourse.  Following this initial guidance, any action based on this Settlement Agreement, or to enforce any of its terms, shall be venued in San Francisco County Superior Court, which shall retain jurisdiction over all such disputes; except however that all Parties to this Settlement Agreement shall be subject to the jurisdiction of San Francisco County Superior Court for all purposes related to this Settlement Agreement.  This paragraph relates solely to the law governing this Settlement Agreement and any action based thereon, and nothing in this paragraph shall be construed as an admission or finding that California law applies to the Released Claims of any Plaintiffs or Settlement Class Members who reside outside of the state.

12.19   The Court shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement for the purpose of the administration and enforcement of this Settlement Agreement.

12.20   The headings used in this Settlement Agreement are for the convenience of the reader only, and shall not affect the meaning or interpretation of this Settlement Agreement.

12.21   In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

12.22   Each Party to this Settlement Agreement warrants that he, she, or it is acting upon his or its independent judgment and upon the advice of his or its counsel, and not in reliance upon any warranty or representation, express or implied, of any nature of any kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

12.23   Each counsel signing this Settlement Agreement on behalf of his/her clients who are unable to sign the Agreement on the date that it is executed by other Parties represents that such counsel is fully authorized to sign this Settlement Agreement on behalf of his/her clients; provided,

40.

DocuSign Envelope ID: 480BCB672A0B-4122-A9C5-F35E57DA1E06A

however, that all Parties who have not executed this Agreement on the date that it is executed by the other Parties shall promptly thereafter execute this Agreement and in any event no later than one (1) week after the Agreement has been executed by counsel.

Dated: November 21 20, 2019

By: _____
CYNTHIA MARCIANO
PLAINTIFF

Dated: November 21, 2019

By: _____
DAVID CRISTINI
PLAINTIFF

Dated: November 21, 2019

By: _____
DARNELL AUSTIN
PLAINTIFF

Dated: November 21, 2019

By: _____
MANUEL MAGANA
PLAINTIFF

Dated: November 21, 2019

By: _____
JARED ROUSSEL
PLAINTIFF

Dated: November 21, 2019

By: _____
DocuSigned by:
DA803C692E1945F...
VICE PRESIDENT, LEGAL,
DOORDASH, INC.
DEFENDANT

41.

DocuSign Envelope ID: 480BCB67-2A0B-4132-A9CF-75D57DA1E06A

1   Dated: November 21                    By: _____
2   2019                                  Joshua S. Lipshutz
                                          GIBSON DUNN & CRUTCHER LLP

3                                         Attorneys for Defendant
                                          DOORDASH, INC.
4                                         (Approved As to Form Only)

5   Dated: November 21, 2019              By: _Shannon Liss-Riordan_
6                                         Shannon Liss-Riordan
                                          LICHTEN & LISS-RIORDAN, P.C.
7
                                          Attorney for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42.

# Exhibit 1
# to Settlement Agreement

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
## AND FINAL APPROVAL HEARING

*Marciano v. DoorDash, Inc.*, Case No. CGC-18-567869 (S.F. Sup. Ct.)

**The Court authorized this notice.  This is not a solicitation from a lawyer.**

Pursuant to the Order of the Superior Court for the State of California for the County of San Francisco, you are hereby notified that a proposed settlement has been reached in the above-referenced cases brought on behalf of the following individuals:

> All individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California from August 30, 2016 through DATE and performed at least one delivery in California from August 30, 2016 through DATE;

> All individuals in Massachusetts who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts from September 26, 2014 through DATE and performed at least one delivery in Massachusetts from September 26, 2014 through DATE.

You have been identified by DoorDash records as a member of the Settlement Class.  Please read this entire notice carefully.  It may affect your legal rights to money you may be owed.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Participate in the Settlement** | If you wish to receive a share of the Settlement proceeds, **you must submit a Claim, which you can do electronically or by mail, as explained below in paragraph 11.**  [A hyperlink will be included here that will take class members down to paragraph 11.] ***In order to receive your share of the Settlement if the Court grants final approval of the Settlement, please return this form no later than _____, 2019.*** |
| **Exclude Yourself from the Settlement (Opt-Out)** | If you do not want to participate in the Settlement, you must mail a written Request for Exclusion to the Settlement Administrator postmarked no later than _____, 2019, or else you will be bound by the Settlement and the Release if the Court grants final approval of the Settlement. Please refer to pages 6-7 below for instructions on excluding yourself. |
| **Object to the Settlement** | If you wish to object to the Settlement, you may mail a written objection to the Settlement Administrator postmarked no later than _____, 2019, or make your objection at the Fairness Hearing. Please refer to pages 7-9 below for instructions on objecting. |
| **Participate in the Hearing** | If you submit a written objection to the Settlement, you may also indicate in the objection whether you wish to appear and be heard at the time of the Fairness Hearing. You may also appear and be heard at the Fairness Hearing without submitting a written objection. |

**Which option you choose is entirely up to you.  No matter your choice, it will not impact your relationship with DoorDash.**

**THESE RIGHTS AND OPTIONS, INCLUDING THE DEADLINES BY WHICH TO EXERCISE THEM, ARE EXPLAINED IN THIS NOTICE.**

www.[WEBSITE].com

| **Do Nothing** | If you do nothing with respect to this notice, and the Court grants final approval of the Settlement, you will <u>not</u> receive a share of the Settlement and you will be bound by the terms of the Settlement. |
|---|---|

## TABLE OF CONTENTS

**GENERAL INFORMATION REGARDING THIS NOTICE**......................................................3

    What Is This Notice About? ....................................................................3

    What Is This Lawsuit About? ..................................................................3

**SUMMARY OF THE SETTLEMENT** ....................................................................4

    Who Is Included in the Settlement? ..........................................................4

    What Are the Important Terms of the Settlement?............................................4

    What Are My Rights as a Settlement Class Member?..........................................6

    Class Counsel...............................................................................8

    Final Settlement Approval Hearing ..........................................................8

    Getting More Information....................................................................9

## GENERAL INFORMATION REGARDING THIS NOTICE

### WHAT IS THIS NOTICE ABOUT?

A proposed settlement (the "Settlement") has been reached in the cases *Marciano v. DoorDash, Inc.*, Case No. CGC-18-567869 (S.F. Sup. Ct.) and *Austin v. DoorDash, Inc.*, No. 1:17-cv-12498 (D. Mass.) ("*Austin*"). These cases have been consolidated for settlement purposes and are proceeding as part of the *Marciano v. DoorDash, Inc.* case. The Court has preliminarily approved the Settlement and has directed the parties to notify the Settlement Class of the Settlement.

You have received this notice because DoorDash's records indicate that you are a Settlement Class Member. This notice is designed to inform you of how you can claim a share of the settlement payment, elect not to participate in the Settlement, or object to the Settlement.

### WHAT IS THIS LAWSUIT ABOUT?

Plaintiffs claim they and others who used the DoorDash platform to complete deliveries have been improperly classified as independent contractors by DoorDash, and have sought relief under various California Labor Code provisions and Section 17200 of the California Business and Professions Code and the Massachusetts wage laws. Plaintiffs primarily seek reimbursement of their necessary business expenses, which they contend is required by both California and Massachusetts law. Plaintiffs have also asserted claims on a representative basis, seeking penalties under the Private Attorneys General Act of 2004 ("PAGA") on behalf of the state of California and California DoorDash delivery drivers.

DoorDash denies Plaintiffs' allegations and instead contends, among other things, that those who used the DoorDash platform to complete deliveries were correctly classified as independent contractors.

The Court has not ruled whether either party is correct.

After good-faith negotiations with an experienced, neutral mediator, in which both sides recognized the substantial risk of an uncertain outcome, the parties agreed to settle their dispute pursuant to the terms and conditions of a negotiated Settlement. The parties and their counsel have concluded that the Settlement is advantageous, considering the risks and uncertainties of continued litigation. The parties and their counsel have determined that the Settlement is fair, reasonable, and adequate and is in the best interests of the members of the Settlement Class.

The Settlement represents a compromise and settlement of disputed claims. Nothing in the Settlement is intended to be or will be construed as an admission by DoorDash that Plaintiff's claims have merit or that it has any liability to Plaintiff or the proposed class on the claims in the Action.

4

## SUMMARY OF THE SETTLEMENT

### WHO IS INCLUDED IN THE SETTLEMENT?

You have received this notice and are included in the Settlement because DoorDash's records show that you fall within the following definition:

> All individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California from August 30, 2016 through DATE and performed at least one delivery, as well as all individuals who used or attempted to use the DoorDash mobile application to offer delivery services to customers in California from August 30, 2016 through DATE;

> All individuals in Massachusetts who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts from September 26, 2014 through DATE and performed at least one delivery, as well as all individuals who used or attempted to use the DoorDash mobile application to offer delivery services to customers in Massachusetts from September 26, 2014 through DATE.

### WHAT ARE THE IMPORTANT TERMS OF THE SETTLEMENT?

1. The Settlement Fund is $39,500,000.  The Settlement Fund will fund payments to Class Members who submit a valid Class Member Claim.

2. From this Settlement Fund, amounts will be deducted for attorneys' fees and costs in the amount that the Court approves, up to one-third of the total Settlement Fund ($13,1666,665); incentive payments for the named plaintiffs, in the amount the Court approves, estimated to be $5,000 each for named plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Darnell Austin, Daniel Marko, Jesus Corona, and Jared Roussel (for a total of $35,000); a payment to the Settlement Administrator for the costs of administering the settlement, estimated to be approximately $640,000; and a payment to the State of California for PAGA penalties, in the amount of $562,500.

3. The remaining approximately $28,537,500 will be distributed to those Settlement Class Members who submit a Claim.  Only those who submit a valid Claim will receive payment from the Settlement Fund.  The Settlement Fund will be allocated to Class Members proportionally to their miles driven or traveled while completing deliveries on the DoorDash platform, with no claimant who submits a claim receiving less than $10. Settlement Class Members who opted out of the arbitration agreement or who have already filed or taken steps to file individual arbitrations prior to October 24, 2019, will have their mileage amounts doubled.  **If you want to participate in the settlement and receive your payment, be sure to file your claim!**

4. Unclaimed funds will be re-distributed to those who submit Claims and whose second payment would be more than $50; no amount of the settlement funds will revert to DoorDash.  Any funds that are not claimed (for example, if an individual does not timely cash his or her check), will be donated to Legal Aid at Work or Greater Boston Legal

Services, two non-profit organizations that advocates for employees' rights in the workplace.

5.  In addition to this monetary payment, DoorDash has agreed to the following non-monetary terms as part of the settlement:

> i.  DoorDash agrees to implement a pay model for California and Massachusetts Dashers that ensures that every dollar that a customer tips will be on top of DoorDash's contribution for that delivery, and the amount DoorDash pays to a Dasher for a delivery will not vary based on the tip amount.

6.  You **will be bound** by this Settlement if it is given final approval by the Court unless you submit a written Request for Exclusion to the Settlement Administrator, postmarked by the deadline of _____ __, 2019.  If you do mail a Request for Exclusion by the deadline in accordance with the instructions for submitting a Request for Exclusion, you will be excluded from the Settlement and will not receive a Settlement Share, but you will retain the right you may have, if any, to pursue a claim against DoorDash.

7.  If the Court does not grant final approval of the Settlement, or does not enter the Final Approval Order or if the Court's Final Approval Order is reversed in whole or in part on appeal, the parties have no obligations under the Settlement, and Class Members will not receive payments.

8.  The Court has appointed Simpluris to act as the Settlement Administrator to administer the Settlement.

9.  The Settlement, if given final approval by the Court, includes a release from all liability arising from claims that were or reasonably could have been asserted in this case related to allegations of independent contractor misclassification (the "Released Claims"). If you wish to review the Released Claims, please click this link or inquire with the Settlement Administrator.

10. Plaintiffs, as Class Representatives, and Class Counsel, support the Settlement.  Their reasons include the risk of being unable to pursue this case as a class action on behalf of all Class Members, the risk of a trial on the merits, the inherent delays and uncertainties associated with litigation, and the possibility that the Class is not entitled to any recovery. Based on their experience litigating similar cases, Class Counsel believes that further proceedings in this case would be uncertain.  Many courts have already enforced DoorDash's arbitration agreement, which creates significant obstacles for most Class Members to bring actions in court to recover any damages for the violations alleged here. Therefore, upon careful consideration of all the facts and circumstances of this case, as well as the potential damages that could be recovered, Class Counsel believes that the Settlement is fair, reasonable, and adequate.

## WHAT ARE MY RIGHTS AS A SETTLEMENT CLASS MEMBER?

11. **Participating in the Settlement:**

> To submit a claim electronically, **click on this link**, or go to **www.[WEBSITE].com** and enter your Claimant ID and Verification Number, provided below.  [Website name will be linked to website where claims can be submitted; Claimant ID and Verification Number will be automatically entered for Class Members

who enter the website through this link.]

> Claimant ID: [__]
> Verification Number: [__]

To submit a claim by paper, please complete and return the enclosed claim form (which you will have received if you are receiving this notice by mail).  If you need a paper claim form, please contact the Settlement Administrator at (8XX) [__-____] or [__]@[__].com.

**In order to receive a monetary payment from this settlement, please submit your claim no later than [__].**

12.    **Receiving a Settlement Payment:**  If you wish to receive payment from this Settlement, please submit a valid and timely Claim no later than _____ __, 2019.

13.    **Excluding Yourself from the Settlement (Opt-Out):**  If you do not wish to participate in the Settlement, you must mail a written Request for Exclusion to the Settlement Administrator.   The Request for Exclusion must include: (1) the Settlement Class Member's name, address, and telephone number; (2) a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class and that the Settlement Class Member understands that he or she is still bound by the release of the PAGA Claims upon Final Approval of the Settlement and Final Judgment; and (3) the physical ("wet ink") signature of the Settlement Class Member or the Legally Authorized Representative of the Settlement Class Member (who is not the class member's counsel). The Request for Exclusion must be completed, signed, and mailed to the Settlement Administrator at the address identified below, postmarked no later than _____ __, 2019.   A Settlement Class Member who fails to return a Request for Exclusion in the manner and by the deadline specified above will be bound by all terms and conditions of the Settlement and the Judgment, regardless of whether he or she has objected to the Settlement.  Requests for exclusion must be exercised individually by the Settlement Class Member (or their Legally Authorized Representative who is not the Settlement Class Member's counsel), even if the Settlement Class Member is represented by counsel.  Attempted collective group, class, or subclass requests for exclusions shall be ineffective and disregarded by the Settlement Administrator.

Any person who files a complete and timely Request for Exclusion will, upon receipt, no longer be a member of the Settlement Class and will not be eligible to receive a payment. Any such person will retain the right, if any, to pursue at his or her own expense a claim against DoorDash.  A Request for Exclusion that does not fulfill the requirements above will be deemed invalid.

If a Settlement Class Member submits both an objection and a valid and timely Request for Exclusion, the Request for Exclusion will be accepted and the objection will be rejected.  If a Settlement Class Member submits both a Claim and a Request for Exclusion from the Settlement, the Settlement Class Member will be given an opportunity to clarify his or her response.

Please note that Requests for Exclusion do not apply to the release of PAGA claims contemplated by the Settlement.  Settlement Class Members who validly and timely submit a Request for Exclusion will nevertheless be bound by the settlement and release of PAGA claims, and therefore any PAGA claims that any Settlement Class Member may possess for the Settlement Class Period shall be extinguished if the Court approves the

Settlement.
**There will be no retaliation or adverse action taken against any Class Member who participates in the Settlement, elects not to participate in the Settlement, or objects to the settlement.**

14.    **Objecting to the Settlement:** If you think the settlement is unfair and should not be given final approval, you may mail an objection to the Settlement Administrator. You may also attend the Fairness Hearing and make your objection to the Court at that time, without submitting an objection to the Settlement Administrator.

If the Court does not give final approval to the settlement, no settlement payments will be sent out and the lawsuit will continue.

If a Settlement Class Member submits both an objection and a valid and timely Request for Exclusion, the Request for Exclusion will be accepted and the objection will be rejected.

All written objections and supporting papers must be mailed to the Settlement Administrator at the Settlement Administrator's address below and be postmarked on or before _____, 2019.

15.    **Participating in the Final Approval Hearing:**  You may appear and object at the Final Approval Hearing in person or appear through counsel of your choice, paid at your own expense, and be heard at the time of the Final Approval Hearing, if you wish to do so.  If the Court overrules your objection and gives final approval to the Settlement, you will be bound by the terms of the Settlement and receive a Settlement Payment if you submitted a Claim.

16.    **Keep Your Information Up to Date:** It is your obligation to keep the Settlement Administrator informed of any changes in your mailing address until your Settlement Payment is received, should final approval of the Settlement be granted.  Failing to provide the Settlement Administrator with any change of your mailing address may prevent you from receiving your Settlement Payment.

17.    **The Settlement Administrator's Address.**  You may send a paper Claim, Request for Exclusion, or Objection to the Settlement Administrator at the following mailing address:

[Address]
[Address]

| CLASS COUNSEL |
| --- |

Contact information for Class Counsel is provided below:

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
www.llrlaw.com
Phone: (617) 994-5800
claims@llrlaw.com, Firm Settlement Administrator

**FINAL SETTLEMENT APPROVAL HEARING**

The Court has scheduled the Settlement Fairness Hearing for [      ] on [      ], 2019, in the Superior Court for the County of San Francisco, Department 302, 400 McAllister St., San Francisco, California, 94102 to determine whether the Settlement should be finally approved as fair, reasonable, and adequate.  The Court will also be asked to approve the requests for the Class Representative Enhancement Payment and the Class Counsel Award and Costs.

The hearing may be postponed without further notice to the Class.  **It is not necessary for you to appear at this hearing.**  If you plan to attend the Fairness Hearing, you may contact Class Counsel to confirm the date and time, as the hearing may be rescheduled without further notice.

**GETTING MORE INFORMATION**

This notice summarizes the proposed settlement.  For more precise terms and conditions of the Settlement, please contact Class Counsel (contact information above), visit the Settlement website at www.[WEBSITE].com, or contact the Settlement Administrator at XXX-XXX-XXXX.  You may also visit the office of the Clerk of Court for the San Francisco County Superior Court located at 400 McAllister St., San Francisco, California 94102, between 8:30 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT, DOORDASH OR DOORDASH'S COUNSEL FOR INFORMATION!  YOU MAY CALL THE SETTLEMENT ADMINISTRATOR OR CLASS COUNSEL LISTED ABOVE.**

Dated: _____, 2019.
_____
By Order of the Court

# Exhibit 2
# to Settlement Agreement

SHANNON LISS-RIORDAN (SBN 310719)
sliss@llrlaw.com
ANNE KRAMER (SBN 315131)
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorney for Plaintiffs Cynthia Marciano
and David Cristini in their capacity as Private
Attorney General Representatives*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CYNTHIA MARCIANO, DAVID CRISTINI, DARNELL AUSTIN, MANUEL MAGANA, and JARED ROUSSEL,<br><br>        Plaintiffs,<br><br>v.<br><br>DOORDASH, INC.,<br><br>        Defendant. | Case No.: CGC-18-567869<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: December 17, 2019<br>Hearing Time: 8:30 am<br>Dept.:  302<br><br>Trial Date:  None Set |

Plaintiffs have filed a Motion for Preliminary Approval of the class action settlement reached with Defendant DoorDash, Inc.  A preliminary approval hearing was held on December 17, 2019.  The Court has carefully considered the Settlement Agreement together with all exhibits thereto, all the filings related to the Settlement, the arguments of counsel, and the record in this case.  The Court hereby gives its preliminary approval of the Settlement; finds that the Settlement and Settlement Agreement are sufficiently fair, reasonable and adequate to allow dissemination of notice of the Settlement to the Settlement Class and to hold a Fairness Hearing; orders the Class Notice be sent to the Settlement Class in accordance with the Settlement Agreement and this Order; and schedules a Fairness Hearing to determine whether the proposed Settlement is fair, adequate and reasonable.

**IT IS HEREBY ORDERED THAT:**

1.  The Settlement Agreement is hereby incorporated by reference in this Order, and all terms or phrases used in this Order shall have the same meaning as in the Settlement Agreement.

2.  The Court finds that the terms of the Settlement Agreement preliminarily appear to be fair, reasonable, and adequate, and within the range of possible approval and sufficient to warrant providing notice to the Settlement Class, when balanced against the probable outcome of further litigation, given the risks relating to liability and damages. It further appears that investigation and research has been conducted such that counsel for the Parties are reasonably able to evaluate their respective positions.  It further appears to the Court that the Settlement will avoid substantial additional costs by all parties, as well as the delay and risks that would be presented by the further prosecution of the Action, and that it will provide substantial benefits to Class Members going forward.  It appears that the Settlement has been reached as a result of intensive, arm's-length negotiations utilizing an experienced third party neutral mediator.

3.  The Court certifies, for settlement purposes only, the following Settlement Class: "All individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California from August 30, 2016

through the date of this Order and performed at least one delivery in California from August 30, 2016 through the date of this Order; All individuals in Massachusetts who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts from September 26, 2014 through the date of this Order and performed at least one delivery in Massachusetts from September 26, 2014 through the date of this Order."

4. The Court appoints as class representatives, for settlement purposes only, Named Plaintiffs Cynthia Marciano, David Cristini, Darnell Austin, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel. The Court finds, for settlement purposes only, that the Named Plaintiffs will adequately represent the Settlement Class.

5. Pursuant to the Parties' Agreement, the Second Amended Complaint attached as Exhibit 3 to the Parties' Class Action Settlement Agreement is hereby deemed filed.

6. For settlement purposes only, the Court designates as Class Counsel the law firm of Lichten & Liss-Riordan, P.C.  The Court preliminarily finds that, based on the work Class Counsel have done identifying, investigating, and prosecuting the claims in this action; Class Counsel's experience in handling class actions and claims of this type asserted in this Action; Class Counsel's knowledge of the applicable law; and the resources Class Counsel have and will commit to representing the class, that Class Counsel have represented and will represent the interests of the Settlement Class fairly and adequately.

7. Simpluris shall administer the Settlement in accordance with the terms and conditions of this Order and the Settlement Agreement.

8. The Court hereby conditionally certifies the proposed Settlement Class and conditionally finds that, solely for the purposes of approving this Settlement and for no other purpose and with no other effect on this litigation, the proposed Settlement Class meets the requirement for certification under section 382 of the California Code of Civil Procedure including that: (a) the proposed Settlement Class is ascertainable and so numerous that joinder of all members is impracticable; (b) there are predominant questions of law or fact

common to the Settlement Class, and there is a well-defined community of interest amongst the Settlement Class with respect to the subject matter of the litigation; (c) the claims of the Named Plaintiffs are typical of the claims of the members of the Settlement Class; (d) the Named Plaintiffs will fairly and adequately protect the interests of the members of the class; (e) a class action is superior to other available methods for an efficient method of adjudication of this controversy through settlement; and (f) Class Counsel is qualified to act as counsel for the Named Plaintiffs in their individual and representative capacities.

9.    The Court hereby approves, as to form and content, the Notice of Class Action Settlement attached as Exhibit 1 to the Settlement Agreement.  The Court finds that the mailing and distribution of the Notice of Class Action Settlement in accordance with the Settlement Agreement meets the requirements of due process and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

10.   The Court approves the procedures set forth in the Settlement Agreement and the Notice of Settlement of Class Action for exclusions from and objections to the Settlement.

11.   Any Settlement Class Members who wishes to opt out from the Agreement must do so within 45 days of the Notice Date and in accordance with the terms of the Agreement.

12.   Any Settlement Class Member who wishes to object to the Agreement may submit a written objection to the Settlement Administrator within 45 days of the Notice Date and in accordance with the terms of the Agreement.

13.   Reasonable attempts will be made to update the address of any Class Member whose notice is returned as undeliverable.

14.   The Court directs that a hearing be scheduled for April __, 2020, at 9:30 a.m. (the "Fairness Hearing") to assist the Court in determining whether the Settlement is fair, reasonable and adequate; whether Final Judgment should be entered in this Action; whether Class Counsel's application for fees and expenses should be approved; and

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: CGC-18-567869

whether Class Counsel's request for enhancement payments to the Named Plaintiffs should be approved.  Plaintiffs shall file a Motion for Final Approval of Class Action Settlement (including a request for attorneys' fees, costs, and class representative service awards) no later than 10 court days before the hearing.

15.     The Court hereby preliminarily approves the plan of allocation of the Settlement Fund as described in the Settlement.

16.     Neither the Settlement, nor any exhibit, document or instrument delivered thereunder shall be construed as or deemed to be evidence of an admission or concession by DoorDash of an interpretation of, any liability or wrongdoing by DoorDash, or of the truth of any allegations asserted by Plaintiffs, Settlement Class Members or any other person.

17. If the Settlement is not finally approved, or the Effective Date does not occur, or the Settlement is terminated under its terms, or the Settlement is overturned or modified by the Court or on appeal, then: (a) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable; (b) the Parties shall be deemed to have reverted nunc pro tunc to their respective status as of the day immediately before the Parties entered into the Agreement, with the Parties to meet and confer regarding any discovery or case management deadlines that were pending at the time the Parties stayed litigation, arbitration, or other proceedings; (c) DoorDash shall be refunded any amounts paid pursuant to this Agreement but not yet spent or disbursed; (d) all Orders entered in connection with the Settlement, including the certification of the Settlement Class, shall be vacated without prejudice to any Party's position on the issue of class certification, or any other issue, in this Action or any other action, and the Parties shall be restored to their litigation positions existing on the date of execution of Settlement Agreement; and (e) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Settlement Agreement.  In such an event, this Court's orders regarding the Settlement, including this

Preliminary Approval Order, shall not be used or referred to in litigation, arbitration, or other proceedings for any purpose. Nothing in the foregoing paragraph is intended to alter the terms of the Settlement Agreement with respect to the effect of the Settlement Agreement if it is not approved.

18.   The Court directs that the following deadlines are established by this Preliminary Approval Order:

    a.   Notice to be Provided to Class Members:  within forty-five (45) days of this Preliminary Approval Order.

    b.   Opt-Out Deadline:   sixty (60) days after the Notice Date.

    c.   Written Objection Deadline: sixty (60) days after the Notice Date. Class Members may also appear and object at the Fairness Hearing without having submitted a written objection.

    d.   Claim Deadline:   sixty (60) days after the Notice Date.

    e.   Fairness Hearing:     April __, 2019, at 9:30 a.m.

**IT IS SO ORDERED.**

Date: _____

_____
Superior Court Judge

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: CGC-18-567869

# Exhibit 3
# to Settlement Agreement

1   SHANNON LISS-RIORDAN (SBN 310719)
    (sliss@llrlaw.com)
2   ANNE KRAMER (SBN 315131)
    (akramer@llrlaw.com)
3   LICHTEN & LISS-RIORDAN, P.C.
    729 Boylston Street, Suite 2000
4   Boston, MA 02116
    Telephone:    (617) 994-5800
5   Facsimile:    (617) 994-5801
6
7   *Attorneys for Plaintiffs*
8
9
10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11                  **FOR THE COUNTY OF SAN FRANCISCO**
12
13
14                                              | Case No. 18-567869
15   CYNTHIA MARCIANO, DAVID CRISTINI,
     JARED ROUSSEL, MANUEL MAGANA,              | **SECOND AMENDED CLASS ACTION**
16   DARNELL AUSTIN, DANIEL MARKO, and          | **AND PRIVATE ATTORNEYS GENERAL**
     JESUS CORONA, *on behalf of themselves and*| **ACT COMPLAINT**
17   *others similarly situated and in their capacity as*
     *Private Attorneys General Representatives*,
18
19                         Plaintiffs,
20
           v.
21
22   DOORDASH INC.,
23                         Defendant.
24
25
26
27
28

                                    1

## I.      **INTRODUCTION**

1.      This case is brought on behalf of the state of California and other similarly situated aggrieved individuals who have worked for DoorDash as delivery drivers in California and on behalf of individuals who have worked for DoorDash as delivery drivers in Massachusetts.  DoorDash Inc. ("DoorDash") provides on-demand takeout food delivery to customers at their homes and businesses through its mobile phone application and website. DoorDash is based in San Francisco, California, but it does business across the United States and extensively throughout California and Massachusetts.

2.      As described further below, DoorDash has willfully misclassified its delivery drivers including Plaintiffs in violation of Cal. Labor Code § 226.8.  Additionally, because of delivery drivers' misclassification as independent contractors, DoorDash has unlawfully required delivery drivers to pay business expenses (including expenses to own or lease a vehicle and maintain and fuel it, as well as phone/data expenses) in violation of Cal. Lab. Code § 2802 and has also failed to pay required minimum wage and overtime for all hours worked in violation of Cal. Lab. Code §§ 1194, 1197, 1198, 510 and 554.  Likewise, DoorDash has failed to provide proper itemized wage statements in violation of Cal. Lab. Code § 226(a) because it does not explain the piece-rate basis on which drivers are paid and does not break out the amount of drivers' wages and tips, among other reasons.  Plaintiffs bring their claims on a class-wide basis and pursuant to the Private Attorney General Act ("PAGA"), Cal. Lab. Code§ 2699, *et seq.,* on behalf of the state of California and all other similarly situated aggrieved employees who have been misclassified by DoorDash in California since April 30, 2017.

3.      As also described further below, DoorDash has misclassified Massachusetts delivery drivers under Mass. Gen. L. c. 149 § 148B and has violated the Massachusetts Wage Act by failing to pay drivers the state minimum wage and unlawfully requiring drivers to pay business expenses (including expenses to own or lease a vehicle and maintain and fuel it, as well as phone/data expenses).

4.     As also described further below, DoorDash has violated the federal Fair Labor Standards Act by failing to pay drivers the federal minimum wage.

## II.    PARTIES

5.     Plaintiff Cynthia Marciano is an adult resident of Santa Clara, California, where he has worked as a delivery driver for DoorDash since September 2014.

6.     Plaintiff David Cristini is an adult resident of Huntington Beach, California, where he has worked as a delivery driver for DoorDash since June 2015.

7.     Plaintiff Manuel Magana is an adult resident of San Jose, California, where he has worked as a delivery driver for DoorDash since May 2014.

8.     Plaintiff Jared Roussel is an adult resident of San Francisco, California, where he has worked as a delivery driver for DoorDash since May 2018.

9.     Plaintiff Darnell Austin is an adult resident of Whitman, Massachusetts, where has worked as a delivery driver for DoorDash since October 2016.

10.    Plaintiff Daniel Marko is an adult resident of Los Angeles County, California, where he has worked as a delivery driver for DoorDash.

11.    Plaintiff Jesus Corona is an adult resident of Los Angeles County, California where he has worked as a delivery driver for DoorDash.

12.    Defendant DoorDash, Inc. ("DoorDash") is headquartered in San Francisco, California.

## III.    JURISDICTION

13.    This Court has jurisdiction over Plaintiffs Marciano, Cristini, Magana, Marko, and Roussel's California Labor Code claims pursuant to California Code of Civil Procedure § 410.10.

14.    This Court has jurisdiction over Plaintiffs Marciano, Cristini, Marko, and Roussel's PAGA claims pursuant to California Code of Civil Procedure § 410.10.  The monetary relief which Plaintiffs seek is in excess of the jurisdictional minimum required by this Court and will be established according to proof at trial.

15.     This Court has jurisdiction over Plaintiff Austin's Massachusetts Wage Act claims pursuant to California Code of Civil Procedure § 410.10.

16.     This Court has jurisdiction over Plaintiffs' Fair Labor Standards Act claims pursuant to California Code of Civil Procedure § 410.10.

17.     Venue is proper in this Court pursuant to Code of Civ. P. §§ 395 and 395.5 because DoorDash has its principal place of business in San Francisco County.  Furthermore, Defendant engages in business activities in and throughout the State of California, including San Francisco County.

## IV.     **STATEMENT OF FACTS**

18.     DoorDash is a food delivery service, based in San Francisco, which engages delivery drivers across the state of California to deliver food to its customers at their homes and businesses.

19.     DoorDash offers customers the ability to request a driver on a mobile phone application or online through its website, who will go to the restaurant and pick up their food, then deliver it to the customer at their home or business.

20.     DoorDash holds itself out to the public as a food delivery service.  Its tagline is "Delivering Good", and its website advertises, "[w]ith your favorite restaurants at your fingertips, DoorDash satisfies your cravings and connects you with possibilities — more time and energy for yourself and those you love."

21.     Plaintiffs have driven for DoorDash at various times, including over the last year, and continue to drive for DoorDash.

22.     DoorDash classifies its delivery drivers as "independent contractors," but under California law, they should be classified as employees.

23.     DoorDash drivers perform services within DoorDash's usual course of business as a food delivery service.  The delivery drivers' services are fully integrated into DoorDash's business.  Without delivery drivers to perform deliveries, DoorDash would not exist.

24.     DoorDash delivery drivers are not typically engaged in their own food delivery business. When delivering items for DoorDash customers, they wear the "hat" of DoorDash.

25.     In addition, DoorDash maintains the right of control over the delivery drivers' performance of their jobs and exercises detailed control over them.

26.     For example, drivers must follow DoorDash's instructions regarding where to report for their shifts and where to go to pick up or await deliveries.  Drivers can be penalized or terminated for missing scheduled shifts or cancelling their shifts too close to the start time. DoorDash has collected various metrics regarding its drivers' performance, including: (1) drivers' customer rating (out of five stars, with five being the highest), which is used to gauge customers' satisfaction with a delivery; (2) drivers' acceptance rating, which gauges how many deliveries drivers were assigned and accepted over the last 100 deliveries; and (3) drivers' completion rating, which gauges the number of deliveries drivers completed that they accepted. If drivers' ratings fall below DoorDash's minimum thresholds they may be terminated.

27.     DoorDash communicates directly with customers and follows up with delivery drivers if the customer complains that something was not delivered or that the delivery otherwise failed to meet their expectations.  Based on any customer feedback, DoorDash may suspend or terminate delivery drivers.

28.     DoorDash unilaterally sets the pay scheme and rate of pay for delivery drivers' services and changes the rate of pay in its sole discretion.

29.     DoorDash does not reimburse delivery drivers for any expenses they may incur while working for DoorDash, including, but not limited to the cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the DoorDash Application.  Delivery drivers incur these costs as a necessary expenditure to work for DoorDash, which California law requires employers to reimburse.

30.     DoorDash pays its drivers a guaranteed delivery fee for each delivery plus tips they receive from customers.  DoorDash has failed to ensure that its delivery drivers receive the applicable state minimum wage for all hours worked, and delivery drivers frequently do not

receive minimum wage for all hours worked, particularly given that customers' tips cannot count toward DoorDash's minimum wage obligations.

31.     Furthermore, DoorDash does not provide transparent itemized wage statements to drivers with information regarding how their pay is calculated or what portion of pay is attributable to tips as opposed to wages from DoorDash.

32.     On April 30, 2018, the California Supreme Court issued its decision in <u>Dynamex Operations W., Inc. v. Superior Court</u>, 4 Cal. 5th 903, 416 P.3d 1 (2018), which makes clear that DoorDash delivery drivers should be classified as employees rather than as independent contractors under California law for purposes of wage-and-hour statutes like the ones at issue here.  Under the "ABC" test adopted in <u>Dynamex</u>, in order to justify classifying the delivery drivers as independent contractors, DoorDash would have to prove that its delivery drivers perform services outside its usual course of business, which it cannot do.  Notwithstanding this decision, DoorDash has willfully continued to misclassify its delivery drivers as independent contractors.

## V.   **CALIFORNIA SUB-CLASS ALLEGATIONS**

33.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel bring this case as a class action pursuant to California Code of Civil Procedure § 382 on behalf of all individuals who used the DoorDash platform and have completed at least one delivery in California since August 30, 2016.

34.     Plaintiffs and other class members have uniformly been deprived reimbursement of their necessary business expenditures

35.     The members of the class are so numerous that joinder of all class members is impracticable.

36.     Common questions of law and fact regarding DoorDash's conduct in classifying drivers as independent contractors, failing to reimburse them for business expenditures, and failing to ensure they are paid at least minimum wage and overtime for all weeks, exist as to all

members of the class and predominate over any questions affecting solely any individual members of the class. Among the questions of law and fact common to the class are:

  a.   Whether the work performed by class members—providing delivery services to customers—is within DoorDash's usual course of business;

  b.   Whether class members are typically engaged in their own businesses or whether they wear the "hat" of DoorDash when performing delivery services;

  c.   Whether class members have been required to follow uniform procedures and policies regarding their work for DoorDash;

  d.   Whether these class members have been required to bear the expenses of their employment, such as expenses for maintaining their vehicles and expenses for gas, insurance, phone and data plan.

37.   Named plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel are class members who suffered damages as a result of DoorDash's conduct and actions alleged herein.

38.   The named plaintiffs' claims are typical of the claims of the class, and the named plaintiffs have the same interests as the other members of the class.

39.   The named plaintiffs will fairly and adequately represent and protect the interests of the class.  The named plaintiffs have retained able counsel experienced in class action litigation.  The interests of the named plaintiffs are coincident with, and not antagonistic to, the interests of the other class members.

40.   The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

41.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them. The class is readily definable as

DoorDash knows which drivers have signed up to use the DoorDash platform as drivers and have completed at least one delivery since August 30, 2016.  Further, prosecution of this action as a class action will eliminate the possibility of repetitive litigation. There will be no difficulty in the management of this action as a class action.

## V.  MASSACHUSETTS SUB-CLASS ALLEGATIONS

42.     Plaintiff Darnell Austin brings this case on behalf of all individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts since September 26, 2014 and performed at least one delivery.

43.     This claim is brought pursuant to Mass. Gen. L. ch. 149 § 150 and California Code of Civil Procedure § 382.

44.     Plaintiff Austin and other class members have uniformly been deprived reimbursement of their necessary business expenditures.

45.     The members of the class are so numerous that joinder of all class members is impracticable.

46.     Common questions of law and fact regarding DoorDash's conduct in classifying drivers as independent contractors, failing to reimburse them for business expenditures, and failing to ensure they are paid at least minimum wage and overtime for all weeks, exist as to all members of the class and predominate over any questions affecting solely any individual members of the class. Among the questions of law and fact common to the class are:

> e.  Whether the work performed by class members—providing delivery services to customers—is within DoorDash's usual course of business;
>
> f.  Whether class members are typically engaged in their own businesses or whether they wear the "hat" of DoorDash when performing delivery services;
>
> g.  Whether class members have been required to follow uniform procedures and policies regarding their work for DoorDash;

h.   Whether these class members have been required to bear the expenses of their employment, such as expenses for maintaining their vehicles and expenses for gas, insurance, phone and data plan.

47.     Named plaintiff Darnell Austin is a class member who suffered damages as a result of DoorDash's conduct and actions alleged herein.

48.     The named plaintiff's claims are typical of the claims of the class, and the named plaintiff has the same interests as the other members of the class.

49.     The named plaintiff will fairly and adequately represent and protect the interests of the class.  The named plaintiff has retained able counsel experienced in class action litigation. The interests of the named plaintiff are coincident with, and not antagonistic to, the interests of the other class members.

50.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them. The class is readily definable as DoorDash knows which drivers entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts since September 26, 2014 and performed at least one delivery.  Further, prosecution of this action as a class action will eliminate the possibility of repetitive litigation. There will be no difficulty in the management of this action as a class action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI. **PAGA REPRESENTATIVE ACTION ALLEGATIONS**

52.     Plaintiffs Marciano, Cristini, and Roussel allege that DoorDash violated the Labor Code as follows: (1) failure to reimburse delivery driver employees for all necessary expenditures incurred in performing their duties, including but not limited to owning or leasing and maintaining their vehicles, fuel, phones, and data and by requiring drivers to enter into contracts that impermissibly waive their right to reimbursement of these expenses, in violation of Cal. Lab. Code §§ 2802, 2804, and 450; (2) the willful misclassification of delivery workers as independent contractors in violation of Cal. Lab. Code §§ 226.8 and 2753; (3) failure to assure that all delivery drivers received the appropriate overtime premium for all overtime hours worked beyond forty per week or eight hours per day in violation of Cal. Lab. Code §§ 1194, 1198, 510, and 554; (4) failure to provide proper itemized wage statements in violation of Cal. Lab. Code § 226(a), 226.3, and Wage Order 9-2001; (5) failure to pay the appropriate minimum wage for all hours worked in violation of Cal. Lab. Code §§ 1197, 1194, 1194.3, 1182.12, 1194.2, 1197.1, 1199 and Wage Order 9-2001; (6) collecting and/or withholding gratuities and failure to keep accurate records of gratuities in violation of Cal. Lab. Code § 351, 353; (7) failure to pay for meal and rest periods in violation of Cal. Lab. Code §§ 226.7, 512, 558, and 1198; (8) failure to timely pay all earned wages during employment and upon termination and failing to conspicuously post notice of regular pay days in violation of Cal. Lab. Code §§ 201-204, 207 and 208; (9) requiring drivers to release claims as a condition to receiving paychecks in violation of Cal. Lab. Code § 206.5; (10) collecting and receiving wages already paid in violation of Cal. Lab. Code § 221, 224; (11) failing to pay the costs of mandatory drug testing and/or physical examinations in violation of Cal. Lab. Code § 222.5; (12) secretly paying wages lower than required by statute in violation of Cal. Lab. Code § 223; (13) failing to provide sick leave benefits and failing to provide written notice of paid sick leave or paid time off to its delivery drivers in violation of Cal. Lab. Code §§ 245-49; (14) failure to provide one day's rest in seven in violation of Cal. Lab. Code § 551, 552; (15) failure to provide written notice of material terms of employment in violation of Cal. Lab. Code §§ 2810.5 and 432.5; (16) failure to keep accurate

records of hours worked and drivers' personal information in violation of Cal. Lab. Code § 1174, 1174.5, and 1175; (17) willfully refusing to pay wages in violation of Cal. Labor Code §§ 216, 218, 218.5, 218.6, and 225.5; (18) failing to pay out vested vacation time to drivers in violation of Cal. Labor Code § 227.3; (19) causing delivery drivers to be injured on the job through the serious and willful misconduct of the company in violation of Cal. Labor Code § 4553; and (20) failing to remit wages that it has withheld to benefit plans in violation of Cal. Labor Code § 227.

53.     On April 30, 2018, Plaintiff Marciano gave written notice of DoorDash's violations to the California Labor Code as alleged in this complaint to the Labor and Workforce Development Agency ("LWDA") via online filing and to Defendant DoorDash's general counsel via certified mail.  On May 7, 2018, Plaintiff Cristini gave written notice of DoorDash's violations to the California Labor Code as alleged in this complaint to the Labor and Workforce Development Agency ("LWDA") via online filing and to Defendant DoorDash's general counsel via certified mail.  On December 3, 2018, Plaintiff Roussel gave written notice of DoorDash's violations to the California Labor Code as alleged in this complaint to the Labor and Workforce Development Agency ("LWDA") via online filing and to Defendant DoorDash's general counsel via certified mail.  On November 21, 2019, Plaintiffs Marciano, Cristini and Roussel amended their prior PAGA letters and gave written notice of DoorDash's additional violations of the California Labor Code as alleged in this complaint to the Labor and Workforce Development Agency ("LWDA") via online filing and to Defendant DoorDash's general counsel via certified mail.

## VI. FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

54.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of all individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery and who have been paid less than the federal minimum wage in violation of 29 U.S.C. § 206.  Plaintiffs also brings this lawsuit pursuant to 29 U.S.C. § 216(b)

as a collective action on behalf of all individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts since September 26, 2014, and performed at least one delivery and who have been paid less than the federal minimum wage in violation of 29 U.S.C. § 206.

55.     Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiffs and other DoorDash delivery drivers are similarly situated in that they are all subject to DoorDash's common plan or practice of classifying delivery drivers as independent contractors, not reimbursing them for necessary business expenses (thereby lowering their hourly wages), not paying them overtime for all hours worked beyond forty (40) in a given week, and not ensuring that they receive at least the federal minimum wage for all weeks worked.

## COUNT I
### Expense Reimbursement
### Violation of Cal. Lab. Code § 2802

56.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Defendant's conduct, as set forth above, in misclassifying Plaintiffs as independent contractors and failing to reimburse them for expenses that they paid that should have been borne by their employer, constitutes a violation of California Labor Code § 2802.

57.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

## COUNT II
### Willful Misclassification
**Violation of Cal. Lab. Code § 226.8**

58.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Defendant's conduct, as set forth above, in continuing to classify drivers as independent contractors notwithstanding the California Supreme Court's decision in Dynamex Operations W. v. Superior Court, 4 Cal. 5th 903, 416 P.3d 1 (2018), reh'g denied (June 20, 2018), which makes clear that delivery drivers are its employees under California law, violates Cal. Lab. Code §226.8 and constitutes willful misclassification.

59.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

## COUNT III
### Minimum Wage

**Violation of Cal. Lab. Code §§ 1197 and 1194, Cal. Wage Order No. 9-2001**

60.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Defendant's conduct, as set forth above, in failing to pay Plaintiffs minimum wage for all hours worked as required by California law, violates Cal. Lab. Code §§ 1197 and 1194 and Wage Order 9-2001.

61.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile

13

application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

**COUNT IV**
**Overtime**
**Violation of Cal. Lab. Code §§ 510, 1194, 1198, Cal. Wage Order No. 9-2001**

62.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Defendant's conduct, as set forth above, in failing to pay Plaintiffs minimum wage for all hours worked as required by California law, violates Cal. Lab. Code §§ 510, 1194, and 1198 and Wage Order 9-2001.

63.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

**COUNT V**
**Pay Statements**
**Violation of Cal. Lab. Code § 226(a)**

64.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. DoorDash's conduct, as set forth above, in failing to provide proper itemized wage statements to Plaintiffs, as required by California state law, violates Cal. Lab. Code § 226(a).

65.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile

14
SECOND AMENDED COMPLAINT

application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

## COUNT VI
### Meal and Rest Period Violations
**Violation of Cal. Wage Order No. 9-2001; Cal. Labor Code §§ 226.7 & 512**

66.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference all other paragraphs as if they were set forth again herein.  DoorDash's conduct in denying drivers at least a half-hour meal break during shifts in excess of five hours and one ten-minute rest break per four hours of work performed violates Cal. Wage Order No. 9-2001; Cal. Labor Code §§ 226.7 & 512.

67.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

## COUNT VII
### Failure to Pay All Regular Wages
**Violation of Cal. Labor Code § 204**

68.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Door Dash's conduct, as set forth above, in failing to pay drivers the proper wages for all hours worked violates Cal. Labor Code § 204.

69.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile

application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

## COUNT VIII
### Waiting Time Penalties
**Violation of Cal. Labor Code §§ 201-203**

70.     Plaintiffs Marciano, Cristini, Magana, Marko, Corona, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Door Dash failed to pay drivers their final wages pursuant to Cal. Labor Code §§ 201-203 and accordingly owes waiting time penalties pursuant to Cal. Labor Code § 203.

71.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

## COUNT IX
### Unfair Business Practices
**Violation of Cal. Bus. & Prof. Code §17200, *et seq*.**

72.     Defendant's conduct, as set forth above, violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"). Defendant's conduct constitutes unlawful business acts or practices, in that Defendant has violated the California Labor Code as described above.  As a result of Defendant's unlawful conduct, Plaintiffs suffered injury in fact and lost money and property, including, but not limited to business expenses they were required to pay (and was not reimbursed for) and wages that they were due. Pursuant to California Business and Professions Code § 17203, Plaintiff seeks declaratory and injunctive relief for Defendant's unlawful conduct and to recover restitution.  The nature of this relief is in the public interest, since Defendant's violation of the Labor Code in misclassifying drivers

across California like Plaintiffs, and failing to provide them with protections of the Labor Code, harms the public interest (and not just DoorDash drivers like Plaintiffs), in that it burdens the government and taxpayers, as well as complying competitors, and also negatively harms the labor market as a whole, particularly in the delivery industry.  Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

73.     This claim is brought by Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel, on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery.

### COUNT X
### Penalties Pursuant to Labor Code Private Attorneys General Act of 2004
### Violation of Cal. Lab. Code §§ 2698, *et seq.*, 558

74.     Plaintiffs Marciano, Cristini, and Roussel reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Plaintiffs are aggrieved employees as defined by Cal. Lab. Code § 2699(c) as they were employed by DoorDash during the applicable statutory period and suffered injury as a result of DoorDash's Labor Code violations. Accordingly, Plaintiffs seek to recover on behalf of the State of California, as well as themselves and all other current and former aggrieved employees of DoorDash who have worked in California, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

75.     DoorDash delivery drivers are entitled to penalties for DoorDash's violations of Cal. Lab. Code §§ 132a, 201-204, 206.5, 207, 208, 210-214, 216, 218, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353, 432.4, 432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2753, 2802, 2804, 2810.5, and 4553 *et seq.*  Plaintiffs seek civil penalties pursuant to PAGA for: (1) failure to

reimburse delivery driver employees for all necessary expenditures incurred in performing their duties, including but not limited to owning or leasing and maintaining their vehicles, fuel, phones, and data and by requiring drivers to enter into contracts that impermissibly waive their right to reimbursement of these expenses, in violation of Cal. Lab. Code §§ 2802, 2804, and 450; (2) the willful misclassification of delivery workers as independent contractors in violation of Cal. Lab. Code §§ 226.8 and 2753; (3) failure to assure that all delivery drivers received the appropriate overtime premium for all overtime hours worked beyond forty per week or eight hours per day in violation of Cal. Lab. Code §§ 1194, 1198, 510, and 554; (4) failure to provide proper itemized wage statements in violation of Cal. Lab. Code § 226(a), 226.3, and Wage Order 9-2001; (5) failure to pay the appropriate minimum wage for all hours worked in violation of Cal. Lab. Code §§ 1197, 1194, 1194.3, 1182.12, 1194.2, 1197.1, 1199 and Wage Order 9-2001; (6) collecting and/or withholding gratuities and failure to keep accurate records of gratuities in violation of Cal. Lab. Code § 351, 353; (7) failure to pay for meal and rest periods in violation of Cal. Lab. Code §§ 226.7, 512, 558, and 1198; (8) failure to timely pay all earned wages during employment and upon termination and failing to conspicuously post notice of regular pay days in violation of Cal. Lab. Code §§ 201-204, 207 and 208; (9) requiring drivers to release claims as a condition to receiving paychecks in violation of Cal. Lab. Code § 206.5; (10) collecting and receiving wages already paid in violation of Cal. Lab. Code § 221, 224; (11) failing to pay the costs of mandatory drug testing and/or physical examinations in violation of Cal. Lab. Code § 222.5; (12) secretly paying wages lower than required by statute in violation of Cal. Lab. Code § 223; (13) failing to provide sick leave benefits and failing to provide written notice of paid sick leave or paid time off to its delivery drivers in violation of Cal. Lab. Code §§ 245-49; (14) failure to provide one day's rest in seven in violation of Cal. Lab. Code § 551, 552; (15) failure to provide written notice of material terms of employment in violation of Cal. Lab. Code §§ 2810.5 and 432.5; (16) failure to keep accurate records of hours worked and drivers' personal information in violation of Cal. Lab. Code § 1174, 1174.5, and 1175; (17) willfully refusing to pay wages in violation of Cal. Labor Code §§ 216, 218, 218.5, 218.6, and 225.5; (18) failing to pay out vested vacation time to

drivers in violation of Cal. Labor Code § 227.3; (19) causing delivery drivers to be injured on the job through the serious and willful misconduct of the company in violation of Cal. Labor Code § 4553; and (20) failing to remit wages that it has withheld to benefit plans in violation of Cal. Labor Code § 227.

76.     Cal. Lab. Code § 2699(f) provides for civil penalties for violation of all Labor Code provisions for which no civil penalty is specifically provided. There is no specified civil penalty for violations of Cal. Lab. Code §§ 206.5, 351, 353, 2802, 2810.5.  With respect to minimum wage violations under Cal. Lab. Code §§ 1197 and 1194, § 1197.1 imposes a civil penalty in addition to any other penalty provided by law of one hundred ($100) for each underpaid employee for each pay period for which the employee is underpaid in addition to an amount sufficient to recover underpaid wages and liquidated damages, and, for each subsequent violation of Labor §§1197 and 1194, two hundred and fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid in addition to an amount sufficient to recover underpaid wages and liquidated damages. With respect to overtime violations under Labor Code §§ 510 and 558, the statute imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. With respect to violations of Labor Code § 226(a), Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation of Labor Code § 226(a).   With respect to violations of Labor Code § 226.8, Labor Code § 226.8(b) imposes a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation.  With respect to violations under Labor Code § 512, the statute imposes a civil penalty in addition to any other penalty provided by law of fifty dollars

($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  With respect to violations of Labor Code § 204, the statute imposes a civil penalty in addition to any other penalty of one hundred dollars ($100) for initial violations for each underpaid employee and two hundred dollars ($200) for subsequent violations for each underpaid employee, plus 25% of the amount unlawfully withheld.  With respect to violations of Labor Code §§ 221, 223, the statute imposes a civil penalty in addition to any other penalty of one hundred dollars ($100) for initial violations for each underpaid employee and two hundred dollars ($200) for subsequent violations for each underpaid employee, plus 25% of the amount unlawfully withheld.  With respect to violations of Labor Code §§ 551, 552, the statute imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  With respect to violations of Labor Code § 1174, the statute imposes a civil penalty of five hundred dollars ($500).  With respect to violations of Labor Code § 246, the statute imposes a civil penalty of the dollar amount of paid sick days withheld multiplied by three, or two hundred fifty dollars ($250) but not to exceed four thousand dollars ($4000).

77.    Plaintiffs complied with the notice requirement of Cal. Lab. Code §2699.3 and served a written notice to the California Labor & Workforce Development Agency ("LWDA") through its website's online filing portal, and on Defendant DoorDash via Certified Mail, return receipt requested, on April 30, 2018, May 7, 2018, and December 3, 2018, respectively.  They filed a consolidated amended PAGA letter on November 21, 2019, for settlement purposes.  It has been 65 days or more since the LWDA was notified of the Labor Code violations asserted in

this Complaint, and the LWDA has not provided any notice that it will or will not investigate the alleged violations.

## COUNT XI
### Massachusetts Wage Act
### M.G.L. ch. 149 §§ 148, 148B

78.     Plaintiff Austin realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  DoorDash has violated the Wage Act by misclassifying its drivers as independent contractors pursuant to § 148B and by failing to reimburse them for their business expenses necessary to perform their work, such as gas and car maintenance, smartphones and phone data plans in violation of Gen. L. c. 149 § 148.  This claim is asserted pursuant to Mass. Gen. L. c. 149 §150 on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts since September 26, 2014 and performed at least one delivery.

## COUNT XII
### Minimum Wage
### M.G.L. ch. 151 §§ 1,7

79.     Plaintiff Austin realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  DoorDash has violated the Massachusetts Minimum Wage Law, M.G.L. c. 151, §§ 1 and 7, by failing to ensure that its delivery drivers are paid at least the full state minimum wage.  This claim is brought pursuant to M.G.L. c. 151, § 20. This claim is asserted pursuant to Mass. Gen. L. c. 149 §150 on behalf of a class of all similarly situated individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts since September 26, 2014 and performed at least one delivery.

## COUNT XIII
## <u>Unpaid Minimum Wage in Violation of FLSA</u>
## 29 U.S.C. § 207

80.     Plaintiffs reallege and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.  DoorDash's conduct, as set forth above, in failing to pay Plaintiffs minimum wage for all hours worked and in failing to pay Plaintiffs time-and-a-half their regular hourly rate for all hours worked beyond forty per week as required by federal law, violates 29 U.S.C. § 207.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a.   Declare and find that the Defendant violated Wage Order 9, the UCL, Cal. Lab. Code §§ 201-204, 226(a), 226.7, 2802, 1194, 1197, 1198, 510, 554, M.G.L. ch. 149 §§ 148, 148B; M.G.L. ch. 151 §§ 1, 7, and the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq.</u>;

b.   Certify a California subclass under Counts I through IX and appoint Plaintiffs Cynthia Marciano, David Cristini, Manuel Magana, Daniel Marko, Jesus Corona, and Jared Roussel and their counsel to represent a class of all individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in California since August 30, 2016 and performed at least one delivery;

c.   Certify a Massachusetts subclass under Counts XI and XII and appoint Plaintiff Darnell Austin and his counsel to represent a class of all individuals who entered into an agreement with DoorDash to use the DoorDash mobile application to offer delivery services to customers in Massachusetts since September 26, 2014 and performed at least one delivery;

d.   Certify this case as a collective action pursuant to 29 U.S.C. § 216(b);

e.  Award compensatory damages, including all expenses and wages owed and all damages stemming from the alleged use of tips to meet minimum-pay guarantees, in an amount according to proof;

f.  Award restitution for unfair business practices and for all claims arising out of or relating to the statutory causes of action described herein;

g.  Enter Judgment in Plaintiffs' favor on their PAGA claim pursuant to Cal. Lab. Code §2699(c);

h.  Award penalties, including penalties for timely payment of wages upon discharge, waiting time penalties, and PAGA penalties in an amount according to proof;

i.  Award liquidated damages and exemplary and/or punitive damages;

j.  Award pre- and post-judgment interest;

k.  Award reasonable attorneys' fees, interest, costs, and expenses;

l.  Award declaratory and injunctive relief (including public injunctive relief) in the form of an order requiring Defendant to comply with the California Labor Code; and

m.  Award any equitable remedies or any other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

CYNTHIA MARCIANO, DAVID CRISTINI,
MANUEL MAGANA, JARED ROUSSEL,
DANIEL MARKO, JESUS CORONA, and
DARNELL AUSTIN, on behalf of themselves and
others similarly situated and in their capacities as
Private Attorney General Representatives,

By their attorneys,


_____
Shannon Liss-Riordan, SBN 310719
Anne Kramer, SBN 315131
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com


Dated:         November ___, 2019