GIBSON, DUNN & CRUTCHER LLP
JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MICHAEL HOLECEK, SBN 281034
  mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

Attorneys for Defendant DOORDASH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JACOB MCGRATH, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DOORDASH, INC.,<br><br>　　　　　Defendant. | CASE NO. 3:19-cv-05279-EMC<br><br>**DOORDASH, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Declarations of Stanley Tang and Andrew Wilhelm and [Proposed] Order filed concurrently herewith*]<br><br>Action Filed:  August 23, 2019<br><br>Hearing Date: July 2, 2020<br>Hearing Time: 1:30 p.m.<br>Hearing Place: Courtroom 5, 17th Floor<br>Honorable Judge Edward M. Chen |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 2, 2020 at 1:30 p.m., or as soon as the matter may be heard before the Honorable Edward M. Chen of the United States District Court for the Northern District of California in the San Francisco Courthouse, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant DoorDash, Inc. will and does move this Court for an order: (1) compelling arbitration on an individual basis of the claims of each "Opt-In Plaintiff"; and (2) staying this action as to Opt-In Plaintiffs.

This motion is brought on the grounds that Opt-In Plaintiffs' claims against DoorDash are subject to a valid and enforceable arbitration agreement that requires each Opt-In Plaintiff to arbitrate those claims on an individual basis. *See* 9 U.S.C. §§ 3–4.

DoorDash's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Stanley Tang and Andrew Wilhelm, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated:  May 22, 2020                              GIBSON, DUNN & CRUTCHER LLP


By: _____*/s/  Joshua Lipshutz*_____
                                            Joshua Lipshutz

                              Attorneys for Defendant DOORDASH, INC.

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 1

RELEVANT FACTS AND PROCEDURAL HISTORY................................................ 1

    A.    DoorDash's Platform Connects Consumers, Restaurants, And Delivery Contractors ................................................................................................... 1

    B.    Signing Up For A DoorDash Account ........................................................ 1

    C.    McGrath's Counsel Files *Goldman-Hull*, Which Is Compelled To Arbitration........... 4

    D.    McGrath Files This Putative Collective Action Against DoorDash, And DoorDash Moves To Dismiss ....................................................................... 5

    E.    Despite DoorDash's Pending Motion To Dismiss, McGrath Moves For Conditional FLSA Certification And Adds 2,275 Opt-In Plaintiffs ........................... 5

    F.    DoorDash Moves To Stay This Action Pending The *Marciano* Settlement................. 5

    G.    The Court Stays This Action Pending Mediation Between The Parties ...................... 6

OPT-IN PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATION........................................ 6

    A.    The Arbitration Agreement Is Governed By The Federal Arbitration Act .................. 7

    B.    The Arbitration Agreement Is Valid And Must Be Enforced ...................................... 9

        1.    The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable ............................................................................. 9

        2.    The Gateway Issues Under The FAA Have Been Satisfied............................. 11

    C.    The Arbitration Class Action Waiver Is Valid And Enforceable ............................... 14

    D.    To Ensure That Each Opt-In Plaintiff Is Compelled To Arbitrate Under The Correct Arbitration Agreement, DoorDash Intends To Serve Limited Discovery ................................................................................................. 16

CONCLUSION ............................................................................................................ 16

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ..........................................................................................7, 15

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ...........................................................................10

*Burks v. Autonomy, Inc.*,
    2012 WL 13005954 (S.D. Fla. May 15, 2012) ....................................................8

*Chime Inst. v. Haney*,
    2013 WL 12114616 (C.D. Cal. Oct. 28, 2013) ..................................................16

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) ...........................................................................11

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ..............................................................................................8

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015) ..........................................................................................7

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
    69 Cal. App. 3d 268 (1977) ...............................................................................12

*Edwards v. DoorDash, Inc.*,
    2016 WL 7852532 (S.D. Tex. Dec. 8, 2016), *report and rec. adopted*, 2017 WL
    244862 (S.D. Tex. Jan. 19, 2017), *aff'd*, 888 F.3d 738 (5th Cir. 2018) ...................6, 14

*Edwards v. DoorDash, Inc.*,
    2017 WL 5514302 (S.D. Tex. Oct. 18, 2017), *report and rec. adopted*, 2017 WL
    5514707 (S.D. Tex. Nov. 16, 2017) ...............................................................6, 7, 14

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ..........................................................................................13

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ...........................................................................7, 8, 12, 15

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*,
    35 Cal. 3d 312 (1983) .........................................................................................9

Gibson, Dunn &
Crutcher LLP

*Fernando Gutierrez v. Jolt Delivery, LLC*,
    2018 WL 6118581 (C.D. Cal. Aug. 7, 2018) .................................................................15

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) .............................................................................................................11

*Gaffers v. Kelly Servs., Inc.*,
    900 F.3d 293 (6th Cir. 2018) .............................................................................................15

*Garbacz v. A. T. Kearny, Inc.*,
    2006 WL 870690 (N.D. Cal. Apr. 4, 2006) .......................................................................16

*Heidrich v. PennyMac Fin. Servs. Inc.*,
    2018 WL 3388458 (E.D. Cal. July 11, 2018) ....................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ..........................................................................................................10

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ..........................................................................................................9, 10

*Indep. Living Res. Ctr. S.F. v. Uber Techs., Inc.*,
    2019 WL 3430656 (N.D. Cal. July 30, 2019) ...................................................................16

*Khalatian v. Prime Time Shuttle, Inc.*,
    237 Cal. App. 4th 651 (2015) ...............................................................................................8

*Kilgore v. KeyBank, Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013) ...........................................................................................11

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) ...............................................................................................15

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015) ............................................................................13

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) .............................................................................................13

*Magana v. DoorDash, Inc.*,
    343 F. Supp. 3d 891 (N.D. Cal. 2018) ................................................................6, 7, 14, 15

*Manard v. Knology, Inc.*,
    2010 WL 2528320 (M.D. Ga. June 18, 2010) .....................................................................8

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001)..............................................................................................12

*Mastrobuono v. Shearson Lehman Hutton*,
    514 U.S. 52 (1995) .......................................................................................................7, 8, 15

Gibson, Dunn &
Crutcher LLP

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship,*
   109 Cal. App. 4th 1705 (2003)..................................................................12

*Meyer v. Uber Techs., Inc.,*
   868 F.3d 66 (2d Cir. 2017)......................................................................12

*Mohamed v. Uber Techs., Inc.,*
   848 F.3d 1201 (9th Cir. 2016)............................................................10, 11

*Montes v. San Joaquin Cmty. Hosp.,*
   2014 WL 334912 (E.D. Cal. Jan. 29, 2014)...............................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983).................................................................................7, 9

*Myrvold v. Rainbow Fiberglass & Boat Repair, LLC,*
   2018 WL 1748107 (D. Alaska Apr. 11, 2018)...........................................16

*Rent-A-Center, W., Inc. v. Jackson,*
   561 U.S. 63 (2010).................................................................................9

*Rodriguez v. Am. Techs., Inc.,*
   136 Cal. App. 4th 1110 (2006)................................................................8

*Rosenthal v. Great W. Fin. Sec. Corp.,*
   14 Cal. 4th 394 (1996)..........................................................................12

*Scott v. Yoho,*
   248 Cal. App. 4th 392 (2016)..................................................................8

*Silva v. Darden Restaurants, Inc.,*
   2018 WL 3533364 (C.D. Cal. July 20, 2018)...........................................15

*Stewart v. Preston Pipeline Inc.,*
   134 Cal. App. 4th 1565 (2005)...............................................................12

*Strotz v. Dean Witter Reynolds, Inc.,*
   223 Cal. App. 3d 208 (1990), *overruled on other grounds by Rosenthal v. Great*
   *W. Fin. Secs. Corp.,* 14 Cal. 4th 394 (1996) .............................................13

*Swift v. Zynga Game Network, Inc.,*
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................................................13

*Tompkins v. 23andMe, Inc.,*
   2014 WL 2903752 (N.D. Cal. June 25, 2014)...........................................13

*United Steelworkers v. Warrior & Gulf Navigation Co.,*
   363 U.S. 574 (1960)........................................................................11, 13

Gibson, Dunn &
Crutcher LLP

iii

*Valencia v. Smyth*,
    185 Cal. App. 4th 153 (2010).............................................................................................7

*Victrola 89, LLC v. Jaman Props. 8 LLC*,
    46 Cal. App. 5th 337 (2020)...........................................................................................7

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989).....................................................................................................15

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996).......................................................................................13

**Statutes**

9 U.S.C. § 3 ......................................................................................................................15

9 U.S.C. § 4 ...................................................................................................................9, 16

Cal. Civ. Code § 1550 ......................................................................................................12

Cal. Civ. Code § 1556 ......................................................................................................12

Cal. Civ. Code § 1565 ......................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:19-cv-05279-EMC

**INTRODUCTION**

Named Plaintiff Jacob McGrath claims that Defendant DoorDash, Inc. has misclassified all of its delivery providers nationwide as independent contractors, and he brings this lawsuit as a putative collective action under the Federal Labor Standards Act ("FLSA"). Even though the action has not been conditionally certified, 2,275 individuals have purported to "opt in" to this case as FLSA plaintiffs. The only identifying information provided to DoorDash regarding these individuals is their first and last names.

Hundreds of thousands of individuals—many of whom share the same name—have signed up to perform deliveries on the DoorDash platform. Every individual who does so must agree to the Independent Contractor Agreement ("ICA") and its arbitration provision requiring arbitration of FLSA and misclassification disputes (among others). DoorDash repeatedly has asked Plaintiff's counsel to share data, such as the email address associated with each Opt-In Plaintiff's account, that would allow DoorDash to confirm that these 2,275 individuals created a DoorDash account. To date, Plaintiff's counsel has refused to do so. But because these 2,275 individuals assert claims that could exist only if they signed up for a DoorDash account, and anyone who signs up for an account on DoorDash's platform must agree to arbitrate their disputes (or validly opt out of arbitration), based on DoorDash's best current knowledge, each Opt-In Plaintiff agreed to the ICA and thus agreed to arbitrate his or her disputes with DoorDash. This Court should compel their claims to arbitration.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

**A.      DoorDash's Platform Connects Consumers, Restaurants, And Delivery Contractors**

DoorDash is a technology company headquartered in San Francisco, California that facilitates food delivery through its online platform. Tang Decl. ¶ 4. The platform connects consumers, a broad array of restaurants, and independent-contractor delivery providers ("contractors"). *Id.* Consumers can access the platform via the DoorDash website or a mobile application ("DoorDash app") on a smartphone. *Id.* Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device. *Id.*

**B.      Signing Up For A DoorDash Account**

Although the process for becoming a DoorDash contractor has varied slightly over time, the

description below is representative of the process.[1]   To sign up for an account on the DoorDash platform, prospective contractors must enter their email address, phone number, and zip code.  Tang Decl. ¶ 10.  The sign-up screen includes a box that the user must check to proceed, which provides "I agree to the **Independent Contractor Agreement** and have read the **Dasher Privacy Policy**":



*Id.* & Ex. F.

The words "Independent Contractor Agreement" and "Dasher Privacy Policy" are highlighted in red text and hyperlinked to the ICA and Dasher Privacy Policy so that users can review those documents before indicating their agreement to them.  Tang Decl. ¶ 10 & Ex. F.  In order to create a DoorDash account, users must indicate their agreement to the ICA by checking a box.  *Id.* ¶ 11.  In the event that a user clicks the "Sign Up" button without first checking the box to indicate agreement to the ICA, he or she would be unable to proceed and would receive a message in bold black text and highlighted in a yellow box that reads "**You must accept this agreement to continue!**":

---

[1]   DoorDash has updated its ICA from time to time, but most provisions relevant to this motion have remained materially identical.  Unless otherwise specified, all references to the ICA in this motion are to the version of the ICA that became effective October 22, 2018.  The concurrently filed Tang Declaration includes as exhibits all relevant versions of the ICA.

Gibson, Dunn &
Crutcher LLP

*Id.* & Ex. G.

The following language appears in bold, capitalized text in the second paragraph of the first page of the ICA to put the user on notice of the existence of the Arbitration Agreement:

> **IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY. IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XI, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF ACCEPTING THIS AGREEMENT.**

Tang Decl. ¶ 12 & Ex. H.

Section XI of the ICA is entitled "MUTUAL ARBITRATION PROVISION."  Tang Decl. Ex. B § XI.  Under that section, "CONTRACTOR and DOORDASH mutually agree[d]" to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court, including "any and all claims arising out of or relating to this Agreement[ or] CONTRACTOR's classification as an independent contractor."  *Id.* § XI.1.

Although the ICA has an Arbitration Agreement, DoorDash does not force it on its contractors. The ICA states that each contractor has a right to opt out of the arbitration provision within "30 days" of the effective date of the ICA.  Tang Decl. Ex. B § XI.8.  The second paragraph of the ICA refers to

this opt-out right in bold, capitalized text.  *See id*. at p. 1.  Similarly, Section XI.8 of the ICA explains this opt-out right in bold font:

> **CONTRACTOR's Right to Opt Out of Arbitration Provision. Arbitration is not a mandatory condition of CONTRACTOR's contractual relationship with DOORDASH, and therefore CONTRACTOR may submit a statement notifying DOORDASH that CONTRACTOR wishes to opt out and not be subject to this MUTUAL ARBITRATION PROVISION.**  In order to opt out, CONTRACTOR must notify DOORDASH in writing of CONTRACTOR's intention to opt out by sending a letter, by First Class Mail, to DoorDash, Inc., 901 Market Street, Suite 600, San Francisco, CA, 94131.  Any attempt to opt out by email will be ineffective.  The letter must state CONTRACTOR's intention to opt out.   In order to be effective, CONTRACTOR's opt out letter must be postmarked within 30 days of the effective date of this Agreement….

*Id.* § XI.8 (emphasis in original).

The current ICA, which DoorDash began using on November 9, 2019, and which supersedes all prior contracts between the parties, requires arbitration with the International Institute for Conflict Prevention & Resolution ("CPR").  Tang Decl. Ex. E § XI.1.  All prior versions of the ICA required arbitration with the American Arbitration Association ("AAA").  *See* Tang Decl. Exs. A–D.  Any contractors who logged into the DoorDash app on or after November 9, 2019 were presented with a pop-up notification of the updated ICA and were able to scroll through the entire ICA on the pop-up screen.  *Id.* ¶ 12 & Ex. H.  They could not continue using the DoorDash platform unless they agreed to the updated terms contained in the November 2019 ICA by checking a box next to the phrase "I have read, understand, and agree to the Independent Contractor Agreement."  *Id.*  Everyone who agreed to the November 2019 ICA was given another opportunity to opt out of arbitration within 30 days.  *Id.* ¶ 13.  As a result, all DoorDash contractors who have used the app since November 9, 2019, have agreed to arbitrate their disputes with CPR, unless they opted out of the arbitration clause entirely.  DoorDash contractors who have not used the app since November 9, 2019, remain bound to arbitrate their claims with AAA, unless they opted out of arbitration.  *Id.* ¶ 12.

## C.    McGrath's Counsel Files *Goldman-Hull*, Which Is Compelled To Arbitration

The same counsel representing McGrath here first filed a misclassification action against DoorDash in March 2019 on behalf of Noah Goldman-Hull.  *See Goldman-Hull v. DoorDash, Inc.*, No. 19-cv-1513-EMC (N.D. Cal.).  The *Goldman-Hull* complaint asserted a collective FLSA claim

(among others).  DoorDash moved to compel arbitration on an individual basis of Goldman-Hull's claims.  *Id.* Dkt. 16.  On August 22, 2019, this Court granted the motion, compelled arbitration, and stayed the case.  *Id.* Dkt. 32.

**D.    McGrath Files This Putative Collective Action Against DoorDash, And DoorDash Moves To Dismiss**

The day after *Goldman-Hull* was compelled to arbitration and stayed, the same counsel filed this action on behalf of McGrath, alleging that DoorDash misclassifies delivery providers as independent contractors.  McGrath's complaint largely mirrored Goldman-Hull's, though it was limited to a single minimum-wage claim under the FLSA.  Like Goldman-Hull, McGrath seeks to represent "[a]ll current and former Dashers who worked for Defendant nationwide from any time starting three years before a collective action may be conditionally certified in the case until the date the case resolves."  Dkt. 1 ¶ 52.

After DoorDash moved to dismiss the original complaint for failure to state a claim, Dkt. 18, McGrath filed an amended complaint that alleges the same FLSA claim on behalf of the same group of nationwide delivery providers, Dkt. 28 ¶ 55.  DoorDash's motion to dismiss McGrath's amended complaint, Dkt. 33, remains pending.

**E.    Despite DoorDash's Pending Motion To Dismiss, McGrath Moves For Conditional FLSA Certification And Adds 2,275 Opt-In Plaintiffs**

In December 2019, McGrath moved for conditional certification under the FLSA.  Dkt. 46.  Despite the fact that the FLSA opt-in process normally occurs *after* conditional certification is granted, McGrath's counsel simultaneously filed 894 consent forms of "Opt-In Plaintiffs" who "consent and agree to pursue [their] potential wage claims through a lawsuit brought under the [FLSA]."  Dkts. 45, 45-1, 45-2, 45-3.  Those individuals "intend to pursue [their] claim[s] individually, unless and until the court certifies this case a collective or class action."  *Id.*

Since that time, McGrath's counsel has filed an additional 1,381 consent forms, bringing the total number of Opt-In Plaintiffs to 2,275.

**F.    DoorDash Moves To Stay This Action Pending The *Marciano* Settlement**

In the meantime, DoorDash reached a settlement in *Marciano v. DoorDash, Inc.*, No. CGC-18-567869 (S.F. Super. Ct.), and the plaintiff in *Marciano* moved for preliminary approval of a class

settlement that would release, among other things, FLSA claims brought by California delivery providers.  *See* Dkt. 49 at 1.  Because McGrath (a California delivery provider) would have his FLSA claim released as part of *Marciano* unless he opts out of the settlement, DoorDash moved to stay this case pending final approval of the *Marciano* settlement in December 2020.  *See id.*  The Court vacated the hearings on DoorDash's motion to dismiss and McGrath's motion for conditional certification and set a hearing on DoorDash's motion to stay for January 23, 2020.  Dkt. 50.

## G.  The Court Stays This Action Pending Mediation Between The Parties

In January 2020, the Court granted the parties' stipulation to vacate the hearing on DoorDash's stay motion to allow the parties to mediate.  Dkt. 67.  The parties attended mediation on March 4, 2020, but were unable to reach a settlement.  On March 27 and March 30, counsel for DoorDash requested the email addresses associated with Opt-In Plaintiffs' Dasher accounts.  Wilhelm Decl. ¶ 13.  McGrath's counsel rejected both requests.  *Id.*[2]

**OPT-IN PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATION**

With the exception of actions brought under California's Private Attorneys General Act (which is not at issue here), every time DoorDash has moved to compel arbitration under its ICA, courts have compelled arbitration and/or stayed proceedings.[3]  Opt-In Plaintiffs can offer this Court no reason to

---

[2]   The next case management conference is scheduled for June 25, 2020.  DoorDash's fully briefed motion to dismiss (Dkt. 33) and motion to stay pending the *Marciano* settlement (Dkt. 49) remain pending and have not been re-calendared for a hearing.  Briefing on Plaintiff's motion for conditional certification (Dkt. 46) remains stayed.

[3]   *See Webb v. DoorDash, Inc.*, No. 19-cv-00665, Dkt. 30 (N.D. Ga. Jan. 9, 2020) (compelling arbitration); *Gaskins v. DoorDash, Inc.*, No. 34-2019-00261915-CU-OE-GDS (Sacramento Super. Ct. Dec. 17, 2019) (Wilhelm Decl. Ex. A) (compelling arbitration); *Mckay v. DoorDash, Inc.*, No. 3:19-cv-4289, Dkt. 39 (N.D. Cal. Oct. 25, 2019) (compelling arbitration); *Farran v. DoorDash, Inc.*, No. 19STCV13945 (L.A. Super. Ct. Sept. 24, 2019) (Wilhelm Decl. Ex. B); *Goldman-Hull v. DoorDash, Inc.*, No. 19-cv-01513, Dkt. 38 at 16:23–17:7 (N.D. Cal. Aug. 22, 2019) (compelling arbitration); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 899–900 (N.D. Cal. 2018) (compelling arbitration); *Farran v. DoorDash, Inc.* (O.C. Super. Ct. Mar. 7, 2019) (Wilhelm Decl. Ex. C) (compelling arbitration); *Marciano v. DoorDash, Inc.* (S.F. Super. Ct. Dec. 7, 2018) (Wilhelm Decl. Ex. D)  (staying proceedings); *Marko v. DoorDash, Inc.* (L.A. Super. Ct. May 29, 2018) (Wilhelm Decl. Ex. E) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2017 WL 5514302, at *13 (S.D. Tex. Oct. 18, 2017), *report and rec. adopted*, 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2016 WL 7852532, at *14 (S.D. Tex. Dec. 8, 2016), *report and rec. adopted*, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) (compelling arbitration), *aff'd*, 888 F.3d 738 (5th Cir. 2018); *DoorDash, Inc. v. Marciano* (Santa Clara Super. Ct. Mar. 21, 2016) (Wilhelm Decl. Ex. F) (compelling arbitration of complaint filed

Gibson, Dunn &
Crutcher LLP

1   adopt an aberrant result here.

2   **A.   The Arbitration Agreement Is Governed By The Federal Arbitration Act**

3   Courts have unanimously concluded that the FAA governs DoorDash's ICA.  *See Magana*, 343

4   F. Supp. 3d at 899; *Farran* (Wilhelm Decl. Ex. C), at 1; *Marko* (Wilhelm Decl. Ex. E), at 2; *Edwards*,

5   2017 WL 5514302, at *13; *Marciano* (Wilhelm Decl. Ex. F), at 4.

6   All of these cases correctly applied the FAA, which declares a "liberal federal policy" favoring

7   the enforcement of arbitration agreements.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346

8   (2011); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  Section 2 of the FAA provides: "A

9   written provision in any . . . contract evidencing a transaction involving commerce to settle by

10  arbitration a controversy thereafter arising . . . *shall be valid, irrevocable, and enforceable*, save upon

11  such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis

12  added).  If an agreement is governed by the FAA, courts must effectuate Congress' intent "to move the

13  parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."

14  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

15  Here, the Arbitration Agreement is indisputably governed by the FAA for two independent

16  reasons.  ***First***, the Agreement expressly states that it is governed by the FAA (Tang Decl. Ex. B

17  § XI.1), which is sufficient to bring it within the purview of the FAA.  *See Mastrobuono v. Shearson*

18  *Lehman Hutton*, 514 U.S. 52, 63–64 (1995); *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468–

19  71 (2015).  The FAA governs contracts—even absent evidence of an effect on interstate commerce—

20  if the parties so agree.  *See Victrola 89, LLC v. Jaman Props. 8 LLC*, 46 Cal. App. 5th 337, 355 (2020)

21  ("[T]he presence of interstate commerce is not the only manner under which the FAA may apply. . . .

22  [T]he parties may also voluntarily elect to have the FAA govern enforcement of the Agreement."); 

23  *Montes v. San Joaquin Cmty. Hosp.*, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014) (courts honor

24  parties' contractual agreement to be bound by the FAA) (citing *Valencia v. Smyth*, 185 Cal. App. 4th

25  153, 179 (2010) (where no party alleged that the contract affected interstate commerce, "the language

26

27

28  before California Division of Labor Standards Enforcement); *Lyons v. DoorDash, Inc.*, No. 2:17-
    cv-01496 (C.D. Cal. May 19, 2017) (Wilhelm Decl. Ex. G).

Gibson, Dunn &
Crutcher LLP

7

1  of the Agreement . . . dictates the applicable law")); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th

2  1110, 1116, 1121 (2006).

3      The ICA contains two choice-of-law provisions that invoke the FAA.  *See* Tang Decl. Ex. B

4  § XI.1 ("This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16)

5  . . . ."); *id.* § XIV.3 ("[T]he Mutual Arbitration Provision . . . is governed by the Federal Arbitration

6  Act.").  Courts must "enforce arbitration agreements according to their terms."  *Epic Sys.*, 138 S. Ct. at

7  1619; *see also Mastrobuono*, 514 U.S. at 62–64 (construing choice-of-law provision in favor of

8  arbitration).  And the terms of the ICA are clear:  "The parties expressly agree that this [ICA] shall be

9  governed by the FAA . . . ."  Tang Decl. Ex. B § XI.1.

10      ***Second***, the FAA applies because the Agreement "affect[s] commerce."  *See Allied-Bruce*

11  *Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995) (FAA's requirement that an agreement

12  "involv[e] commerce" is "broad and is indeed the functional equivalent of 'affecting'" commerce,

13  "even if the parties did not contemplate an interstate commerce connection").  The phrase "involving

14  commerce" is "functional[ly] equivalent" to the phrase "affecting commerce," which "normally signals

15  Congress' intent to exercise its Commerce Clause powers to the full."  *Id.* at 273.  This is so "even if

16  the parties did not contemplate an interstate commerce connection."  *Id.* at 281; *see also Citizens Bank*

17  *v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he FAA encompasses a wider range of transactions than

18  those actually 'in commerce'—that is, 'within the flow of interstate commerce.'").  For the FAA to

19  apply, a party need not "show[] any specific effect upon interstate commerce," as long as "in the

20  aggregate the economic activity in question would represent a general practice . . . subject to federal

21  control."  *Alafabco*, 539 U.S. at 56–57.

22      Courts regularly apply the FAA where, as here, a contract involves transactions and

23  communications over email and the Internet.  *See Manard v. Knology, Inc.*, 2010 WL 2528320, at *3

24  (M.D. Ga. June 18, 2010) (FAA governed contract for Internet services); *Burks v. Autonomy, Inc.*, 2012

25  WL 13005954, at *3 (S.D. Fla. May 15, 2012) (FAA governed contract with "software company

26  dealing in Internet content management solutions with clients across the United States"); *see also Scott*

27  *v. Yoho*, 248 Cal. App. 4th 392, 402 (2016) (FAA governed contract when doctor engaged in Internet

28  advertising and communication with out-of-state patients by telephone, mail, and email); *Khalatian*

*v. Prime Time Shuttle, Inc.*, 237 Cal. App. 4th 651, 658 (2015) (FAA governed contract of shuttle driver who drove only in California where defendant's customers made reservations and paid for rides over Internet).

DoorDash "is a technology startup . . . that facilitates food delivery through its online platform," and its "platform connects customers, a broad array of restaurants, and [contractors].  Customers can access the platform via the DoorDash website or a mobile application on a smartphone.  Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device."  Tang Decl. ¶ 4; *see also* Wilhelm Decl. Ex. H ¶¶ 4–8 (explaining interstate nature of DoorDash's business).  Further, Opt-In Plaintiffs who agreed to the November 9, 2019, ICA expressly "acknowledge[d]" that DoorDash's "business . . . is to provide an online marketplace connection using web-based technology that connects contractors, restaurants and/or other businesses, and consumers."  Tang Decl. Ex. E § III.3.  Indeed, Opt-In Plaintiffs also agreed to "immediately notify" DoorDash if they disagreed with this characterization of DoorDash's business.  *Id.* § III.7.  They did not do so.

**B.      The Arbitration Agreement Is Valid And Must Be Enforced**

Because arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement.  9 U.S.C. § 4.  In determining whether to compel arbitration under the FAA, courts generally look at two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).  Any doubt as to the proper interpretation of the agreement on any issue related to arbitrability "should be resolved *in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability."  *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added); *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 320 (1983) (citing *Moses H. Cone* for same).

**1.      The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable**

Before reaching these gateway issues, however, a court must first determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional

antecedent agreement the party seeking arbitration asks the court to enforce . . . .").  If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then the arbitrator must decide the threshold issues.  *Howsam*, 537 U.S. at 83; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (clear and unmistakable delegation clauses must be enforced); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (same).

Here, the Arbitration Agreement clearly and unmistakably provides that, except for questions regarding the enforceability of the Arbitration Class Action Waiver, "[a]ll other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable *shall be determined exclusively by an arbitrator*, and not by any court."  Tang Decl. Ex. B § XI.3 (emphasis added).  Moreover, prior versions of the Arbitration Agreement expressly incorporate the AAA Commercial Arbitration Rules ("AAA Rules").  *See id.* at XI.5.  Rule 7 of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim[.]"  Wilhelm Decl. Ex. J at R.7(a).  The express incorporation of the AAA Rules therefore constitutes further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability.  *See Brennan*, 796 F.3d at 1130–31 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agree to arbitrate arbitrability.").  The current ICA's incorporation of the CPR Rules, *see* Tang Decl. Ex. E § XI.5, leads to the same result because the CPR rules similarly provide that "[t]he Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement," Wilhelm Decl. Ex. K at R. 8.1.  The Court should enforce this clear and unmistakable agreement and decide only the issue of the enforceability of the Arbitration Class Action Waiver.  *See Mohamed*, 848 F.3d at 1209 (enforcing delegation clause that carved out challenges to class, collective, and representative waivers).

Courts repeatedly have held that if an arbitration agreement provides an opportunity to opt out, it is not adhesive and there can be no procedural unconscionability.  *See Mohamed*, 848 F.3d at 1211;

*Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc).  Courts therefore have upheld delegation clauses found in voluntary arbitration agreements on the ground that they are not unconscionable.  *See Mohamed*, 848 F.3d at 1211 (upholding delegation clause found in arbitration agreement that provided right to opt out).

Here, DoorDash conspicuously notified Opt-In Plaintiffs of their right to opt out of the Arbitration Agreement on the very first page of the ICA, as well as in a standalone section in the Arbitration Agreement with the underlined and bolded title, "**CONTRACTOR's Right to Opt Out of Arbitration Provision**."   Tang Decl. Ex. B § XI.8.   The Arbitration Agreement states that: (1) arbitration is "not a mandatory condition of [Opt-In Plaintiffs'] contractual relationship with DOORDASH"; and (2) Opt-In Plaintiffs would "not be subject to any adverse action from DOORDASH" if they opted out.  *Id.*  Opt-In Plaintiffs had 30 days to notify DoorDash of their desire to opt out, but Plaintiff's counsel has not provided sufficient information to determine accurately whether any Opt-In Plaintiff has validly opted out of arbitration.  Tang Decl. ¶¶ 13–15.  In two recent cases, DoorDash moved to compel arbitration when a plaintiff's attempted opt-out was untimely.  In both cases, this Court granted DoorDash's motion, compelled arbitration, and stayed the case.  *See Goldman-Hull v. DoorDash, Inc.*, No. 19-cv-01513, Dkt. 38 at 16:23–17:7 (N.D. Cal. Aug. 22, 2019) (brought by same counsel as McGrath); *Mckay v. DoorDash, Inc.*, No. 3:19-cv-4289, Dkt. 39 (N.D. Cal. Oct. 25, 2019) (Judge Chesney).  This same result should occur here for those Opt-In Plaintiffs who did not opt out of the Arbitration Agreement.

### 2.      The Gateway Issues Under The FAA Have Been Satisfied

Even if this Court were to find that it, and not an arbitrator, should determine arbitrability despite the delegation clause—and it should not—the Court should compel Opt-In Plaintiffs' claims to individual arbitration because both of the "gateway" issues under the FAA have been met here.

### a.      A Valid Agreement To Arbitrate Exists

"[A]rbitration is a matter of contract."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate.  *See First Options of Chi., Inc.*

Gibson, Dunn &
Crutcher LLP

*v. Kaplan*, 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712 (2003).  The moving party's burden is light in this regard.  DoorDash need only show, by a preponderance of the evidence, that an agreement to arbitrate exists.  *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration.  Cal. Civ. Code § 1550; *see also Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal. App. 3d 268, 275 (1977).  The Arbitration Agreements contained in the November 9, 2019, ICA meet all of these requirements.

First, there is no dispute that the parties are capable of contracting.  *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").

Second, there is also no dispute that the Arbitration Agreements have a lawful purpose, *i.e.*, the prompt and efficient resolution of disputes in arbitration.  *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (finding arbitration provision had lawful purpose of resolving litigation); *see also Epic Sys.*, 138 S. Ct. at 1621 (by enacting the FAA, "Congress directed courts to . . . treat arbitration agreements as 'valid, irrevocable, and enforceable'").

Third, there is mutual consent.  Opt-In Plaintiffs affirmatively acknowledged their intent—after ample opportunity for review—to be bound by the terms of the ICA, including the conspicuous Arbitration Agreement contained therein.  *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001) ("Every contract requires mutual assent or consent (Cal. Civ. Code §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.").  Opt-In Plaintiffs' manifestation of their acceptance to the ICA by clicking "Sign Up" confirmed their agreement.  *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017) (vacating order denying motions to compel arbitration after holding that availability of a contract "only by hyperlink does not preclude a determination of reasonable notice" and that the plaintiff "unambiguously manifested his assent to [the contract] as a matter of California

Gibson, Dunn & Crutcher LLP

law").[4]  Moreover, in addition to Opt-In Plaintiffs' affirmative assent, DoorDash provided Opt-In Plaintiffs ample opportunity to review the ICA, and 30 days after accepting the ICA to opt out of the Arbitration Agreement.  Tang Decl. Ex. B § XI.8.  Opt-In Plaintiffs did not opt out of the Arbitration Agreement under the terms of the ICA (*id.* ¶ 15), further evidencing their consent to be bound by its terms.

Fourth, the Arbitration Agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes.  *See Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other."), *overruled on other grounds by Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996).  All of the elements for the valid formation of an agreement to arbitrate exist here.

### b.  Plaintiff's Claims Are Covered By The Arbitration Agreement

"[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also United Steelworkers*, 363 U.S. at 582–83 (courts must conclude that disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage").

Here, there is no ambiguity in the agreement.  Rather, the language of the Arbitration

---

[4]  *See also*, *e.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration and finding contract was formed when plaintiff clicked on a button to indicate assent to an agreement whose terms were accessible by hyperlink); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) (holding that contract had been formed when plaintiff "clicked a box or button that appeared near a hyperlink to the [contract] to indicate acceptance of the [contract]"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011) (compelling arbitration and finding video game user bound by Zynga's terms of service because she clicked the "accept" button immediately above a hyperlink which contained its terms); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862–63 (2016) (distinguishing a "browsewrap" agreement seeking to bind plaintiff to Terms of Use agreement merely by visiting the website, from an enforceable "clickwrap" agreement which requires an affirmative act of consent).

Gibson, Dunn &
Crutcher LLP

Agreement makes clear that Opt-In Plaintiffs' claims are subject to arbitration.  Specifically, Opt-In Plaintiffs agreed that the Arbitration Agreement would apply to:

> any and all claims arising out of or relating to this Agreement, ***CONTRACTOR's classification as an independent contractor***, CONTRACTOR's provision of Contracted Services to consumers, ***the payments received by CONTRACTOR for providing services to consumers***, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation … claims arising under or related to … ***[the] Fair Labor Standards Act (or its state or local equivalents)***, state and local wage and hour laws, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH.

Tang Decl. Ex. B § XI.1 (emphases added).  In the amended complaint they wish to join, Opt-In Plaintiffs allege they were misclassified as independent contractors and assert a cause of action for failure to pay minimum wage.  That claim falls squarely within the scope of the Arbitration Agreement.

Courts examining DoorDash's Arbitration Agreement have compelled arbitration of claims based on plaintiffs' independent-contractor status and all claims for damages.  *See Goldman-Hull* (Wilhelm Decl. Ex. I); *Magana*, 343 F. Supp. 3d at 899–900; *Farran* (Wilhelm Decl. Ex. C); *Marko* (Wilhelm Decl. Ex. E); *Edwards*, 2017 WL 5514302, at *13; *Edwards*, 2016 WL 7852532, at *14. The same result should follow here.

## C.     The Arbitration Class Action Waiver Is Valid And Enforceable

As noted above, under the delegation clause in the Arbitration Agreement, the parties agreed that the Court would decide the question of the enforceability of the Arbitration Class Action Waiver. Tang Decl. Ex. B § XI.3.  It is now well settled that class action waivers in arbitration agreements governed by the FAA are valid and enforceable.  In *Magana*, for example, this Court recognized the ICA's class action waiver and compelled the plaintiff to arbitration on an individual basis. 343 F. Supp. 3d at 901.  So did the *Farran* court.  Wilhelm Decl. Ex. C, at 2 ("Plaintiff does not . . . challenge the class action waivers. . . .  The Court notes that these waivers are permitted under the FAA.").  The *Marko* court likewise enforced DoorDash's class action waiver, holding that the plaintiffs in that case "shall arbitrate their independent contractor status and claims for damages on an individual basis, rather than on a class basis."  Wilhelm Decl. Ex. E, at 2.

The Supreme Court has held that the "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced *according to their terms*." *Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (emphasis added); *see also Mastrobuono*, 514 U.S. at 53–54 (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *Concepcion*, 563 U.S. at 344 (same). Most recently, the Supreme Court held that this instruction by Congress to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619.

The Arbitration Class Action Waiver bars Opt-In Plaintiffs' FLSA collective-action claim. Tang Decl. Ex. B § XI.3 (parties agreed to individualized arbitration and waived "class, collective, and representative" actions). The Ninth Circuit has long enforced contractual arbitration of FLSA claims. *See, e.g.*, *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 320 (9th Cir. 1996). If there were any doubt, several courts have recognized that *Epic Systems* compels the enforcement of such FLSA collective-action waivers. *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) ("[B]ecause the FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement that we enforce the employees' agreements as written."); *Silva v. Darden Restaurants, Inc.*, 2018 WL 3533364, at *5 (C.D. Cal. July 20, 2018) ("In *Epic Systems* the Supreme Court held that prohibitions on class action are permissible in arbitration agreements, and so Plaintiff is unable to bring this [FLSA] collective action."); *Heidrich v. PennyMac Fin. Servs. Inc.*, 2018 WL 3388458, at *3–4 (E.D. Cal. July 11, 2018) (compelling arbitration of FLSA claim); *Fernando Gutierrez v. Jolt Delivery, LLC*, 2018 WL 6118581 (C.D. Cal. Aug. 7, 2018) (same).

Under binding Supreme Court precedent, the parties' agreement not to pursue class, collective, or representative claims is valid and must be enforced. Opt-In Plaintiffs should be compelled to arbitrate their claims on an individual basis pursuant to the Arbitration Agreement, and their claims in this Court should be stayed pending the resolution of arbitration. 9 U.S.C. § 3; *Magana*, 343 F. Supp. 3d at 902 (applying the FAA's "plain language" and staying—rather than dismissing—case pending arbitration).

**D.      To Ensure That Each Opt-In Plaintiff Is Compelled To Arbitrate Under The Correct Arbitration Agreement, DoorDash Intends To Serve Limited Discovery**

In compelling Opt-In Plaintiffs to arbitration, this Court should ensure that each Opt-In Plaintiff is compelled to arbitrate with the correct arbitration organization—either CPR or AAA—depending on which agreement the Opt-In Plaintiff adopted.  *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed *in the manner provided for in such agreement*." (emphasis added)).  To that end, DoorDash intends to serve limited discovery on the Opt-In Plaintiffs to determine the email address associated with each of their DoorDash accounts.  *See Indep. Living Res. Ctr. S.F. v. Uber Techs., Inc.*, 2019 WL 3430656 (N.D. Cal. July 30, 2019) (compelling arbitration after permitting defendant to take discovery on existence of arbitration agreement); *Garbacz v. A. T. Kearny, Inc.*, 2006 WL 870690, at *3 (N.D. Cal. Apr. 4, 2006) (permitting defendant to request discovery into existence of arbitration agreement); *Chime Inst. v. Haney*, 2013 WL 12114616, at *4 (C.D. Cal. Oct. 28, 2013) ("allow[ing] limited discovery as to the making of the arbitration agreement"); *Myrvold v. Rainbow Fiberglass & Boat Repair, LLC*, 2018 WL 1748107, at *4 (D. Alaska Apr. 11, 2018) (same).  Once DoorDash has obtained those email addresses from Plaintiff's counsel, it will provide the Court with a list showing which Opt-In Plaintiffs should be compelled to CPR and which to AAA.[5]

**CONCLUSION**

For the foregoing reasons, the Court should compel arbitration of Opt-In Plaintiffs' claims.

---

[5]   Many DoorDash contractors share the same name and geographic area.  Tang Decl. ¶ 9.  Thus, the best way to determine accurately which arbitration agreement applies to which Opt-In Plaintiff is to use the email address associated with each of their DoorDash accounts.  *Id*.  DoorDash has repeatedly and informally—but thus far unsuccessfully—sought this information from Opt-In Plaintiffs' counsel.  Wilhelm Decl. ¶ 13.

Gibson, Dunn &
Crutcher LLP

1    Dated:  May 22, 2020               GIBSON, DUNN & CRUTCHER LLP

2

3                              By:_____*/s/ Joshua Lipshutz*_____

4                                     Joshua Lipshutz

5                       Attorneys for Defendant DOORDASH, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Timothy Kolesk, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071-3197, in said County and State.  On May 22, 2020, I served the following document(s):

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**DECLARATION OF STANLEY TANG**

**DECLARATION OF ANDREW WILHELM**

**[PROPOSED] ORDER**

On the parties stated below, by the following means of service:

| | |
|---|---|
| Robert R. Debes, Jr. | Melinda Arbuckle |
| bdebes@eeoc.net | marbuckl@baronbudd.com |
| Ricardo J. Prieto | SHELLIST | LAZARZ | SLOBIN LLP |
| rprieto@eeoc.net | 15910 402 West Broadway, Suite 400 |
| SHELLIST | LAZARZ | SLOBIN LLP | San Diego, California 92101 |
| 11 Greenway Plaza, Suite 1515 | Telephone: (713) 621-2277 |
| Houston, Texas 77046 | Facsimile: (713) 621-0993 |
| Telephone: (713) 621-2277 | |
| Facsimile: (713) 621-0993 | |

☑        **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑        **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2020

                                                            */s/ Timothy Kolesk*
                                                            Timothy Kolesk