Ricardo J. Prieto (Admitted *PHV*)
rprieto@eeoc.net
**SHELLIST | LAZARZ | SLOBIN LLP**
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993
(*Lead Counsel*)

Melinda Arbuckle (Cal. Bar No. 302723)
marbuckle@eeoc.net
**SHELLIST | LAZARZ | SLOBIN LLP**
402 West Broadway, Suite 400
San Diego, California 92101
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

Robert R. Debes, Jr. (Admitted *PHV*)
bdebes@debeslaw.com
**DEBES LAW FIRM**
5909 West Loop South, Suite 510
Bellaire, Texas 77401
Telephone: (713) 623-0900
Facsimile: (713) 623-0951

*Counsel for Plaintiff, Jacob McGrath,*
*and Proposed Collective Action Members*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JACOB McGRATH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DOORDASH, INC.,<br><br>Defendant. | **Case No: 3:19-cv-05279**<br><br>**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR VIOLATIONS OF FAIR LABOR STANDARDS ACT**<br><br>**FLSA COLLECTIVE ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jacob McGrath (referred to hereinafter as "Plaintiff" and/or "McGrath"), on behalf of himself and all others similarly situated, files this Second Amended Complaint against Defendant DoorDash, Inc. and shows in support as follows:

## I. INTRODUCTION AND NATURE OF ACTION

1. Defendant, DoorDash, Inc. (referred to hereinafter as "Defendant" and/or "DOORDASH"), provides takeout food delivery via a phone application and website throughout the country. To do so, it employs delivery drivers (a/k/a "Dashers"). Defendant misclassifies Plaintiff and its other Dashers as "independent contractors" rather than "employees" and fails to pay them for all hours worked.

2. This is an action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") seeking damages for Defendant's failure to pay federally-mandated minimum wages and overtime.[1] Plaintiff brings this action on behalf of similarly situated Dashers misclassified by Defendant as independent contractors nationwide as a collective action under 29 U.S.C. § 216(b).

## II. THE PARTIES

### A. Plaintiff Jacob McGrath

3. Plaintiff Jacob McGrath is an individual residing in Sonoma County, California. He has standing to file this lawsuit.

4. McGrath is an employee of Defendant who worked as a Dasher beginning on approximately October 10, 2018. He was tasked with completing food deliveries transmitted to him by Defendant using the DoorDash phone application (the "DoorDash app").

5. McGrath's written consent to participate in this action was previously filed as Exhibit 1 to the Original Complaint. (*See* ECF No. 1-1).

6. McGrath opted-out of DoorDash's arbitration agreement on November 5, 2018. (*See* ECF No. 144-1, p. 2).

[1] *See* 29 U.S.C. § 218(a) (employee is entitled to be compensated at the greater of either the federal minimum wage rate or the minimum wage rate established by the state or municipality in which the employee lives).

**B. Putative Collective Action Members**

7. The putative Collective Action Members are all current and former Dashers misclassified by Defendant as independent contractors who work or worked for Defendant nationwide at any time within the three years prior to the filing of the Original Complaint through the date of final disposition of this action.

8. McGrath seeks to represent the Collective Action Members seeking damages for claims of unpaid minimum wages and overtime pursuant to the FLSA, and is similarly situated to the Collective Action Members pursuant to 29 U.S.C. § 216(b).

**C. Defendant DoorDash, Inc.**

9. Defendant DoorDash, Inc. is headquartered in San Francisco, California. Doordash, Inc. is a Delaware corporation that is licensed to do business (and is doing business) in the State of California. Doordash, Inc. may be served through its registered agent, Registered Agent Solutions, Inc., 2138 Silas Deane Hwy. Suite 101, Rocky Hill, CT 06067.

10. At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

11. At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

12. At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

13. On information and belief, at all times relevant to this lawsuit, Defendant has had gross operating revenues or business volume in excess of $500,000.

## III. JURISDICTION AND VENUE

14. This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and the FLSA at 29 U.S.C. § 216(b).

15. The United States District Court for the Northern District of California has personal jurisdiction over Defendant because Defendant does business in California and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in California and in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District.

17. **Intradistrict Assignment:** This lawsuit should be assigned to the San Francisco Division of this Court because a substantial part of the events or omissions which give rise to this lawsuit occurred in Sonoma County.

## IV. FACTUAL BACKGROUND

18. DoorDash is a food delivery service which provides home and office food delivery to its customers.

19. Plaintiff Jacob McGrath was hired to work as a delivery driver/Dasher for Defendant. McGrath is an employee of Defendant who worked as a Dasher beginning on approximately October 10, 2018.

20. Opt-in Plaintiff Vickie Smiley ("Smiley") was hired to work as a delivery driver/Dasher for Defendant. Smiley is an employee of Defendant who worked as a Dasher beginning on approximately November 3, 2018.[2]

21. Plaintiff McGrath typically worked for DoorDash approximately ten (10) to fifteen (15) hours each week. His work consisted primarily of picking up food orders at restaurants and delivering them to DoorDash's customers via the DoorDash app. This is generally McGrath's weekly work schedule, with some variance from week-to-week.

---

[2] Thousands of other similarly situated Dashers have joined this case as opt-in Plaintiffs. One of those Dashers is Opt-in Plaintiff Vickie Smiley. Her information is provided in this Complaint to demonstrate that McGrath is similarly situated to other Dashers. Smiley's written consent to participate in this action was previously filed. (*See* ECF No. 5). Smiley opted-out of DoorDash's arbitration agreement on November 20, 2018. (*See* ECF No. 144-1, p. 3).

22. Opt-in Plaintiff Smiley typically worked for DoorDash approximately twenty (20) hours each week. Her work consisted primarily of picking up food orders at restaurants and delivering them to DoorDash's customers via the DoorDash app. This is generally Smiley's weekly work schedule, with some variance from week-to-week.

23. DoorDash does not pay Plaintiff or its other Dashers an hourly wage or a salary; rather, Plaintiff and Dashers receive the "delivery fee" that is paid by DoorDash's customers, as well as any gratuity that the customer pays to the Dasher. DoorDash, not Plaintiff or the other Dashers, determines the "delivery fee."

24. For example, while his work hours varied, Plaintiff McGrath often worked for DoorDash for approximately fifteen (15) hours in a workweek. In a typical fifteen (15) hour workweek, he earns "delivery fees" of approximately $60.00. This gross compensation paid to him by DoorDash, when divided by his hours of work, demonstrates that he was paid, on average, $4.00 per hour ($60.00 ÷ 15 [hours per week, on average] = $4.00), which is below the federal minimum wage of $7.25 per hour, and far below the California minimum wage of $12.00 per hour. *See* 29 U.S.C. § 218(a) (employee is entitled to be compensated at the greater of either the federal minimum wage rate or the minimum wage rate established by the state or municipality in which the employee lives). The pay rate applicable to McGrath for the work he performed as an employee of DoorDash in the given workweek, and on average with respect to his work for DoorDash, was in violation of the FLSA, and McGrath is owed the difference between the federally-mandated minimum wage and the actual wage rate he was paid (*i.e.*, $12.00 [California minimum wage] - $4.00 [wage rate actually paid] = $8.00) multiplied by his hours of work in that workweek ($8.00 * 15 [hours per week] = $120.00) as back wages, as well as all other applicable statutory damages and/or remedies. This pay practice and/or policy was not unique to McGrath, but was applicable to Opt-in Plaintiff Smiley and similarly situated Dashers. As a result, Plaintiff and similarly situated Dashers are entitled to damages for DoorDash's failure to compensate them at the federally-mandated minimum wage.

25. As a further example, while her work hours varied, Opt-in Plaintiff Smiley often worked for DoorDash for approximately twenty (20) hours in a workweek. In a typical twenty (20) hour workweek, she earns "delivery fees" of approximately $75.00. This gross compensation paid to her by DoorDash, when divided by her hours of work, demonstrates that she was paid, on average, $3.75 per hour ($75 ÷ 20 [hours per week, on average] = $3.75), which is below the federal minimum wage of $7.25 per hour, and far below the California minimum wage of $12.00 per hour. *See* 29 U.S.C. § 218(a) (employee is entitled to be compensated at the greater of either the federal minimum wage rate or the minimum wage rate established by the state or municipality in which the employee lives). The pay rate applicable to Smiley for the work she performed as an employee of DoorDash in the given workweek, and on average with respect to her work for DoorDash, was in violation of the FLSA, and Smiley is owed the difference between the federally-mandated minimum wage and the actual wage rate she was paid (*i.e.*, $12.00 - $3.75 = $8.25) multiplied by her hours of work in that workweek ($8.25 * 20 hours = $165.00) as back wages, as well as all other applicable statutory damages and/or remedies. This pay practice and/or policy was not unique to Smiley, but was applicable to Plaintiff McGrath and similarly situated Dashers. As a result, Opt-in Plaintiff Smiley and similarly situated Dashers are entitled to damages for DoorDash's failure to compensate them at the federally-mandated minimum wage.

26. Moreover, McGrath's and Smiley's estimates of their weekly total hours based on time recorded by the DoorDash app does not include compensable time they spent engaged to wait via the DoorDash app (*i.e.*, time they were not free to use for their own purposes). On average, this time spent waiting to be engaged adds an additional 4-5 hours per week of compensable time further diluting McGrath's and Smiley's respective hourly rates far below the applicable minimum wage.

27. For instance, in the average week where Plaintiff McGrath worked fifteen (15) hours of recorded time, which only includes transit between a restaurant and a customer's

location for delivery, he would also work, on average, an additional four (4) hours of time spent engaged to wait by driving to restaurants once orders for delivery were transmitted to him via the DoorDash app, and then waiting for food orders to be completed. As a result, Plaintiff McGrath's hourly rate of pay was actually $3.16 ($60.00 ÷ 19 hours of work = $3.16), and so he is actually entitled to $167.96 in back wages on an average week. This is calculated by finding the difference between the federally-mandated minimum wage (the higher of the federal minimum wage or any applicable state minimum wage) and the hourly rate McGrath actually received based on payment to him by DoorDash of "delivery fees" ($12.00 [California minimum wage] - $3.16 = $8.84) then multiplying the difference by his actual hours of work, including time he spent engaged to wait (*i.e.*, $8.84 * 19 [hours of work per week, on average, including waiting time] = $167.96). He is, of course, also entitled to all other applicable statutory damages and/or remedies.

28. As further example, in the average week where Opt-in Plaintiff Smiley worked twenty (20) hours of recorded time, which only includes transit between a restaurant and a customer's location for delivery, she would also work, on average, an additional five (5) hours of time spent engaged to wait by driving to restaurants once orders for delivery were transmitted to her via the DoorDash app, and then waiting for food orders to be completed. As a result, Opt-in Plaintiff Smiley's hourly rate of pay was actually $3.00 ($75.00 ÷ 25 hours of work = $3.00), and so she is actually entitled to $225 in back wages on an average week. This is calculated by finding the difference between the federally-mandated minimum wage (the higher of the federal minimum wage or any applicable state minimum wage) and the hourly rate Smiley actually received based on payment to her by DoorDash of "delivery fees" ($12.00 [California minimum wage] - $3.00 = $9.00) then multiplying the difference by her actual hours of work, including time she spent engaged to wait ($9.00 * 25 [hours of work per week, on average, including waiting time] = $225). She is, of course, also entitled to all other applicable statutory damages and/or remedies.

29. Consequently, Plaintiff was paid below the federally-mandated minimum wage because what he earned each week did not compensate him for each hour worked at the federally-mandated minimum wage rate. This pay practice and/or policy of failing to record time spent engaged to wait was not unique to McGrath, but was applicable to Opt-in Plaintiff Smiley and similarly situated Dashers. As a result, Plaintiff and similarly situated Dashers are entitled to damages for DoorDash's failure to compensate them at the federally-mandated minimum wage for all hours of work, including time spent engaged to wait by traveling to restaurants after orders for delivery were transmitted to them via the DoorDash app, and waiting to pick up completed food orders.

30. While DoorDash classifies Plaintiff as an "independent contractor," Plaintiff is truly an "employee" pursuant to the FLSA's economic realities test.

31. For instance, Plaintiff does not determine the amount he will charge DoorDash for his services; rather, DoorDash decides how much of a "delivery fee" its customers will pay and simply passes that charge on to the Plaintiff as compensation.

32. DoorDash provides Plaintiff and its other Dashers with the customers for whom the delivery services are to be performed.

33. DoorDash requires Plaintiff and its other Dashers to comply with certain rules, regulations, policies and procedures in order to work for them. A Dasher who fails to comply with said policies is subject to reprimand and/or termination.

34. Plaintiff and the other Dashers all perform delivery services within DoorDash's usual course of business as a food delivery service. Without delivery drivers/Dashers, DoorDash would not exist.

35. DoorDash unilaterally sets the pay scheme and rate of pay for Plaintiff and its other Dashers. This rate of pay is not negotiated by and among DoorDash and its Dashers.

36. DoorDash has a single pay practice and/or policy that applies to Plaintiff and all of its other Dashers.

37. Pursuant to DoorDash's policy, it does not reimburse Plaintiff or any of its Dashers for the cost of owning/leasing a vehicle, nor the cost to fuel or maintain it because Plaintiff is allegedly an independent contractor.

38. Moreover, DoorDash: (i) had the power to discipline and/or terminate Plaintiff and the putative Collective Action Members, (ii) regularly supervised and controlled work conditions of employment for Plaintiff and the putative Collective Action Members, (iii) determined the rate and method of payment of wages, (iv) paid Plaintiff and the putative Collective Action Members wages and made deductions to their wages, and (v) maintained employment records of Plaintiff and the putative Collective Action Members.

39. Plaintiff was not a member of management. Neither he nor any other putative Collective Action Member had authority to (nor did they): manage an enterprise, hire or fire other employees, set the pay rates of other employees, create policies or procedures to govern Defendant's employees, handle employee grievances, determine the type of equipment or materials that Defendant could use in their operations, plan and/or set Defendant's budget, enter into contracts on behalf of Defendant, or otherwise have operational control over Defendant's business operations and practices. Moreover, Plaintiff and the Dasher putative Collective Action Members did not perform office or non-manual work directly related to the management or general business operations of Defendant or their customers, nor did they exercise discretion and independent judgment with respect to matters of significance in the conduct of Defendant's businesses. Rather, Plaintiff and the putative Collective Action Members simply used their personal automobiles to fulfill orders for delivery upon transmission of an order by Defendant through the DoorDash app.

40. Plaintiff and the Dasher putative Collective Action Members were at all times "non-exempt" employees and eligible to receive federally-mandated minimum and overtime wages pursuant to the FLSA.

41. As non-exempt employees of DoorDash, whenever Plaintiff and the putative Collective Action Members worked in excess of forty (40) hours in a workweek, which happened on occasion, they were entitled to be paid overtime wages as provided by the FLSA. However, at no time when Plaintiff and the putative Collective Action Members worked in excess of forty hours in a week did they receive additional compensation. In the case of McGrath and Smiley, for example, their hourly rates for every hour worked (including overtime) were always far below the federal minimum wage, as previously mentioned.

42. Finally, as previously mentioned, DoorDash fails to reimburse Plaintiff and its other Dashers for the normal and customary business expenses incurred on DoorDash's behalf in connection with the delivery services they provide. These expenses include, but are not limited to, (i) Plaintiff's use of a personal vehicle to perform deliveries to DoorDash's customers (*i.e.*, gasoline and maintenance), (ii) the cost of liability insurance, (iii) damage claims, (iv) parking and toll road charges incurred while picking up/dropping off deliveries; (v) the cost of a cell phone, and all other tools/equipment in order to do the work required. These work-related expenses were significant.

43. For example, Plaintiff McGrath and Opt-in Plaintiff Smiley spent an average of $100.00 per week in gasoline alone necessary to pick up and deliver DoorDash's food orders. The impact of these additional expenses is that McGrath and Smiley often paid for the privilege of working for DoorDash, as neither McGrath ($60.00 in "delivery fees") nor Smiley ($75.00 in "delivery fees") earned more than $100.00 in the average workweek. As a result, their average back-pay damages total to the complete applicable hourly minimum wage multiplied by their full hours of work, for McGrath $228.00 ($12.00 [California state minimum wage] * 19 [hours of work, including time spent engaged to wait]) and for Smiley $300.00 ($12.00 [California state minimum wage] * 25 [hours of work, including time spent engaged to wait]) plus all applicable statutory damages and/or remedies.

44. By failing to reimburse Plaintiff for these expenses, Plaintiff has often earned far less than the federally-mandated minimum and overtime wage required by the FLSA during the average workweek.

## V. FLSA CLAIMS FOR MINIMUM AND OVERTIME WAGE

45. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

### A. FLSA Coverage

46. All conditions precedent to this suit, if any, have been fulfilled.

47. At all times relevant to this lawsuit, Defendant was an eligible and covered employer under the FLSA pursuant to 29 U.S.C. § 203(d).

48. At all times relevant to this lawsuit, Defendant has been an enterprise engaged in commerce under the FLSA pursuant to 29 U.S.C. § 203(s)(1)(A).

49. At all times relevant to this lawsuit, Defendant has employed, and continues to employ, employees including Plaintiff and the putative Collective Action Members who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

50. At all relevant times, Defendant has had gross operating revenues or business volume in excess of $500,000.

### B. FLSA Allegations

51. At all relevant times, Plaintiff and the Putative Collective Action Members were employees of Defendant pursuant to the FLSA.

52. The FLSA generally requires that employers pay their employees the minimum wage for all hours worked. 29 U.S.C. § 206(a)(1).

53. Defendant misclassifies Plaintiff and its other delivery drivers as "independent contractors" rather than "employees" and fails to pay them for all hours worked. In addition, Defendant has required Plaintiff and its other Dashers to pay business expenses (including expenses incurred to own/lease a vehicle, maintain it, and fuel it) causing Plaintiff to be paid less

than the statutory minimum wage and overtime rate, as required by Sections 206 and 207 of the FLSA, which requires payment at the highest of the applicable federal, state, or local minimum wage,[3] and time-and-a-half when they work more than forty hours in a week. As a result, Defendant violates the minimum wage provisions of the FLSA.

**C. Collective Action Allegations**

54. Plaintiff brings this suit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all other persons employed by Defendant as a delivery service driver (*i.e.* Dasher) within three (3) years from the filing of this suit who, like Plaintiff, (i) have been misclassified as an "independent contractor;" (ii) who have not been compensated at least the full statutory minimum wage for all hours worked up to 40 each week, and (iii) who have not been paid overtime at the time-and-a-half rate pursuant to the FLSA when working over forty hours in a week. Those who file a written consent will be a party to this action pursuant to 29 U.S.C. § 216(b) (the "FLSA Class").

55. Plaintiff has actual knowledge that putative Collective Action Members have been misclassified and denied their minimum wage and overtime. Plaintiff worked with other Dashers employed by Defendant. As such, he has personal knowledge of the pay violations. Furthermore, other Dashers have shared with him that they experienced similar pay violations as those described in this complaint. In fact, thousands of other Dashers who worked for Defendant have opted into this lawsuit as opt-in Plaintiffs.

56. Other Dashers similarly situated to Plaintiff work or have worked for Defendant and did not receive their minimum wage or overtime.

57. Other Dashers similarly situated to Plaintiff work or have worked for Defendant and were misclassified as independent contractors.

---

[3] 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter [. . .].")

58. The putative Collective Action Members are similarly situated to Plaintiff in all relevant respects, having performed the same work duties as Plaintiff and being similarly situated with regard to Defendant's pay practices – specifically, misclassifying Dashers as independent contractors and denying them their minimum wage pay and overtime.

59. The putative Collective Action Members are similar to Plaintiff in terms of job duties, pay structure, and the denial of all due and owing wages.

60. Defendant's failure to pay the minimum wage and overtime to Dashers it misclassifies as independent contractors results from generally applicable policies or practices, and does not depend on the personal circumstances of the putative Collective Action Members.

61. The experiences of Plaintiff with respect to his misclassification and pay, or lack thereof, is typical of the experiences of the putative Collective Action Members.

62. The specific job titles or precise job responsibilities of each putative Collective Action Member does not prevent collective treatment.

63. Although the exact amount of damages may vary among the putative Collective Action Members, the damages are easily calculable using a simple formula uniformly applicable to all of the employees.

64. Plaintiff proposes that the class of putative Collective Action Members be defined as:

> **All current and former Dashers who worked for Defendant nationwide from any time starting three years before a collective action may be conditionally certified in the case until the date the case resolves.**

## VI. CAUSE OF ACTION

### 1. Claim for Relief – Violation of the FLSA, Failure to Pay the Minimum Wage to Plaintiff and Putative Collective Action Members.

65. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

66. The foregoing conduct, as alleged, violated the FLSA.

67. Defendant was, at all times relevant to this claim for relief, the employer of Plaintiff and the putative Collective Action Members. *See* 29 U.S.C. § 203(d).

68. Defendant is and was required to pay its employees, Plaintiff and the putative Collective Action Members, the minimum wage for all hours worked. 29 U.S.C. § 206.

69. Defendant failed to pay Plaintiff and the putative Collective Action Members their minimum wages for all hours worked in a given workweek.

70. Defendant's conduct was willful and done to avoid paying wages. 29 U.S.C. § 255(a). Therefore, Plaintiff and the putative Collective Action are entitled to a three (3) year statute of limitations. *Id.*

71. Plaintiff seeks all damages to which he and the putative Collective Action Members are entitled under the FLSA, including their back wages, liquidated damages, attorneys' fees and costs, post-judgment interest, and specifically plead recovery for the three (3) year period preceding the filing of this lawsuit through its resolution.

**2. Claim for Relief – Violation of the FLSA, Failure to Pay Overtime Wages to Plaintiff and Putative Collective Action Members.**

72. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

73. The foregoing conduct, as alleged, violated the FLSA.

74. Defendant was, at all times relevant to this claim for relief, the employer of Plaintiff and the putative Collective Action Members. *See* 29 U.S.C. § 203(d).

75. Plaintiff and the putative Collective Action are/were non-exempt employees entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek, as defined above. *See* 29 U.S.C. § 203(e)(1).

76. Defendant failed to pay Plaintiff and the putative Collective Action Members time and one-half their respective regular rates of pay when they worked in excess of forty (40) hours in a workweek in violation of the FLSA. *See* 29 U.S.C. § 207(a)(1).

77. Defendant's conduct was willful and done to avoid paying wages. 29 U.S.C. § 255(a). Therefore, Plaintiff and the putative Collective Action are entitled to a three (3) year statute of limitations. *Id.*

78. Plaintiff seeks all damages to which he and the putative Collective Action Members are entitled under the FLSA, including their back wages, liquidated damages, attorneys' fees and costs, post-judgment interest, and specifically plead recovery for the three (3) year period preceding the filing of this lawsuit through its resolution.

## VII. JURY DEMAND

79. Plaintiff hereby demands a jury trial on all causes of action and claims for relief with respect to which he and the putative Collective Members have a right to jury trial.

## VIII. DAMAGES AND PRAYER

80. Plaintiff asks that the Court issue summons for Defendant to appear and answer, and that Plaintiff and the Collective Action Members be awarded a judgment against Defendant or order(s) from the Court for the following:

a. An order conditionally certifying this case as an FLSA collective action and requiring notice to be issued to all putative Collective Action Members;

b. An award of damages for all unpaid minimum wages and overtime, all liquidated damages, and restitution to be paid by Defendant;

c. Costs of action incurred herein, including expert fees;

d. Attorneys' fees and costs, including fees pursuant to 29 U.S.C. § 216;

e. Post-judgment interest, as provided by law;

f. Such other relief as the Court may deem just and proper.

DATED: July 10, 2020

Respectfully submitted,

By: */s/ Ricardo J. Prieto*
Ricardo J. Prieto

**SHELLIST | LAZARZ | SLOBIN LLP**

Ricardo J. Prieto (Admitted *PHV*)
rprieto@eeoc.net
(*Lead Counsel*)
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

Melinda Arbuckle (Cal. Bar No. 302723)
marbuckle@eeoc.net
402 West Broadway, Suite 400
San Diego, California 92101
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

&

**DEBES LAW FIRM**

Robert R. Debes, Jr. (Admitted *PHV*)
bdebes@debeslaw.com
5909 West Loop South, Suite 510
Bellaire, Texas 77401
Telephone: (713) 623-0900
Facsimile: (713) 623-0951

*Counsel for Plaintiff Jacob McGrath, and Proposed Collective Action Members*