Melinda Arbuckle (SBN 302723)
marbuckle@wageandhourfirm.com
Ricardo J. Prieto (admitted PHV)
rprieto@wageandhourfirm.com
WAGE AND HOUR FIRM
3600 Lime Street, Suite 111
Riverside, California 92501
Telephone: (214) 210-2100
Facsimile: (469) 399-1070

Robert R. Debes, Jr. (admitted PHV)
bdebes@eeoc.net
SHELLIST LAZARZ SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile (713) 621-0993

*Counsel for Plaintiff Derrick Salmons and*
*Proposed Collective Action Members*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

DERRICK SALMONS, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

DOORDASH, INC.,

      Defendant.

**Case No: 3:19-cv-05279-EMC**

**NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED AND AMENDED MOTION FOR APPROVAL OF FLSA SETTLEMENT, AND FOR ATTORNEY'S FEES**

Judge:     Hon. Edward M. Chen
Date:      March 21, 2024
Time:      1:30 p.m.
Courtroom:  4 – 17th Floor

PLEASE TAKE NOTICE THAT on March 21, 2024 at 1:30 p.m., or as soon thereafter as the

matter may be heard, in Courtroom 4 of this Court located at the Phillip Burton Federal Building &

United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Derrick

Salmons will and hereby does move this Court for an order approving the attached proposed amended

Settlement Agreement ("Settlement Agreement"), and approval all related settlement notices and

documents. Because the proposed Settlement Agreement is a FLSA *opt-in* settlement, as opposed to

Gibson, Dunn &
Crutcher LLP

107095670.2

1    a Rule 23 *opt-out* settlement that would bind absent class members, no fairness hearing is required or

2    requested by the Parties.

3      In its recently issued minute order, the Court explained that it denied Plaintiff's initial Motion

4    for Approval because (1) "[t]he record is not sufficiently developed regarding settlement of the state-

5    law claims for expenses"; and (2) "concerns with the attorneys' fees provision relative to the potential

6    recovery by the class." *Goldman-Hull* ECF No. 67. Plaintiffs' Amended Motion resolves both of

7    these concerns.

8      First, the Settlement Agreement, along with the amended exhibits attached hereto, clarifies

9    that the Released Claims include state-law minimum wage and overtime claims, but *do not include*

10   *state-law claims for expense reimbursements*. Prieto Decl. Ex. B at para. 21; § IV.1.a (emphasis

11   added). In light of this revision to the release, the objectors Alfonso Brown and Miles Richardson

12   have informed the parties that they will withdraw their objection to the settlement.

13     Second, the Settlement Agreement specifies that Class Counsel may request Attorney's Fees

14   equal to twenty-five percent (25%) of the Maximum Gross Settlement Amount (i.e., $165,880), and

15   is no longer seeking up to forty percent of the Section 216(b) Settlement Amount. *Id.* § 18(c).

16     Plaintiff bases this Motion on this Notice, the Memorandum in Support, the attached

17   declarations and exhibits, all matters of which the Court may take notice, and any oral and/or

18   documentary evidence which may be presented at the hearing on the Motion.

19   Dated: February 26, 2024    Respectfully submitted,

20             By: *s/Ricardo J. Prieto*

21                Ricardo J. Prieto

22             **WAGE AND HOUR FIRM**

23             Ricardo J. Prieto (Admitted PHV)

          3600 Lime Street, Suite 111

24             Riverside, California 92501

25             Telephone: (214) 210-2100

          Facsimile: (469) 399-1070

26

27

28

107095670.2

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     OVERVIEW OF THE PROPOSED SETTLEMENT ...................................... 3

        A.      Terms of the Settlement ......................................................................... 3

        B.      Notice to Eligible Claimants ................................................................. 4

        C.      Responses to Procedural Guidance for Class Action Settlements Particular to
                the Northern District of California. ...................................................... 5

                1.      Attorney's Fees and Costs Are Appropriate. .............................. 8

                        a.      The Fee Award May Be Calculated as a Percentage of the
                                Common Fund........................................................................ 9

                        b.      Twenty-Five Percent of the Maximum Gross Settlement
                                Amount Is Within the Range of Reasonable Fee Awards............ 11

                        c.      The Requested Fee Award Is Reasonable. ................................ 13~~14~~

                        d.      The Lodestar Confirms the Reasonableness of the Fee. .............. 16

                2.      Plaintiff's Counsel Are Entitled to Recover Their Out-of-Pocket
                        Expenses, Which Are Reasonable and Have Benefitted the Class. ................. 17~~18~~

                3.      The Service Award to the Named Plaintiff Is Appropriate....................... 18

III.    ARGUMENT AND AUTHORITY ................................................................. 20

        A.      Legal Standard for Approval of FLSA Only Settlements.................................... 20

        B.      The Proposed FLSA Settlement Represents a Compromise of a Bona Fide
                Dispute and Provides a Fair and Reasonable Resolution of Plaintiff's Claims. .... 23

                1.      Disputed Issues in this Case, Including Defendant's Status as Employer
                        of the Plaintiffs and Applicability of Liquidated Damages Demonstrate the
                        Parties' Entitlement to Settle the Lawsuit........................................... 23

                2.      The Totality of Circumstances Demonstrates that the Proposed FLSA
                        Settlement Is Fair and Reasonable, Provides Meaningful Relief to the
                        Settlement Collective Action Members, and Should Be Approved..................... 24

                        a.      The Proposed Net Settlement Allocates $425,247.19 to the
                                Plaintiff, Opt In Plaintiffs and Final Settlement Class Members,
                                Despite There Being Limited FLSA Minimum Wage Damages. . 24

Gibson, Dunn &
Crutcher LLP

b.   The Parties Completed Sufficient Discovery to Appropriately Evaluate the Claims and Defenses that Affect this Proposed FLSA Settlement............................................................................ 25

c.   The Substantial Risks Represented by the Lawsuit Necessitated the Compromise of the Proposed Settlement Class Members' Back Wages Under the Proposed FLSA Settlement. .................... 25

d.   The Proposed FLSA Settlement Was Negotiated Over Three Separate Arms'-Length Adversarial Mediations, Not by Fraud or Collusion, and Represents a Fair Result Given Other Lawsuits and the Significant Risks Associated with the Case....... 26

IV.   CONCLUSION ............................................................................................................ 2627

Gibson, Dunn &
Crutcher LLP

MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

1

**TABLE OF AUTHORITIES**

2
**Page(s)**

3
**Cases**

4
*In re Activision Sec. Litig.*,
5
   723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................................... 11

6
*Ambrosino v. Home Depot U.S.A., Inc.*,
   No. 11cv1319 ......................................................................................................................... 21

7

8
*Aros v. United Rentals, Inc.*,
   Nos. 10 Civ. 73, 11 Civ. 1281, 11 Civ. 1282, 11 Civ. 1283, 11 Civ. 1284, and
9
   11 Civ. 1285, 2012 WL 3060470 (D. Conn. July 26, 2012)................................................. 23

10
*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................................... 23

11
*Bennett v. SimplexGrinnell LP*,
12
   No. 11-cv-01854-JST, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015)................................. 12

13
*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)................................................................................................. 11
14

15
*Blum v. Stenson*,
   465 U.S. 886 (1984)......................................................................................................... 10, 16

16

17
*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).............................................................................................................. 10

18
*Bozak v. FedEx Ground Package Sys., Inc.*,
19
   No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) ............................................ 22

20
*Campanelli v. Hershey Co.*,
   No. C 08-1862 BZ, 2011 WL 3583597 (N.D. Cal. May 4, 2011) ........................................ 21

21
*Campbell v. Advantage Sales & Mktg. LLC*,
22
   No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ......................................... 23

23
*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
   19 F.3d 1306 (9th Cir. 1994)................................................................................................... 9
24

25
*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998)............................................................................................... 19

26
*Craft v. Cty. of San Bernardino*,
27
   624 F. Supp. 2d 1113 (C.D. Cal. 2008)................................................................................. 12

28

Gibson, Dunn &
Crutcher LLP

107095670.2

Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

*Dashiell v. Cty. of Riverside*,
No. EDCV 15-00211 ............................................................................................. 26, 27

*Dixon v. Zabka*,
No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ............................................ 23

*Elliott v. Rolling Frito-Lay Sales, LP*,
No. 11 Civ. 1730, 2014 WL 2761316 (C.D. Cal. June 12, 2014) ......................................... 11

*Genesis Healthcare Corp. v. Symczyk*,
133 U.S. 66 (2013) .............................................................................................................. 23

*Glass v. UBS Financial Services, Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................... 19

*Goldman-Hull v. Doordash, Inc.*,
No. 3:19-cv-01514-EMC ..................................................................................................... 7

*Guippone v. BH S&B Holdings LLC*,
No. 09 Civ. 01029(CM), 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ............................... 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998), abrogated on other grounds by *Wal-Mart
Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................... 10, 16

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975), abrogated on other grounds by *City of Burlington
v. Dague*, 505 U.S. 557 (1992) ..................................................................................... 16, 17, 18

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................................... 22

*Khanna v. Inter-Con Sec. Sys., Inc.*,
No. CIV S-09-2214 KJM GGH, 2012 WL 4465558 (E.D. Cal. Sept. 25, 2012) .................. 21

*Lee v. The Timberland Co.*,
No. 07 Civ. 2367, 2008 WL 2492295 (N.D. Cal. June 19, 2008) ....................................... 22

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ..................................................................................... 20, 21

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La
Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ..................................................................... 23

*O'Connor v. Oakhurst Dairy*,
No. 2:140cv000192-NT, 2015 WL 2452678 (D. Maine 2015) ........................................... 23

107095670.2

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 12, 16

*In re Optical Disk Drive Prods., Antitrust Litig.*,
    No. 10-md-2143-RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ...................................... 18

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .......................................................................... 11

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ..................................................................................... 16

*Pike v. Cty. of San Bernadino*,
    No. EDCV 17-1680, 2019 WL 8138439 (C.D. Cal. Nov. 25, 2019) .................... 21, 24, 26, 27

*Reginald Moore, et al. v United Protection Service, LP d/b/a Allied Universal*
    *Security Services*,
    Case No. EDCV 19-2121 JGB (ECF No. 263) ...................................................... 13, 17

*Rippee v. Bos. Mkt. Corp.*,
    No. 05 Civ. 1359, 2006 WL 8455400 (S.D. Cal. Oct. 10, 2006) ........................................... 13

*Root v. Ames Dep't Stores, Inc.*,
    989 F. Supp. 274 (D. Mass. 1997) .................................................................... 22

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) ........................................................... 22, 23

*Silberblatt v. Morgan Stanley*,
    524 F. Supp. 2d 425 (S.D.N.Y. 2007) ................................................................ 19

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..................................................................... 10, 14

*Smith v. CRST Van Expedited, Inc.*,
    No. 10 Civ. 1116, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ............................................. 12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................... 10, 19

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) .................................................................... 17

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ........................................................................ 11

*Stevens v. Safeway, Inc.*,
    Case No. CV 05-01988 MMM, 2008 WL 11496497 (C.D. Cal. Feb. 25, 2008) ............... 19, 22

107095670.2

MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

Gibson, Dunn &
Crutcher LLP

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ................................................................................................. 11

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
  Nos. 87 Civ. 3962, 86 Civ. 3538, 1989 WL 73211 (C.D. Cal. Mar. 9, 1989) ....................... 18

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................................... 19

*Vandervort v. Balboa Capital Corp.*,
  8 F. Supp. 3d 1200 (C.D. Cal. 2014) .................................................................................... 14

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) .................................................................................................. 9

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................................. 12, 16, 17

*Woods v. N.Y. Life Ins. Co.*,
  686 F.2d 578 (7th Cir. 1982) ................................................................................................ 23

*Yue Zhou v. Wang's Rest.*,
  No. 05 Civ. 0279, 2007 WL 172308 (N.D. Cal. Jan. 17, 2007) ........................................... 22

**Statutes**

29 U.S.C. § 216(b) ....................................................................................................... *passim*

Fair Labor Standards Act ("FLSA") .............................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23(e) ........................................................................................................... 22

Federal Rules of Civil Procedure Rule 23 ...................................................................... *passim*

Procedural Guidance for Class Action Settlements,
  https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-
  settlements/ ............................................................................................................................ 6

107095670.2

Gibbs, Dunn & Crutcher LLP

### MEMORANDUM IN SUPPORT OF MOTION
### FOR APPROVAL OF FLSA SETTLEMENT

Plaintiff Derrick Salmons files this Unopposed Amended Motion for Approval of FLSA Settlement.[1] Plaintiff respectfully requests that the Court enter an order approving the proposed, amended FLSA Settlement that the Parties have negotiated. (*See* Ex. A, the "Settlement Agreement.") Counsel for the Parties believe the proposed FLSA Settlement represents a fair and reasonable resolution of the claims at issue in this case and will provide substantial relief to Plaintiff, the Opt In Plaintiffs, and the Final Settlement Class members who will benefit from the proposed FLSA Settlement. Individuals eligible to participate in the Settlement Agreement (defined as "Eligible Claimants" in the Settlement Agreement) are those individuals who (i) have a Dasher account confirmed by Defendant; (ii) have completed at least one delivery on the DoorDash platform in the United States at any time between August 23, 2016 and August 31, 2023; (iii) are not bound by an arbitration agreement that covers any claims concerning their Dasher activities or otherwise required to arbitrate their claims concerning their Dasher activities; and (iv) have not already released all FLSA claims or are not otherwise barred by the statute of limitations from pursuing the claims asserted in this Action. The "Final Settlement Class" members are those Eligible Claimants who timely submit a properly completed Claim Form within the specified period and in accordance with the requirements of the Settlement Agreement. The Settlement Agreement also provides for fair and reasonable attorneys' fees and costs to counsel for Plaintiff. For the below reasons, the Parties believe the Court should enter an order approving the proposed FLSA Settlement.

### I.     INTRODUCTION

Plaintiff Jacob McGrath filed this lawsuit on August 23, 2019. (ECF No. 1, Compl.)[2] In his original Complaint, Plaintiff alleged that Defendant violated the FLSA by misclassifying him and other delivery drivers as independent contractors and failing to pay all due and owing minimum wages as a result. (*See id.*, ¶¶ 2, 20, 41.) To date, thousands of individuals have opted into this

---

[1] All capitalized terms or phrases used in this Motion that are not defined herein shall have the same meaning as in the Settlement Agreement.

[2] On 8/16/2023, Plaintiff's complaint was amended to substitute Plaintiff Derrick Salmons as class representative. (ECF No. 251).

107095670.2

Gibson, Dunn &
Crutcher LLP

1    lawsuit; however, given arguably binding arbitration agreements, only three remain— Adrian Davis,

2    Derrick Salmons and Lisa Benningfield.[3] (Ex. B, Prieto Decl., ¶ 15.)

3          Defendant vigorously opposed Plaintiff's claims, in particular denying that there is an

4    employment relationship between Defendant on the one hand and Plaintiff and the putative collective

5    action members on the other hand and asserting that the claims of Plaintiff and the putative collective

6    action members Plaintiff seeks to represent were subject to mandatory individual arbitration. (*See*

7    ECF No. 116); (Ex. B, Prieto Decl., ¶ 16.).

8          The Parties engaged in extensive early motion practice, including briefing relevant to:

9        • Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 33)

10         (fully briefed on December 6, 2019);

11       • Plaintiff's Motion to Conditionally Certify a Collective Action per 29 U.S.C. § 216(b)

12         (ECF No. 46);

13       • Defendant's Administrative Motion to Stay Pending Final Approval of Class Settlement

14         (ECF No. 49) (fully briefed on June 22, 2020);

15       • Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 116) (fully

16         briefed on July 10, 2020);

17         The Parties first agreed to attempt to mediate the claims of the putative Collective Action

18   Members on March 4, 2020, before arbitrator Mark Irvings. (Ex. B, Prieto Decl., ¶ 17.) The

19   mediation was unsuccessful, but the Parties again attempted mediation on July 28, 2021, and again on

20   October 7, 2021, before arbitrator Richard A. Kramer. (*Id.*, ¶ 18.) The Parties finally resolved their

21   claims after that mediation and executed a Memorandum of Understanding on January 6, 2023. (*Id.*, ¶

22   19.) Thereafter, the Parties agreed to the settlement terms in the proposed FLSA Settlement (Ex. A)

23   and have drafted the necessary documentation of the Settlement Agreement, proposed FLSA Notice

24   Packet, and this Motion for Approval.  The proposed FLSA Settlement will cover Named Plaintiff,

25   the Opt In Plaintiffs and Final Settlement Class members.  Plaintiff respectfully submits the proposed

26

27   [3] The Third Amended Complaint named Derrick Salmons as the Named Plaintiff. *See* Dkt. 251. Thus,
the individuals who have opted into this Action but are not the Named Plaintiff are now Adrian

28   Davis, Jacob McGrath, and Lisa Benningfield (collectively, the "Opt In Plaintiffs").

107095670.2

Gibson, Dunn &
Crutcher LLP

-2 -                    Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

FLSA Settlement for approval, and request that notice of the settlement issue to the Eligible Claimants[4] so that they can determine whether they would like to release their claims against DoorDash and receive benefits under the proposed FLSA Settlement.

## II.    OVERVIEW OF THE PROPOSED SETTLEMENT

### A.    Terms of the Settlement

The Settlement Agreement, attached hereto as Exhibit A, establishes a Maximum Gross Settlement Amount of no more than $663,520 from which the following will be paid:  individual settlement payments to Named Plaintiff, the Opt In Plaintiffs, and Final Settlement Class members; a service award of $2,500 to the Named Plaintiff; the Administrative Costs to the Settlement Administrator; and the Attorney's Fees and Expenses Payment to Class Counsel.

The Maximum Gross Settlement Amount will be allocated as follows:

1. The Settlement Agreement establishes that Final Settlement Class members will receive an approximate net amount not to exceed $425,247.19, assuming all Eligible Claimants become Final Settlement Class members (Ex. A, ¶ 18(d));

2. The Settlement Agreement establishes that Class Counsel may request Attorney's Fees Payment equal to twenty-five percent (25%) of the Maximum Gross Settlement Amount (i.e., $165,880.  The Final Settlement Class members are not responsible for payment of attorney's fees (Ex. A, ¶ 18(c).);

3. The Settlement Agreement establishes that Class Counsel may request Attorney's Expenses Payment in an amount up to $41,785.06 in expenses actually incurred by Class Counsel in connection with the Action (Ex. A, ¶ 18(b).); and

4. Up to $28,107.75 for Administrative Costs to the Settlement Administrator. (Ex. A, ¶ 18(a).)

The individual portion of the Section 216(b) Settlement Amount attributable to each of the Final Settlement Class members will be calculated based on each individual's Unreleased Miles as

---

[4] The Named Plaintiff and all Opt In Plaintiffs shall be deemed Final Settlement Class members, and they will not be required to complete a Claim Form to be entitled to their share of the settlement, but rather will be deemed to be bound by the proposed FLSA Settlement if it receives the approval of the Court.

107095670.2

determined from the information provided to the Settlement Administrator by Defendant pursuant to

Section I(18)(c) of the Settlement Agreement, as follows:  (1) each individual's Unreleased Miles[5]

shall be divided by the total sum of the Unreleased Miles of Named Plaintiff, Opt In Plaintiffs and

Eligible Claimants; and (2) the resulting fraction from (1) shall be multiplied by the aggregate

Section 216(b) Settlement Amount.

**B.      Notice to Eligible Claimants**

Not later than thirty (30) days after the Court's entry of the Approval Order:  (a) Class

Counsel shall provide the Settlement Administrator with an Excel chart listing the name, last known

mailing address, and last known email address of Named Plaintiff and Opt In Plaintiffs; and (b)

Defendant shall provide the Settlement Administrator with an Excel chart listing the name, last

known mailing address, last known email address, and Unreleased Miles of the Named Plaintiff, each

Opt In Plaintiff, and each Eligible Claimant.  The information transmitted by Class Counsel and

Defendant to the Settlement Administrator will be treated as confidential and may not be used for any

purposes other than the settlement administration of the Action.  Within fourteen (14) days after

receipt of the information pertaining to Named Plaintiff, Opt In Plaintiffs, and Eligible Claimants as

provided in subsections (a) and (b) of the Settlement Agreement, the Settlement Administrator shall

calculate the estimated portions of the Section 216(b) Settlement Amount to be allocated to Named

Plaintiff, each Opt In Plaintiff, and each Eligible Claimant.  The Settlement Administrator will then

send via electronic mail the FLSA Notice Packet to each Eligible Claimant.  If the Settlement

Administrator receives notice that any FLSA Notice Packet was undeliverable, the Settlement

Administrator shall promptly advise Class Counsel and Defendant and endeavor to deliver the FLSA

---

[5] Per the Settlement Agreement, "Unreleased Miles" means Defendant's best estimate of the on-delivery miles associated with each Named Plaintiff, Opt In Plaintiff and Eligible Claimant, between the location where orders are received and accepted by the individual and the location where orders are delivered (which includes distance spent driving to the merchant and distance spent driving from the merchant to consumer), at any time between August 23, 2016 and August 31, 2023, less any mileage accrued on or before the release end date of any prior individual or class-action settlement(s) that affect Named Plaintiff, Opt In Plaintiff, or Eligible Claimants' FLSA claims, as determined by Defendant's records.

107095670.2

Gibbon, Dunn &
Crutcher LLP

1    Notice Packet to the intended recipient via U.S. Mail and/or to another email address based on

2    information provided by Class Counsel and/or Defendant. (Ex. A, § III.2.)

3    The FLSA Notice Packet, to be approved by the Court, consists of the Class Notice and Claim

4    Form and contains a short and plain statement of the proposed FLSA Settlement with timely and

5    accurate information regarding:  the claims made in the lawsuit, the terms of the Settlement

6    Agreement as approved by the Court, the portion of the settlement to which the Named Plaintiff, each

7    Opt In Plaintiff, and each Eligible Claimant are individually eligible to collect, how that amount was

8    calculated, the procedure for participating in the proposed FLSA Settlement, the risks of continuing

9    with litigation, the Eligible Claimant's right to proceed with their own action against DoorDash with

10    counsel of their choosing should they elect not to participate in the proposed FLSA Settlement, and

11    the contact information of both the Settlement Administrator and Class Counsel in the event that the

12    recipient has any questions regarding the proposed FLSA Settlement. (*Id.*, § I.15, Exs. B & C.)

13    To participate in the proposed FLSA Settlement, the Eligible Claimants shall have sixty days

14    after the date on which the Settlement Administrator first transmits the FLSA Notice Packet to

15    Eligible Claimants to return a completed Claim Form to the Settlement Administrator. (*Id.*, § I.4.)

16    The Settlement Administrator shall remit payment to the Named Plaintiff, the Opt In Plaintiffs, and

17    each Eligible Claimant who returns a valid Claim Form to the Settlement Administrator by the Bar

18    Date within thirty (30) days after the later of either the Effective Date of the Settlement Agreement or

19    the Bar Date. (*Id.*, §§ III.8, 9.)

20    **C.    Responses to Procedural Guidance for Class Action Settlements Particular to the Northern District of California.**

21    The Northern District of California has established standards with respect to briefing motions

22    for preliminary approval in Rule 23 class cases. (*See* Procedural Guidance for Class Action

23    Settlements, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ last

24    modified Aug. 4, 2022.) While this is not a class action settlement, the Procedural Guidance provides

25    "in cases litigated under the […] Fair Labor Standards Act, follow the statute and case law

26    requirements that apply to such cases, such as regarding reasonable costs and expenses awards to

1    representative plaintiffs, and this procedural guidance **to the extent applicable**." (*See id.* (emphasis

2    added).)

3        Accordingly, Plaintiff provides the following additional information in keeping with the

4    Procedural Guidance:

5        No class has been certified in this case.  The only differences between the pleaded class and

6    the Final Settlement Class members are that the Final Settlement Class members (a) are not bound by

7    an arbitration agreement that covers any claims concerning their Dasher activities or otherwise

8    required to arbitrate their claims concerning their Dasher activities and (b) are not bound by any prior

9    FLSA settlement.  With respect to individuals represented by Plaintiff's counsel who did not opt out

10   of DoorDash's arbitration, they may not participate as Final Settlement Class members due to their

11   arbitration agreement.

12       The release applicable to the Final Settlement Class members is as follows:

13       All members of the Final Settlement Class (including Named Plaintiff), individually
         and on behalf of their successors, assigns, heirs, executors, administrators, agents,
14       representatives, businesses, insurers, subrogees, attorneys, and anyone claiming
         through them or purporting to act on their behalf, shall hereby irrevocably and
15       unconditionally forever and fully release and covenant not to sue or otherwise pursue
         against Released Parties any and all claims, demands, and causes of action that were
16       asserted or that could have been asserted in the Action based on the facts alleged in
         Plaintiff's Third Amended Complaint for violations of the Fair Labor Standards Act or
17       prior iterations of the complaint filed in this action, including any and all claims,
         demands, and causes of action for unpaid wages (including but not limited to claims
18       for minimum wage, overtime compensation, or "free and clear" payment of minimum
         wage and overtime compensation when taking into account unreimbursed expenses),
19       liquidated damages, interest, penalties, attorney's fees, expenses, costs, and any other
         relief otherwise available based on the identical factual predicate of this FLSA action
20       (including the identical factual predicates of any prior iterations of the complaint)
         against the Released Parties, up through the date the Court grants approval of the
21       settlement (collectively, the "Released Claims").  For sake of clarity, the Released
         Claims include state-law minimum wage and overtime claims, but do not include
22       state-law claims for expense reimbursements.  This settlement does not release any
         claims Final Settlement Class members may have under California's Private Attorneys
23       General Act (Cal. Lab. Code § 2698 et seq.).  (Ex. A, § IV.1.a.)

24
25       Each of these claims was pleaded in the operative Third Amended Complaint and is properly

26   released in this proposed FLSA Settlement. (*See* ECF No. 154, ¶¶ 2, 8, 40, 41, 44, 65-78.)

27
28
Gibson, Dunn &
Crutcher LLP

107095670.2

-6 -                                    Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

In exchange for the release of claims, significant value was obtained through this settlement considering the numerous risks the settlement class members faced. For example, Plaintiff faces challenges with seeking to certify a collective action. Then, addressing the claims under the FLSA Plaintiff first faces the challenge of establishing employee status under the applicable FLSA economic realities test. Assuming Plaintiff succeeded with the threshold issue of employee status, Plaintiff then faces issues establishing damages associated with the collective class under the FLSA's minimum wage provision which requires a minimum wage rate to be paid to employees of $7.25 per hour. In this case, after a review of the class data potential, issues arose concerning individuals receiving well above the federal minimum wage rate when considering the time spent delivering food to customers and the fee received for the service. (Ex. B, Prieto Decl., ¶ 21.) As such, even if Plaintiff prevailed on the independent contractor issue, they faced the possibility of having zero damages. (Ex. B, Prieto Decl., ¶ 21.)

Given the requirement that Eligible Claimants must timely submit complete and valid claim forms to be bound by the proposed FLSA Settlement, no other cases will be affected by this Settlement, apart from the related case, *Goldman-Hull v. Doordash, Inc.*, No. 3:19-cv- 01514-EMC also pending in this District. Plaintiff's counsel has had no discussion with counsel in any other case against this Defendant regarding this or any other proposed or finalized settlement.

This proposed FLSA Settlement will guarantee payment to the Named Plaintiff and the Opt In Plaintiffs. With respect to Eligible Claimants who will receive and be required to timely submit a completed and valid claim form to participate in the Settlement, Plaintiff's Counsel believes that the claim rate will vary between at least 30-65%. (Ex. B, Prieto Decl., ¶ 22.) This is based upon recent settlements with similar notice provisions. (*Id.*) Generally, opt-in rates in collective action cases with respect to conditional certification range between 5-30%. (*Id.*) However, when settlement notice issues, that range jumps to approximately 30-65% given that the outcome is determined, and money will be paid. (*Id.*) Based on conversations that I have had with the Settlement Administrator, the Settlement Administrator estimates that the claim rate will be approximately 30-65%, if not higher.

107095670.2

Gibson, Dunn &
Crutcher LLP

-7 -                                    Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

(*Id*.) This is based upon recent settlement administration of similar claims as to this Defendant with similar claim form procedures. (*Id*.)

Per the terms of the Settlement Agreement (Ex. A), and as discussed further below, only claimed portions of the Maximum Gross Settlement Amount will be distributed by the Settlement Administrator.  This is fair and appropriate in FLSA cases as individuals who do not claim allocations under the proposed FLSA Settlement will not be bound by its result and will receive an appropriate warning about the running statute of limitations as to their claims.  Accordingly, since their claims are not released, it is appropriate that unclaimed sums of the non-participating Eligible Claimants remain in Defendant's possession.

The Parties propose Simpluris, Inc. to administer the proposed FLSA Settlement.  Simpluris is a reputable settlement administrator and has extensive experience administering class and collective action settlements. (Ex. B, Prieto Decl., ¶ 23.) The methods of notice and claims payment are formulated to best provide notice given the prospective recipients. (Ex. A, III.2, 3.) Given that Dashers predominantly interacted with DoorDash through a phone or browser-based software application ("app"), notice will first be provided through email. (*Id*.) If notice cannot be delivered electronically, it will be provided by mail. (*Id*.) A quote provided by Simpluris, Inc. that lists its services provided to effectuate settlement administration is provided. (Ex. B, Prieto Decl., ¶ 23 (Ex B-1 to Prieto Decl.).)

The Northern District of California Procedures also require that class members should have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs.  As discussed above, there are no opt out or objection procedures in this proposed FLSA-only Settlement.  However, the Eligible Claimants will have sixty (60) days to determine whether to join the settlement, receive money, and be bound by the release of claims.

**1.    Attorney's Fees and Costs Are Appropriate.**

The Settlement Agreement provides that Plaintiff's Counsel may request Attorney's Fees Payment in the amount of twenty-five percent (25%) of the Maximum Gross Settlement Amount (i.e.,

107095670.2

Gibson, Dunn &
Crutcher LLP

-8 -                     Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

1    $165,880), which represents a fair result for Plaintiff's Counsel.  Additionally, Plaintiff's Counsel

2    seek recovery of Attorney's Expenses Payment in the amount of $41,785.06.

3            "[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a

4    fund to which others also have a claim is entitled to recover from the fund the costs of his litigation,

5    including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also*

6    *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994). "Attorneys' fees

7    provisions included in proposed class action settlement agreements are, like every other aspect of

8    such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate

9    and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P.

10   23(e)).

11           Attorneys' fees are commonly awarded in both federal and state courts in recognition of the

12   principle that when counsel's efforts result in the creation of a common fund that benefits plaintiffs

13   and unnamed class members, counsel have an equitable right to be compensated from that fund as a

14   whole for their successful efforts in creating it.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472,

15   478 (1980) (observing that the United States Supreme Court "has recognized consistently that a

16   litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from

17   the fund as a whole").  The common fund doctrine ensures payment for work performed by class

18   counsel, avoiding the alternative of unjust enrichment of absent class members who benefit from the

19   fund without an express retainer agreement. *Id*.

20           Here, Class Counsel have negotiated a settlement and helped generate a $663,520 Maximum

21   Gross Settlement Amount fund for individuals who opted-out of the DoorDash arbitration agreement,

22   none of whom has paid any fees or costs.  Equity requires payment of a reasonable fee, based on what

23   the market would traditionally require, no less than if they had hired private counsel to litigate their

24   cases individually.  *See id*. at 479-81.

25                   **a.   The Fee Award May Be Calculated as a Percentage of the Common Fund.**

26           In common fund cases such as this one, "where the settlement or award creates a large fund

27   for distribution to the class," courts may award attorneys' fees as either a percentage of the fund or

28

Gibson, Dunn &
Crutcher LLP

107095670.2

1  pursuant to the lodestar method.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998),

2  abrogated on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The more

3  common approach is to award class counsel a percentage of the total fund.  *See, e.g., Blum v. Stenson*,

4  465 U.S. 886, 900 n.16 (1984); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,

5  1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery");

6  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

7  　　　　The percentage of the fund method can be appropriate for several reasons.  The percentage

8  method comports with the legal marketplace, where plaintiffs' counsel's success is frequently

9  measured in terms of the results they have achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d

10  1261, 1269 (D.C. Cir. 1993) (in common fund cases, "the monetary amount of the victory is often the

11  true measure of [counsel's] success").  By assessing the amount of the fee in terms of the amount of

12  the benefit conferred on the class, the percentage method "more accurately reflects the economics of

13  litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be

14  result-oriented." *Id.* (internal quotations and citations omitted); *see also Elliott v. Rolling Frito-Lay*

15  *Sales, LP*, No. 11 Civ. 1730, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (highlighting

16  significant benefits of percentage approach and its "consistency with contingency fee calculations in

17  the private market").  Moreover, the percentage approach aligns the incentives of the class members

18  and their counsel, so that time is spent efficiently and the class's recovery is maximized.  *In re*

19  *Activision Sec. Litig.*, 723 F. Supp. 1373, 1375-76 (N.D. Cal. 1989).

20  　　　　However, the lodestar method also has value, and the Ninth Circuit has "encouraged courts to

21  guard against an unreasonable result by cross-checking their calculations" with the lodestar method.

22  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011).  In fact, "[t]here is a

23  strong presumption that the lodestar is a reasonable fee" and it is "well within the district court's

24  discretion" to "apply the lodestar method, rather than the percentage of-fund method." *Stetson v.*

25  *Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  In employment cases, the lodestar method can be

26  particularly helpful, because the combination of relatively lower damages with complex and time-

27  consuming litigation increases the ratio of fees to damages.  It is particularly important to incentivize

28

Gibson, Dunn &
Crutcher LLP

107095670.2

-10 -　　　　　　　　Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

competent counsel to zealously pursue legitimate employment claims, so that remedial statutes, like the FLSA, are given robust enforcement. In such situations, fee awards based on lodestar may be appropriate. *See In re Bluetooth*, 654 F.3d at 941 (finding that the lodestar method may be particularly appropriate in class actions brought under fee-shifting statutes, "where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation").

Here, Plaintiff's Counsel have submitted evidence of its lodestar records (discussed below) demonstrating their entitlement to the benchmark 25% common fund amount.

### b. Twenty-Five Percent of the Maximum Gross Settlement Amount Is Within the Range of Reasonable Fee Awards.

The "starting point for analysis" of a common fund fee is the "benchmark" of 25% in "megafund" ($50 million to $200 million) cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48, 1050 n.4 (9th Cir. 2002) (recognizing that the benchmark "may be inappropriate in some cases"). Indeed, especially in cases below the "megafund" range, "**in most common fund cases, the award exceeds [the 25%] benchmark.**" *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (38.8% of a $4.9 million common fund); *Smith v. CRST Van Expedited, Inc.*, No. 10 Civ. 1116, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) (33 1/3 % fee, **and citing wage and hour class actions awarding fees of 40% of a common fund**); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (surveying cases and noting that "**25% is substantially below the average class fund fee nationally**"). Ultimately, the appropriate fee percentage is based on "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

As discussed further below, some courts often employ a lodestar cross-check to confirm the reasonableness of a percentage-based fee. *See id*. at 1050. Here, the requested fee of 25% of the Maximum Gross Settlement Amount is reasonable in light of Plaintiff's Counsel's lodestar estimate. (Ex. B (Prieto Decl., ¶ 27.)

Mr. Prieto's hourly rate of $725 has been approved previously by other courts in California as

reasonable. [6] Plaintiff provides the following hourly estimates of major litigation tasks performed. The list below does not include attending Court hearings, travel, client conferences, conferences with opposing counsel, document review, communications with the settlement administrator, and email correspondence related to the litigation. The list and hours reflected are also limited to Mr. Prieto and do not include time spent on the same or related tasks by his co-counsel and legal staff. All figures presented herein are also rounded down to the next hour for brevity and in an exercise of billing judgment.

- Drafting Plaintiff's original Complaint (Dkt. 1) required 2 hours;
- Preparing a response to Defendant's Motion to Dismiss (Dkt. 30) required 24 hours, including amending Plaintiff's Complaint;
- Preparing a response to Defendant's Second Motion to Dismiss (Dkt. 38) required 4 hours;
- Preparing Plaintiff's Motion to Conditionally Certify a Collective Action per 29 U.S.C. § 216(b) (Dkt. 46) required 40 hours;
- Responding to Defendant's Administrative Motion to Stay Pending Final Approval of Class Settlement (Dkt. 53) required 8 hours;
- Plaintiff's Opposition to Defendant's Request to Stay Discovery (Dkt. 54) required 8 hours;
- Responding to Defendant's Motion to Compel Arbitration and Stay Proceedings (Dkt. 144) required 40 hours;
- Drafting Plaintiff's Second Amended Complaint (Dkt. 154) required 3 hours;
- Preparing a response to Defendant's Third Motion to Dismiss (Dkt. 167) required 8 hours;
- Preparing Plaintiff's Motion to Compel Discovery (Dkt. 174) required 18 hours;
- Preparing Plaintiff's Objection to Defendant's Supplemental Declaration (Dkt. 192)

---

[6] Mr. Prieto's hourly rate of $725 per hour (and a 40% fee of the common fund) was approved in *Reginald Moore, et al. v United Protection Service, LP d/b/a Allied Universal Security Services*, Case No. EDCV 19-2121 JGB (SPx) (ECF No. 263), In the United States District Court Central District of California (July 2, 2022) (Bernal, J.). (Ex. B-2 to Prieto Declaration).

Gibson, Dunn &
Crutcher LLP

required 5 hours;

- Preparing Plaintiff's Motion for Leave to File Motion for Reconsideration (Dkt. 200) required 8 hours;

- Preparing Motion for Leave to Amend Complaint to Substitute Class Representative (Dkt. 247) required 3 hours;

- Preparing FLSA Settlement Approval Motion (Dkt. 257) required 30 hours;

- Preparing a response to the settlement objection (Dkt. 260) required 4 hours; and

- Preparing this joint supplemental brief required 3 hours.

(Ex. B (Prieto Decl., ¶ 27.)

Accordingly, including only major litigation tasks performed by Mr. Prieto, the total hours worked on this matter are 208 hours, which at the hourly rate of $725 equates to a lodestar of $150,800. With a modest multiplier of 1.1, Plaintiff's request for 25% is reasonable. (*Id.*).

In addition, given the substantial time yet to be spent by Class Counsel in effectuating notice and responding to putative class members' questions, and in working with the Settlement Administrator to administer the settlement, the lodestar multiplier will continue to decrease. Thus, the lodestar cross-check confirms that 25% is reasonable, as it is below (or at least well within) the range of fee multipliers that courts typically approve. (*Id.*).

Plaintiff's Attorney's Fees Payment request in the amount of 25% of the Maximum Gross Settlement Amount under the Settlement Agreement, in light of the circumstances and results achieved, is reasonable. *See, e.g., Rippee v. Bos. Mkt. Corp.*, No. 05 Civ. 1359, 2006 WL 8455400, at *4 (S.D. Cal. Oct. 10, 2006) (approving 40% fee and 3.2x multiplier in light of favorable result, counsel's skill and considerable risk undertaken, where class members were likely to accrue future monetary benefits beyond the immediate settlement fund based on policy changes).

### c. The Requested Fee Award Is Reasonable.

The following factors are relevant to whether a fee award is reasonable, including: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs." *Vandervort v. Balboa*

Gibson, Dunn &
Crutcher LLP

107095670.2

-13 -                Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

*Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at 1048-50); *Six (6) Mexican Workers*, 904 F.2d at 1311.  These factors support Plaintiff Counsel's request in this case, where the financial burden of investigating, developing, and prosecuting the case was time consuming, especially in light of the risk and complexity inherent in litigating FLSA collective actions. (Ex. B, Prieto Decl., ¶ 28).

### i.  Class Counsel Have Achieved an Excellent Result for the Eligible Claimants.

The overall result and benefit to the class is typically the "most critical" factor in granting a fee award.  *See Ching v. Siemens Indus.*, Inc., No. 11-cv-4838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) (citing *In re Omnivision*, 559 F. Supp. 2d at 1046).

Here, in exchange for the release of claims, significant value was obtained through this settlement considering the numerous risks the Final Settlement Class members faced.  For example, under the FLSA Plaintiff first faced the challenge of establishing employee status under the applicable FLSA economic realities test.  Assuming Plaintiff succeeded with the threshold issue of employee status, numerous Final Settlement Class members will face issues establishing damages under the FLSA's minimum wage provision which requires a minimum wage rate to be paid to employees of $7.25 per hour. (Ex. 29, Prieto Decl., ¶ 29.) In this case, after a review of the class data potential, issues arose concerning individuals receiving well above the federal minimum wage rate when considering the time spent delivering food to customers and the fee received for the service. (Ex. 29, Prieto Decl., ¶ 29.) Indeed, in the sample damage model provided to the Court, which consist of approximately 5% of the data line items provided to Class Counsel, the Eligible Claimants have zero minimum wage damages under the FLSA. (Ex. 29, Prieto Decl., ¶ 29.) As such, even if they prevailed on the independent contractor issue, they faced the real possibility of having zero damages unless they incurred enough expenses to dilute their effective hourly rates below the FLSA's $7.25 minimum wage. (Ex. 29, Prieto Decl., ¶ 29.)

### ii.  Plaintiff Would Face Substantial Litigation Risk.

As discussed above, Defendant vigorously defended this action, and Plaintiff would have faced considerable risks in continued litigation.  Indeed, from the beginning Defendant sought

1   dismissal of this case for arbitration and Plaintiff still succeeded in obtaining relief for thousands of

2   individuals.

3          Even setting aside the arbitration issue, Plaintiff would have faced challenges in proving

4   liability and damages because, as discussed above, a *bona fide* dispute exists as to Plaintiff's right to

5   a recovery due to the issue of independent contractor misclassification, and, as described above, due

6   to the limited exposure damage model as to many of the Eligible Claimants.

7          In short, without the settlement, Plaintiff would face many obstacles to recovery, and Class

8   Counsel were not assured of any fee.

9                   **iii.  Class Counsel Are Experienced in Complex Class Action Litigation.**

10         Class Counsel are seasoned wage and hour attorneys with years of experience in litigating

11  FLSA and similar state law counterpart lawsuits filed throughout the nation, at the state, federal and

12  at the appellate level. (Ex. B, Prieto Decl., ¶¶ 6-10).  Indeed, Class Counsel have been approved by

13  courts throughout the country to act as class counsel in numerous other collective and class actions.

14  (*Id*.).  Class Counsel has obtained numerous favorable results in wage and hour cases filed throughout

15  the country. (*Id*.).

16                  **iv.  Class Counsel Worked on a Contingency Basis and Carried**

17                      **Substantial Risk of Nonpayment.**

18         Class Counsel took this case on a contingent fee basis and therefore had to forgo other

19  financial opportunities to litigate it. (Ex. B, Prieto Decl., ¶ 30).  Here, Plaintiff retained Class Counsel

20  and agreed to pay fees of the greater of 40% or counsel's total lodestar. (Ex. B, Prieto Decl., ¶ 30)

21  "Courts have long recognized that the public interest is served by rewarding attorneys who assume

22  representation on a contingent basis with an enhanced fee to compensate them for the risk that they

23  might be paid nothing at all for their work." *Ching*, 2014 WL 2926210, at *8 (citing *In re Wash. Pub.*

24  *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)); *Vizcaino*, 290 F.3d at 1050; *In re*

25  *Omnivision*, 559 F. Supp. 2d at 1047.  Given the exceptional results achieved, the novelty and

26  complexity of the claims and attendant litigation risks, the contingent nature of the fee, and the

27  financial burden for Class Counsel over the course of this case, the requested fee is reasonable.

28

Gibson, Dunn &
Crutcher LLP

#### d. The Lodestar Confirms the Reasonableness of the Fee.

The lodestar method is a legitimate alternative to the percentage method. The lodestar is calculated by multiplying the reasonable hours expended by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The court may then apply a multiplier to the lodestar to arrive at a reasonable fee. *Blum*, 465 U.S. at 888. The appropriate multiplier is determined in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Hanlon*, 150 F.3d at 1029 (a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment"). Courts in the Ninth Circuit routinely approve fee awards with multipliers several times the lodestar. *See Vizcaino*, 290 F.3d at 1051 n.6 (**majority of class action settlements approved had fee multipliers that ranged between 1.5 and 3**); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (citation omitted) (**6.8x multiplier "still falls well within the range of multipliers that courts have allowed"**).

In collective action cases like this one, the tasks involved in top-quality representation of the plaintiff and class members necessarily require substantial time. When a defendant vigorously defends itself on the merits, class and collective certification, discovery disputes, and damages, plaintiffs' counsel must spend the time needed to provide effective representation for the class members. The alternative of cutting corners or surrendering in the face of setbacks is unacceptable. And because workers can generally only afford representation by banding together in collective action litigation, court decisions determine the market for legal services for working people.

Considering these realities and the *Kerr* factors 1-6, 7, 8, and 9; the requested fee is warranted here for the same reasons that 25% of the Maximum Gross Settlement Amount is a reasonable fee. Indeed, here a modest multiplier of 1.1x of Plaintiff's Counsel's lodestar is applicable, and that is assuming no work other than the few examples discussed above are considered by the Court. (Ex. B, Prieto Decl., ¶ 27).  Plaintiff's Counsel's lodestar multiplier falls within the range of reasonable multipliers commonly applied by district courts in the Ninth Circuit.  *See Vizcaino*, 290 F.3d at 1051 n.6.

Notably, the customary fee (factor five) also supports the request of 25%.  Client retainer agreements commonly provide for a 25% fee, or lodestar, whichever is greater.  Ex. B, Prieto Decl., ¶ 30) Plaintiff in fact agreed to this arrangement.  Class Counsel's hourly rates are also reasonable (Ex. B, Prieto Decl., ¶ 27 (see also Exhibit B-2 to Prieto Declaration)).  The rates are commensurate with those prevailing in the market for attorneys with comparable skill and experience litigating complex discrimination class and collective actions.  In fact, Mr. Prieto's hourly rate of $725 per hour (and a 40% fee of the common fund) was approved in *Reginald Moore, et al. v United Protection Service, LP d/b/a Allied Universal Security Services*, Case No. EDCV 19-2121 JGB (SPx), In the United States District Court Central District of California (July 2, 2022) (Bernal, J.). (Ex. B, Prieto Decl., ¶ 27 (see also Exhibit B-2 to Prieto Declaration)).

Finally, the nature and length of Class Counsel's professional relationship with the Named Plaintiff (*Kerr* factor 11) also weighs in favor of the fee request.  Plaintiff selected Plaintiff's Counsel from the beginning to litigate their claims, and Class Counsel have maintained a close and productive relationship with Plaintiff throughout the litigation. (Ex. B, Prieto Decl., ¶ 31).

Based on each of the *Kerr* factors discussed above, the requested fee is eminently reasonable.

### 2.    Plaintiff's Counsel Are Entitled to Recover Their Out-of-Pocket Expenses, Which Are Reasonable and Have Benefitted the Class.

Class Counsel seek reimbursement of actual litigation expenses of $41,785.06. "Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable,

107095670.2

necessary, and directly related to the prosecution of the action." *In re Optical Disk Drive Prods., Antitrust Litig.*, No. 10-md-2143-RS, 2016 WL 7364803, at *10 (N.D. Cal. Dec. 19, 2016).

To date, Plaintiff's Counsel have incurred $41,785.06 in litigation costs and expenses and may incur additional costs through the conclusion of this matter. (Ex. B, Prieto Decl., ¶ 32).  These costs have been submitted in a table summary with supporting receipts for the Court's review. (*Id.*).  All of these costs were necessary in connection with the prosecution of this litigation and were incurred for the benefit of the Class (including expenses incurred in related California state court litigation initiated to protect the rights of the settlement class members in this case). (*Id.*). (Ex. B, Prieto Decl., ¶ 32).  They are reimbursable.  *See In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, Nos. 87 Civ. 3962, 86 Civ. 3538, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989).

### 3.    The Service Award to the Named Plaintiff Is Appropriate.

It is customary for "named plaintiffs . . . [to be] eligible for reasonable incentive payments" as part of a class action settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Service or incentive payments constitute "an essential ingredient of any class action," because they provide an incentive to bring important cases that have a broad impact benefiting a class of individuals, not just the plaintiff.  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  These payments recognize the plaintiff's time, effort, and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a particularly public and powerful manner.  By bringing the litigation on behalf of others in addition to themselves, class representatives in employment class actions provide a valuable service to their fellow workers.  More broadly, they promote the public policy goals set forth by the legislatures that enacted the underlying substantive statutes at issue.  For these reasons, courts routinely approve the award of service payments to class representatives for their assistance to the class.  *See, e.g., Stevens v. Safeway, Inc.*, Case No. CV 05-01988 MMM (SHx), 2008 WL 11496497, at *10 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class representatives); *Glass v. UBS Financial Services, Inc.*, No. C- 06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26,

1     2007) ($25,000 each to four class representatives); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp.

2     294, 300 (N.D. Cal. 1995) ($50,000 to one class representative).

3         When evaluating the reasonableness of an incentive award, courts may consider factors such

4     as '"the actions the plaintiff has taken to protect the interests of the class, the degree to which the

5     class has benefited from those actions, …the amount of time and effort the plaintiff expended in

6     pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation."' *Staton*, 327 F.3d at 977

7     (quoting *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998); *see also Van Vranken*, 901 F. Supp. at

8     299; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class

9     representative ... whose future employability has been impaired may be worthy of receiving an

10    additional payment, lest others be dissuaded.").

11        The Settlement Agreement provides for a small additional payment of $2,500 to the Named

12    Plaintiff Derrick Salmons for his service as named plaintiff and for a general release.  This is not

13    excessive.  No service award is to be paid to former named plaintiff Jacob McGrath, as he did not

14    assist in consummating the settlement.

15        Named Plaintiff Derrick Salmons had the courage and tenacity to step forward, seek out

16    counsel, and associate his name publicly with this lawsuit, exposing himself to negative publicity and

17    the risk of future retaliation by potential employers or business partners. (Ex. B, Prieto Decl., ¶ 33.)

18    *See Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 01029(CM), 2011 WL 5148650, at *7

19    (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or

20    personal difficulties, class representatives merit recognition for assuming the risk of such for the sake

21    of absent class members.").  Courts have recognized that present day employers can easily learn of

22    such filings via the internet and rely on the fact when deciding to hire or when evaluating them. *See*

23    *id*. (noting "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may

24    become known to prospective employers when evaluating the person.").

25        Nonetheless, Named Plaintiff Salmons willingly assumed these risks which in turn benefited

26    the Final Settlement Class members, who did not have to file individual lawsuits, nor bear the risks of

27    payment of fees and costs.  Nor do they face a similar risk of difficulty in finding future employment.

28

Gibson, Dunn &
Crutcher LLP

107095670.2

1    Accordingly, this small individual service award to Named Plaintiff is justified as the result of his

2    involvement in this litigation, the risk he took on behalf of the class members, the settlement itself,

3    and in comparison with other cases which have looked favorably on such payments.

### III.    ARGUMENT AND AUTHORITY

**A.    Legal Standard for Approval of FLSA Only Settlements.**

6        Because of the strong public interest in FLSA cases, most courts find that disputes of FLSA

7    cases may only be settled or compromised with the supervision of the Department of Labor or a

8    federal district court.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th

9    Cir. 1982).  This procedural mechanism ensures that an employee may not waive his claims under the

10   FLSA through an employer's coercion.  *See Pike v. Cty. of San Bernadino*, No. EDCV 17-1680, 2019

11   WL 8138439, at *1 (C.D. Cal. Nov. 25, 2019).  If an FLSA settlement reflects a reasonable

12   compromise, a court may approve the settlement "to promote the policy of encouraging settlement of

13   litigation." *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2012 WL 4465558,

14   at *10 (E.D. Cal. Sept. 25, 2012).

15       "While the Ninth Circuit has not specifically addressed the question of whether FLSA claims

16   may only be settled and resolved in two ways, district courts in the Ninth Circuit have followed

17   *Lynn's Food Stores*." *Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL

18   3924609, at *1 n.1 (S.D. Cal. Aug. 11, 2014).  *See also, e.g.*, *Khanna*, 2012 WL 4465558, at *10 ("A

19   court may not approve an FLSA settlement without determining whether it is 'a fair and reasonable

20   resolution of a bona fide dispute.'" (quoting *Lewis v. Vison Value, LLC*, No. 1:11-cv-01055-LJO-

21   BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012))); *Campanelli v. Hershey Co.*, No. C 08-

22   1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011) ("This case is not proceeding as a class

23   action under Rule 23 so that Rule's requirement for approval of class action settlements does not

24   obtain.  However, courts have held that FLSA settlements which are not approved by the Department

25   of Labor should be presented for court approval and that 'the District Court may enter a stipulated

26   judgment only after scrutinizing the settlement for fairness.'" (quoting *Lynn's Food Stores, Inc.*, 679

27   F.2d at 1353)).

28

Gibson, Dunn &
Crutcher LLP

107095670.2

-20 -        Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

Applying the test from *Lynn's Food Stores, Inc.*, courts first determine whether a bona fide dispute exists, so as not to "shield employers from the full cost of complying with the statute." *See Pike*, 2019 WL 8138439, at *2. Then, courts consider the totality of the circumstances of the settlement within the context of the FLSA. *Id.* (citing *Seguin v. Cty. of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018)).

> Courts often consider the following factors when evaluating settlements under [the] FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.* (citing *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)). As made clear in *Selk*, courts do not apply these factors rigidly, but rather "adjust[] or depart[] from those factors when necessary to account for the labor rights at issue." 159 F. Supp. 3d at 1173. In considering the factors under a "totality of the circumstances" approach, the district court "must ultimately be satisfied that the settlement's overall effort is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 3d 1227, 1247 (M.D. Fla. 2010)). To that end, if a proposed collective action settlement "reflect[s] a reasonable compromise over contested issues," it should be approved.[7] *Lee v. The Timberland Co.*, No. 07 Civ. 2367, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008); William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Khait*, 2010 WL 2025106, at *7.

Throughout the country, a one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include classes

---

[7] Approval of an FLSA collective action settlement does not require the full Rule 23 settlement analysis, because an FLSA settlement "does not implicate the same due process concerns as does a Rule 23 settlement." *See, e.g., Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010); *but see Stevens v. Safeway Inc.*, No. CV 05- 01988 MMM (SHx), 2008 WL 11496497, at *4 (C.D. Cal. Feb. 25, 2008) ("[FLSA] standard is similar to that used in evaluating settlements under Rule 23(e) of the Federal Rules of Civil Procedure.").

Gibson, Dunn &
Crutcher LLP

1    under Federal Rule of Civil Procedure 23, as is the case here. *See, e.g.*, *Yue Zhou v. Wang's Rest.*, No.

2    05 Civ. 0279, 2007 WL 172308, at *1-3 (N.D. Cal. Jan. 17, 2007) (endorsing one-step process for

3    approval of FLSA collective action settlement).[8] This is because collective actions under Section

4    216(b) of the FLSA ("Section 216(b)"), 29 U.S.C. § 216(b), do not implicate the same due process

5    concerns as Rule 23 class actions. *Selk v. Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164,

6    1172 (S.D. Cal. 2016).  Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA

7    collective actions require similarly situated employees to affirmatively opt-in and be bound by any

8    judgment, meaning that "the due process implications of a lack of formal notification post-settlement

9    are less worrisome." *Id.*; *O'Connor v. Oakhurst Dairy*, No. 2:140cv000192-NT, 2015 WL 2452678,

10   at *4 (D. Maine 2015) ("[W]ith an opt-in collective action, only individuals who affirmatively chose

11   to join the litigation will be bound by its outcome."); *see also Genesis Healthcare Corp. v. Symczyk*,

12   133 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under

13   the FLSA[.]").

14        Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from

15   bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th

16   Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-

17   70 (1989).  Accordingly, courts do not apply the exacting standards for approval of a class action

18   settlement under Rule 23 to FLSA settlements.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467,

19   476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class

20   action under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982)

21

22

---

23   [8] *See also Root v. Ames Dep't Stores, Inc.*, 989 F. Supp. 274, 274 (D. Mass. 1997) (noting that FLSA-

24   only settlement did not deprive those who elected not to opt in of any cause of action); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) (approving one-step settlement approval process for FLSA collective action); *Bozak v. FedEx*

25   *Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2-3 (D. Conn. July 31, 2014)

26   (same); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D. Conn. May 23, 2013)
     (same); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1-2

27   (S.D. Ind. Apr. 24, 2012) (same); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, 11 Civ. 1281, 11 Civ.
     1282, 11 Civ. 1283, 11 Civ. 1284, and 11 Civ. 1285, 2012 WL 3060470, at *2 (D. Conn. July 26,

28   2012) (same).

Gibson, Dunn &
Crutcher LLP

107095670.2

-22 -                      Case No. 3:19-cv-05279-EMC
                           MEMORANDUM ISO AMENDED MOTION FOR
                           APPROVAL OF SETTLEMENT

1  (discussing due process concerns present in Rule 23 class actions that are not present in collective

2  actions brought under Section 216(b)).

3      Thus, the approval of settlements of FLSA claims is a separate, but related, analysis from the

4  approval of settlements of class action claims.  While § 216(b) authorizes collective actions, the

5  FLSA does not expressly set forth criteria for courts to consider in determining whether a FLSA

6  settlement should be approved, nor has the Ninth Circuit established any particular criteria.

7  However, as provided by this District, Plaintiff has provided answers to the Procedural Guidelines for

8  Class Action Settlements to the extent relevant, above.

9  **B.    The Proposed FLSA Settlement Represents a Compromise of a Bona Fide Dispute and Provides a Fair and Reasonable Resolution of Plaintiff's Claims.**

10

11      **1.    Disputed Issues in this Case, Including Defendant's Status as Employer of the Plaintiffs and Applicability of Liquidated Damages Demonstrate the Parties' Entitlement to Settle the Lawsuit.**

12

13      The proposed FLSA Settlement ends vigorously contested litigation.  During the litigation,

14  the Parties have contested, among other issues:  (1) the scope of Plaintiff's claims asserted in the

15  Complaint, primarily concerning whether Dashers were properly classified as independent

16  contractors; (2) whether any FLSA class should be conditionally certified under Section 216(b) in

17  light of the binding arbitration agreements that include class and collective action waivers; and (3)

18  whether Named Plaintiff, the Opt In Plaintiffs and the Eligible Claimants sustained damages as the

19  result of alleged misclassification.

20      As discussed above, there must be a bona fide dispute before a Court may permit the parties

21  to compromise the value of a plaintiff's FLSA case. *Pike*, 2019 WL 8138439, at *2 ("The reason for

22  this requirement is to safeguard against an employee waiving his or her claims for wages, overtime

23  compensation, or liquidated damages when there is no actual dispute between the parties." (quoting

24  *Dashiell v. Cty. of Riverside*, No. EDCV 15-00211 JGB (SPx), 2018 WL 3629915, at *3 (C.D. Cal.

25  July 19, 2018))).

26      In *Pike*, the disputed issues included the plaintiff's contention that the employees' workload

27  would be impossible to complete without working significant overtime, while the defendant's

28  position was that the employees' workloads did not require overtime, and it paid all overtime that was

reported. *Id.* at *2-3. Moreover, as in *Pike*, the Parties' claims and defenses demonstrate significant disputes regarding arbitration, FLSA coverage, liability and damages. Accordingly, given the significant disputes, the Parties are permitted to compromise and settle the Named Plaintiff, Opt In Plaintiffs and Final Settlement Class members' claims.

> **2.    The Totality of Circumstances Demonstrates that the Proposed FLSA Settlement Is Fair and Reasonable, Provides Meaningful Relief to the Settlement Collective Action Members, and Should Be Approved.**
>
> **a.    The Proposed Net Settlement Allocates $425,247.19 to the Named Plaintiff, Opt In Plaintiffs and Final Settlement Class Members, Despite There Being Limited FLSA Minimum Wage Damages.**

Using pay and time records provided by Defendant, Plaintiff's counsel was able to determine that a significant portion of the settlement class did not suffer minimum wage damages under the FLSA. (Ex. B, Prieto Decl., ¶ 21.) Indeed, Plaintiff's Counsel reviewed pay and time data for the Eligible Claimants which demonstrates zero damages, unless they were to incur significant expenses related to the performance of their work for Defendant. (*Id.* at ¶¶ 21, 29.)

Under the proposed FLSA Settlement, Eligible Claimants are entitled to submit Claim Forms and receive individual allocations from the Section 216(b) Settlement Amount. If 100% of Eligible Claimants become Final Settlement Class members, the total amount of Section 216(b) Settlement Amount Payments is $425,247.19, exclusive of the $2,500 service award to Named Plaintiff. (Ex. A, ¶ 18(d)) This net sum recovery is significant considering that pay and time data shows zero damages on many instances, per the data made available to Plaintiff's counsel by Defendant. (Ex. B, ¶¶ 21, 29.)

Because the Section 216(b) Settlement Amount will be distributed proportionately based on the number of on-delivery miles driven by the Named Plaintiff, Opt In Plaintiffs and Eligible Claimants respectively, individuals who drove more or performed more deliveries for DoorDash will be eligible to receive a greater portion of the Section 216(b) Settlement Amount than those who drove less or had less deliveries (since in theory they incurred the most work related expenses), on a pro rata basis. Individuals who performed the bulk of deliveries will be entitled to the high end of recovery in this case. (Ex. B, Prieto Decl., ¶ 20.)

Gibson, Dunn &
Crutcher LLP

107095670.2

-24 -                                    Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b. The Parties Completed Sufficient Discovery to Appropriately Evaluate the Claims and Defenses that Affect this Proposed FLSA Settlement.**

Although the Parties did not complete all formal discovery to which they would be entitled, in the interest of saving considerable attorney's fees, Defendant produced a sample of data based on millions of pay and time records for the entire Eligible Claimants. (See Ex. B, ¶¶ 21, 29.) The production was adequate to gain an understanding of the spectrum of possible damages in the lawsuit.

While the data was not obtained through formal discovery, the result meets the standard requiring "sufficient information to make an informed decision about settlement." *Pike*, 2019 WL 8138439, at *4 (quoting *Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 WL 6002320, at *3 (N.D. Cal. Nov. 15, 2018) (*See also* Ex. B, Prieto Decl., ¶ 21.) The substantial sample production for a period of three years prior to the filing of the lawsuit included all relevant information pertaining to miles driven by each Eligible Claimant included in the sample. (*Id.*)

**c. The Substantial Risks Represented by the Lawsuit Necessitated the Compromise of the Proposed Settlement Class Members' Back Wages Under the Proposed FLSA Settlement.**

The Parties dispute whether this case could be maintained as a collective action. Thus, without this settlement, the Eligible Claimants may not get notice and may not be entitled to compensation. Additionally, as discussed above, and as was the case in *Pike*, the significant factual disputes relating to employment status in this case were substantial risks necessitating compromise.

In *Dashiell*, the court held "'Courts favor settlement where there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'" 2008 WL 3629915, at *4 (quoting *Seguin v. Cty. of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2019 WL 1919823, at *4 (E.D. Cal. Apr. 23, 2018)). Here, due to the significant issues relating to Proposition 22, which was recently upheld by California's First District Court of Appeals, Plaintiff's claims could fail as a matter of law.

Furthermore, as in *Pike*, this case was settled on the basis of a three-year statutory period. Because there is a significant likelihood that Plaintiff would be unable to demonstrate willfulness, there is a correlated high likelihood that many of the Final Settlement Class members would receive a lower award of damages if the case proceeded to trial as a collective action, or no damages at all. *See*

1    *Pike*, 2019 WL 8138439, at *4 ("As detailed above, if Plaintiffs were unable to establish Defendant's

2    willfulness, recovery would be less than that proposed by the Settlement Agreement").

3        **d.    The Proposed FLSA Settlement Was Negotiated Over Three Separate Arms'-Length Adversarial Mediations, Not by Fraud or Collusion, and Represents a Fair Result Given Other Lawsuits and the Significant Risks Associated with the Case.**

5    Courts accord significant weight to the opinions of plaintiff's counsel in FLSA cases.  *See*

6    *Dashiell*, 2018 WL 3629915, at *4 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.  Supp.

7    3d 1164, 1176 (S.D. Cal. 2016).)

8        Plaintiff's counsel have significant experience in class and collective action wage cases. (Ex.

9    B, Prieto Decl., ¶¶ 6-10.) In light of the significant complexity of the case, and the bevy of potential

10   issues that could lead to a limited or zero dollar recovery for the Named Plaintiff, Opt In Plaintiffs,

11   and Final Settlement Class members given the claims at issue in the lawsuit, Plaintiff's counsel

12   believe the proposed FLSA Settlement to be fair and reasonable. (*Id.*, ¶ 34.)

13       Finally, courts typically find that there is a low likelihood of fraud or collusion where a

14   settlement obtained through formal mediation before an impartial neutral.  *See Dashiell*, 2018 WL

15   3629915, at *4.  Here, as described above, the Parties participated in a massive document production,

16   analyzed thousands of records produced, and engaged two separate mediators to obtain the excellent

17   result of a settlement in this case.  Thereafter, the Parties engaged in many months of negotiation

18   regarding the settlement agreement itself.  There should be no argument that this proposed FLSA

19   Settlement was the result of fraud or collusion.

20                              **IV.    CONCLUSION**

21       For all the foregoing reasons, Plaintiff respectfully requests that the Court approve the Parties'

22   proposed FLSA Settlement and approve the form of Notice and other procedures proposed therein

23   and discussed in this Memorandum and the Settlement Agreement.  Plaintiff requests such other and

24   further relief to which he is justly entitled.

25

26

27

28

Gibson, Dunn &
Crutcher LLP

107095670.2

MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT

DATED:  February 26, 2024

Respectfully submitted,

*/s/Ricardo J. Prieto*
Ricardo J. Prieto (admitted PHV)
rprieto@wageandhourfirm.com
Melinda Arbuckle (SBN 302723)
marbuckle@wageandhourfirm.com
WAGE AND HOUR FIRM
3600 Lime Street, Suite 111
Riverside, California 92501
Telephone:  (214) 210-2100
Facsimile:  (469) 399-1070

Robert R. Debes, Jr. (admitted PHV)
bdebes@eeoc.net
SHELLIST LAZARZ SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone:  (713) 621-2277
Facsimile (713) 621-0993

*Counsel for Plaintiff Derrick Salmons and*
*Proposed Class and Collective Action Members*

Gibson, Dunn &
Crutcher LLP

107095670.2

-27 -                                              Case No. 3:19-cv-05279-EMC
MEMORANDUM ISO AMENDED MOTION FOR
APPROVAL OF SETTLEMENT